**LAW OFFICES OF DARREN J. QUINN**
Darren J. Quinn
12702 Via Cortina, Ste 105
Del Mar, CA 92014
dq@dqlaw.com
Attorney for Plaintiff

### IN THE UNITED STATES DISTRICT COURT

### FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT STEVENS, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>CORELOGIC, INC., a Delaware Corporation,<br><br>                    Defendant. | Case No.:  **'14 CV 1158 BTM JLB**<br><br><br>**CLASS ACTION COMPLAINT** |

Plaintiff ROBERT STEVENS brings this action individually and on behalf of all others similarly situated (the "Class," as defined below), by and through undersigned counsel, against defendant CORELOGIC, INC. ("CoreLogic").

## NATURE OF THE ACTION

1.     This case arises from CoreLogic's falsification, removal and/or alteration of Plaintiff's and the other Class members' copyright management information (such as the name of the author and/or copyright owner)  in their photographic works in violation of 17 U.S.C. §1202(a) and (b).   CoreLogic knew or had reasonable grounds to know that its falsification, removal and/or alteration of copyright management information would induce, enable, facilitate or conceal copyright infringement of the photographic works of Plaintiff and the Class. Plaintiff and the Class seek civil remedies under 17 U.S.C. §1203(b), including an injunction, impounding of any device or product involved in a violation of 17 U.S.C. §1202 for remedial modification or destruction, damages, costs and attorney fees.

## JURISDICTION AND VENUE

2.     This action arises under the Copyright Act, 17 U.S.C. §101, *et seq.*

3.     This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338(a) (acts of Congress related to copyright).

4.     Defendant is subject to personal jurisdiction in this district.

**Class Action Complaint**

5.      Venue is proper in this district under 28 U.S.C. § 1391(b) and 1400(a) because the events giving rise to the claims occurred in this district, Defendant is engaged in copyright violations in this district, and Defendant is subject to personal jurisdiction in this district.

## PARTIES

6.      Plaintiff ROBERT STEVENS ("Stevens") provides real estate photography services to real estate brokers and agents.

7.      Defendant CORELOGIC, INC. ("CoreLogic") is a Delaware corporation with offices in this district at 10277 Scripps Ranch Blvd., San Diego, California 92131.

## FACTS

**CoreLogic Data and MLS Products**

8.      "A multiple listing service is a common database where member companies submit listings to facilitate the exchange of information about one another's listings so agents can cross company lines to sell one another's houses and can show clients all houses on the market, not just those homes listed with their own company." *Mid-America Real Estate Co. v. Iowa Realty Co*., No. 4:04-CV-10175, 2004 U.S. Dist. LEXIS 10155, 2004 WL 1280895, at *2 (S.D. Iowa 2004).

9.      Multiple Listing Service ("MLS") organizations typically require every listing contain at least one, and sometimes several, photographs of property

**Class Action Complaint**

3

offered for sale. CoreLogic is the largest provider of technology services to MLS organizations in the United States.

10. CoreLogic represents it has as clients 17 of the 20 top MLS organizations.

11. CoreLogic represents that its data includes more than 3.3 billion property and financial records spanning more than 40 years.

12. CoreLogic represents its data includes more than 99 percent of U.S. property records.

13. CoreLogic's data includes photographs of real property created by Plaintiff and the Class.

14. CoreLogic represents its data includes more than two million multiple listing systems-based active property listings. On information and belief, these listings include photographs of real property created by Plaintiff and the Class.

15. CoreLogic offers three MLS technology products under its MarketLinx® line: Fusion™, Innovia™ and Matrix™.

16. CoreLogic products allow users of its MLS products to upload photographs of real estate listings. CoreLogic's Fusion™ product features include uploading multiple photos to a listing simultaneously. CoreLogic's Innovia™ product features a drag-and-drop photo utility. CoreLogic's Matrix™ product features include a Matrix Photo Manager where users can upload multiple images at

**Class Action Complaint**

4

once.  On information and belief, millions of photographs of real property created by Plaintiff and the Class were uploaded using products in CoreLogic's custody or control.

17.    Homes sell better when real estate listing photos are created by professional photographers.  See "A Picture is Worth a Thousand Dollars. True or False?" at http://www.redfin.com/research/reports/special-reports/2010/a_picture_is_worth_a_thousand_dollars_true_or_false.html accessed on July 14, 2013.

18.    Adding additional photographs to a listing increases the price that can be obtained for a property. *See* Benefield, at al., On the Relationship Between Property Price, Time-on-Market, and Photo Depictions in a Multiple Listing Service, Journal of Real Estate Finance and Economics, Vol. 43, No. 3, 2011.

**Copyright Management Information and the Adoption of the DMCA**

19.    All of the photographs at issue in this lawsuit created by Plaintiff and the Class contained "copyright management information" (sometimes referred to as "CMI") as that term is defined in 17 U.S.C. §1202(c).

20.    17 U.S.C. §1202 was first considered by Congress in 1998 as part of legislation designed to implement the World Intellectual Property Organization (WIPO) Copyright Treaty (CT) and Performances and Phonograms Treaty (WPPT).

21.    The text of Article 12 of the CT and Article 19 of the WPPT are

**Class Action Complaint**

5

similar.  Both require contracting parties to provide "adequate and effective legal remedies against any person performing any of the following acts … having reasonable grounds to know that it will induce, enable, facilitate or conceal an infringement …(i) to remove or alter any electronic rights management information without authority."

22.    Article 12 of the CT also requires adoption of "legal remedies against any person performing any of the following acts … having reasonable grounds to know, that it will induce, enable, facilitate or conceal an infringement … (ii) to distribute, import for distribution, broadcast or communicate to the public, without authority, works or copies of works knowing that electronic rights management information has been removed or altered without authority."

23.    Both the WPPT and CT define "rights management information" as "information which identifies the work, the author of the work, the owner of any right in the work, or information about the terms and conditions of use of the work, and any numbers or codes that represent such information, when any of these items of information is attached to a copy of a work or appears in connection with the communication of a work to the public."

24.    Several bills with different names were introduced in the House of Representatives and the Senate in 1997 to implement WPPT and CT.  Reports were issued and hearings were held in both houses of Congress in 1998. The different

bills were consolidated and renamed the "Digital Millennium Copyright Act of 1998" (DMCA). On May 11, 1998, the Senate Judiciary Committee issued a Report on the DMCA (Sen. Rpt. 105-190), which further described the intent of the prohibitions being adopted in Section 1202 of the DMCA.

> Copyright Management Information (CMI) is an important element in establishing an efficient Internet marketplace in copyrighted works free from governmental regulation. Such information will assist in tracking and monitoring uses of copyrighted works, as well as licensing of rights and indicating attribution, creation and ownership.

> Under the bill, CMI includes such items as the title of the work, the author, the copyright owner, and in some instances, the writer, performer, and director. CMI need not be in digital form, but CMI in digital form is expressly included. It is important to note that the DMCA does not require CMI, but if CMI is provided, the bill protects it from falsification, removal or alteration. Information that is not defined as CMI under the bill would not be protected by these provisions, although its removal or falsification might be protected under other laws, such as unfair trade. The definition of CMI may be expanded by regulation prescribed by the Register of Copyrights.

25.    The intentions of the Senate regarding copyright management information were expressed further in the Report's discussion of the language proposed for Section 1202.

> This section does not mandate the use of CMI, nor does it prescribe the choice of any particular type of CMI for those who do use it. It merely protects the integrity of CMI if a party chooses to use it in connection with a copyrighted work by prohibiting its deliberate deletion or alteration. Furthermore, this section imposes liability for specified acts. It does not address the question of liability for persons who manufacture devices or provide services.

26.    The DMCA was debated on the Senate floor on May 14, 1998.  During debate, Sen. Thompson noted:

**Class Action Complaint**

New technology creates exciting opportunities for intellectual property, but the digital environment also poses threats to this form of property. Unscrupulous copyright violators can use the Internet to more widely distribute copyrighted material without permission. To maintain fair compensation to the owners of intellectual property, a regime for copyright protection in the digital age must be created. Technology to protect access to copyrighted work must be safeguarded. Copyright management information that identifies the copyright owner and the terms and conditions of use of the copyrighted material must be secured.

Senate Floor Debate, Cong. Rec., S.4892 (May 14, 1998).

27.    A recurring theme throughout the debates of the DMCA is the protection the law provides against piracy. In statements and remarks before both House and Senate, members of Congress repeatedly extolled the benefits of the DMCA for the protections against piracy it would provide. The protection of copyright management information integrity, and the prohibition against alteration, removal or falsification of copyright management information, implements Congress' goal of preventing piracy.

28.    As adopted, 17 U.S.C. §1202(c) provides:

Definition. As used in this section, the term "copyright management information" means any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form, except that such term does not include any personally identifying information about a user of a work or of a copy, phonorecord, performance, or display of a work:

(1) The title and other information identifying the work, including the information set forth on a notice of copyright.

(2) The name of, and other identifying information about, the author of a work.

(3) The name of, and other identifying information about, the copyright

owner of the work, including the information set forth in a notice of copyright.

(4) With the exception of public performances of works by radio and television broadcast stations, the name of, and other identifying information about, a performer whose performance is fixed in a work other than an audiovisual work.

(5) With the exception of public performances of works by radio and television broadcast stations, in the case of an audiovisual work, the name of, and other identifying information about, a writer, performer, or director who is credited in the audiovisual work.

(6) Terms and conditions for use of the work.

(7) Identifying numbers or symbols referring to such information or links to such information.

(8) Such other information as the Register of Copyrights may prescribe by regulation, except that the Register of Copyrights may not require the provision of any information concerning the user of a copyrighted work.

**Copyright Management Information Metadata Used by Plaintiff and Class Members**

29.    Each of the photographs created by Plaintiff and Class was under copyright protection the moment the photograph was created, and copyright management information (such as the name of the author or copyright owner) was added to help maintain control of the photos and prevent copyright infringement.

30.    One important purpose of copyright management information is to identify digital images as the works of Plaintiff or Class members. The Internet has made it possible for images to be copied and distributed worldwide without detection. As a result, copyright infringement on the Internet has become a serious problem for professional photographers.   Real estate photographers are particularly

vulnerable to the unauthorized copying of photographs due to the wide distribution of these photographs through an MLS.

31.     When copyright management information is removed, altered or falsified, Plaintiff and the Class may find it difficult or impossible to enforce their rights under the Copyright Act.  For instance, Plaintiff and Class members may find it more difficult or impossible to prove that their works were copied or used without permission when copyright management information has been removed, altered or falsified.  Additionally, subsequent infringers may claim that their copyright infringement was innocent, because the copyright management information on the infringing copy was removed, altered or falsified.  Further, it may be difficult or impossible for a copyright owner to trace an infringer's profits from an infringing copy that has copyright management information removed, altered or falsified.

32.     At the time photographs are uploaded to a CoreLogic MLS product, the metadata of the digital files contains identifying information, such as information set forth in a notice of copyright. This metadata may include the name of the photographer, the name of the copyright owner (who might be different from the photographer who created the photograph if the photographer took the photo as a work for hire while employed by another photographer or photography studio. *See* 17 U.S.C. § 201), the terms and conditions for use, or other information related to the work such as geo-location information showing where the photograph was

**Class Action Complaint**

originally created.

33.    The individual items of metadata information are called "tags." A wide variety of tags can be included in metadata. Digital cameras record the current date and time a photograph is created and save this data in metadata. Camera settings, the model and make of camera, image orientation (rotation), aperture, shutter speed, focal length, metering mode, and ISO speed information are also stored in metadata, as is a thumbnail for previewing the picture on the camera's LCD screen, in file managers, or in photo manipulation software.  Such information can be used to identify the author or copyright owner of a photograph.

34.     Metadata also stores copyright information, such as the name of photographer and copyright owner, and permissions, if any, granted for use or reserved to the owner. For example, the permissions tag might contain the words "all rights reserved" to indicate to anyone who might encounter that image file that all rights for the use of the image were reserved by the copyright owner and any further use requires the owner's permission.

35.    Embedding metadata in image files is a standard technical measure used by Plaintiff and the Class Members to identify and protect their copyrighted works.

36.    Image metadata was developed pursuant to a broad consensus of copyright owners and service providers in an open, fair, voluntary, multi-industry

**Class Action Complaint**

standards process. The metadata does not impose substantial costs on Internet service providers or substantial burdens on their systems or networks.

37. Metadata for each digital image metadata (typically 64kB or less) is extremely small when compared to the size of the digital image of the photograph which may be a hundred times (e.g. 6.4 MB) larger or more.

38. All digital images uploaded to a CoreLogic MLS product contained copyright management information metadata.

**Example of Plaintiff's Copyright Management Information And Removal, Alteration Or Falsification By CoreLogic**

39. Robert Stevens is an accomplished real estate and architectural photographer who works in South Florida.

40. On August 9, 2009, Stevens created an aerial photograph of a residential condominium building located at 3800 N. Ocean Drive, Singer Island, Florida known as Resort at Singer Island. Stevens processed the image and, since he created it, he has licensed it for a fee to several real estate agents and brokers who have marketed condominium units for sale at 3800 N. Ocean Drive.

41. The image in .jpg format that Stevens created and Stevens licensed to real estate agents and brokers contained copyright management information embedded in the metadata of the image. The metadata included information identifying Stevens as the author and claimed a copyright in the image. The photo

**Class Action Complaint**

of 3800 N. Ocean Drive showing a portion of the metadata is shown in Figure 1

(and Exhibit 1).



*Figure 1-Image of 3800 N. Ocean Drive created by Stevens*

42.     Stevens licensed this image to Real Estate Agent Dermot C. O'Brien

for his use in connection with marketing properties at 3800 N. Ocean Drive. Mr.

O'Brien uploaded the image, with all metadata intact, to his listings with the

Realtors' Association of the Palm Beaches ("RAPB"), a South Florida MLS.

RAPB is a client of CoreLogic and uses a CoreLogic MLS product to operate its

MLS business.

43.     Stevens is not a member of RAPB or any other multiple listing service.

Stevens has no contractual relationship with RAPB concerning his image of 3800

N. Ocean Drive.  Stevens never gave authority to RAPB or CoreLogic to remove or

**Class Action Complaint**

alter the copyright management information metadata on the images he provided to his Client.

44.    After Dermot C. O'Brien uploaded the photograph Stevens created of 3800 N. Ocean Dr. to the CoreLogic MLS product used by RAPB, CoreLogic copied Stevens' image into its RealQuest® database and sold access to the database and reports produced by the database without Stevens' permission, authority or compensation.  Figure 2 (and **Exhibit 2)** is a portion of a CoreLogic RealQuest® report for 3800 N. Ocean Dr. displaying Stevens' copyrighted image.   On information and belief, the report falsely attributes copyright ownership of Stevens' photograph to CoreLogic.



45.     Before CoreLogic copied Stevens' image, it stripped out the copyright management information metadata Stevens had embedded in his images. Figure 3 (and Exhibit 3) shows a screenshot of 3800 N. Ocean Dr. downloaded from RealQuest® stripped of all copyright management information metadata.



*Figure 3 –Image of 3800 N. Ocean Drive stripped of metadata*

46.     CoreLogic knew or had reasonable grounds to know that removal or alteration of Stevens' copyright management information would induce, enable, facilitate or conceal copyright infringement.  Any use of Stevens' copyrighted images without his permission would constitute copyright infringement.

47.     In fact, CoreLogic's removal of Stevens' copyright management information did in fact enable, facilitate or conceal copyright infringement.  Since

**Class Action Complaint**

Stevens first licensed his image of 3800 N. Ocean to Dermot C. O'Brien who used it to market properties at that address, other real estate agents have copied Stevens' copyrighted image without his permission and used it, without license or authority, to promote the sale of properties at 3800 N. Ocean, including but not limited to Apt. 1850 at that address, in violation of Stevens' rights.

**Further Examples of Copyright Management Information And Removal, Alteration Or Falsification By CoreLogic**

48.   Professional real estate photographers across the nation have embedded copyright management information in the metadata of their images.  This copyright management information metadata was present at the time it was uploaded to an MLS operated or maintained by CoreLogic.  On information and belief, CoreLogic removed, altered and/or falsified this copyright management information after it was uploaded to an MLS operated or maintained by CoreLogic.

49.   For instance, copyright management information in metadata was present in photographs of 4502 Lake Forrest Drive, Atlanta, Georgia 30327 taken by a professional real estate photographer.  After the photographs were uploaded to an MLS operated or maintained by CoreLogic, the copyright management information metadata embedded in those images was stripped out.  Upon information and belief, CoreLogic stripped out the copyright management information metadata.  CoreLogic then copied one or more of these images into its RealQuest® database and sold access to the database and reports produced by the

**Class Action Complaint**

16

1
2

database without the photographer's permission or authority and without
compensation to the photographer.

3
4
5
6
7
8
9
10
11
12
13
14
15
16

50.     On another occasion, copyright management information in metadata
was present in photographs of 915 Fawntail St., San Marcos, CA 92078 taken by a
professional real estate photographer.   After the photographs were uploaded to an
MLS operated or maintained by CoreLogic, the copyright management information
metadata embedded in those images was stripped out.  Upon information and belief,
CoreLogic stripped out the copyright management information metadata.
CoreLogic then copied one or more of these images into its RealQuest® database
and sold access to the database and reports produced by the database without the
photographer's permission or authority and without compensation to the
photographer.

17
18
19

51.     CoreLogic knew that it did not own the copyrights for the photographs
uploaded to an MLS via a product that CoreLogic had custody or control of.

20
21
22
23
24
25

52.     CoreLogic knew that it did not have any written authorization from the
copyright owner to remove or alter copyright management information for the
photographs uploaded to an MLS via a product that CoreLogic had custody or
control of.

26
27
28

53.     CoreLogic made no attempt to contact the photographers for
authorization to remove or alter the copyright management information for the

**Class Action Complaint**

photographs uploaded to a CoreLogic MLS product.

## CLASS ALLEGATIONS

54.     Plaintiff and the Class have brought this case against CoreLogic because CoreLogic violated 17 U.S.C. §1202 by removing, altering and/or falsifying copyright management information of Plaintiff and Class for the photographs uploaded to a CoreLogic MLS product.

55.     The Class is defined as all persons or entities that hold the copyright in one or more images stored in a digital file with metadata containing copyright management information that was uploaded to a multiple listing service via a product in the custody or control of CoreLogic.  Excluded from the Class are (a) defendant and any entity in which any defendant has a controlling interest; (b) the employees, officers and directors of those identified in subparagraph (a); (c) the heirs, successors, assigns and legal representatives of the persons identified in subparagraph (b) above; and (d) a multiple listing service.

56.     Plaintiff reserves the right to request creation of subclasses.  Plaintiff also reserves the right to expand the Class or any subclass to include a multiple listing service.

57.     This action has been brought and may properly be maintained as a class action pursuant to Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

**Class Action Complaint**

58.     Numerosity of the Class--Fed. R. Civ. Proc. 23(a)(1): The persons and/or entities in the Class are so numerous that their joinder is impractical. Defendant represents over 2 million active MLS listings with photographs uploaded via a product in the custody or control of CoreLogic.

59.     Existence and Predominance of Common Question of Law and Fact--Fed. R. Civ. Proc. 23(a)(2) & 23(b)(3): There is a well-defined community of interest in the questions of law and fact involved affecting the Class. Questions of law and fact common to the Class include, but are not limited to, the following:

a.   Whether CoreLogic contacted Plaintiff and the Class to obtain "authority" to remove of alter copyright management information from digital images uploaded to a multiple listing service via a product in the custody or control of CoreLogic within the meaning of 17 U.S.C. §1202(b);

b.   Whether CoreLogic "intentionally remove[d] or alter[ed] copyright management information" from digital images that are owned by Plaintiff and the Class after the images were uploaded to a multiple listing service via a product in the custody or control of CoreLogic within the meaning of 17 U.S.C. §1202(b)(1);

c.   Whether CoreLogic "distribute[d] . . . copyright management information knowing that the copyright management information has

**Class Action Complaint**

19

been removed or altered without authority of the copyright owner or the law" with respect to digital images that are owned by Plaintiff and the Class that were uploaded to a multiple listing service via a product in the custody or control of CoreLogic within the meaning of 17 U.S.C. §1202(b)(2);

d. Whether CoreLogic "distribute[d] . . . copies of works . . . knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law" with respect to digital images that are owned by Plaintiff and the Class that were uploaded to a multiple listing service via a product in the custody or control of CoreLogic within the meaning of 17 U.S.C. §1202(b)(3);

e. Whether CoreLogic removed or altered copyright management information from digital images that are owned by Plaintiff and the Class knowing "that it will induce, enable, facilitate or conceal infringement of copyright" within the meaning of 17 U.S.C. §1202(b).

f. Whether CoreLogic removed or altered copyright management information from digital images that are owned by Plaintiff and the Class after "having reasonable grounds to know, that it will induce, enable, facilitate or conceal infringement of copyright" within the meaning of 17 U.S.C. §1202(b).

g.  Whether CoreLogic knowingly "provide[d] copyright management information that is false" with respect to digital images that are owned by Plaintiff and the Class that were uploaded to a multiple listing service via a product in the custody or control of CoreLogic within the meaning of 17 U.S.C. §1202(a)(1);

h.  Whether CoreLogic knowingly "distribute[d] . . . copyright management information that is false" with respect to digital images that are owned by Plaintiff and the Class that were uploaded to a multiple listing service via a product in the custody or control of CoreLogic within the meaning of 17 U.S.C. §1202(a)(2);

i.  Whether CoreLogic provided or distributed false copyright management information from digital images with respect to digital images that are owned by Plaintiff and the Class that were uploaded to a multiple listing service via a product in the custody or control of CoreLogic "with the intent to induce, enable, facilitate, or conceal infringement" within the meaning of 17 U.S.C. §1202(a);

j.  Whether the Court should "grant temporary and permanent injunctions on such terms as it deems reasonable to prevent or restrain a violation" of 17 U.S.C. §1202 pursuant to 17 U.S.C. §1203(b)(1);

k.  Whether the Court should "order the impounding, on such terms as it

deems reasonable, of any device or product that is in the custody or control of the alleged violator and that the court has reasonable cause to believe was involved in a violation" of 17 U.S.C. §1202 pursuant to 17 U.S.C. §1203(b)(2);

l.   Whether the Court should "as part of a final judgment or decree finding a violation, order the remedial modification or the destruction of any device or product involved in the violation that is in the custody or control of the violator or has been impounded" pursuant to 17 U.S.C. §1203(b)(6);

m.   The amount of statutory damages "in the sum of not less than $ 2,500 or more than $25,000" for Plaintiff and each Class member within the meaning of 17 U.S.C. §1203(c)(3)(B);

n.   The amount of "any profits of the violator that are attributable to the violation and are not taken into account in computing the actual damages" pursuant to 17 U.S.C. §1203(c)(2);

o.   Whether the named Plaintiff and the members of the Class are entitled to declaratory relief regarding their rights.

These questions of law and fact predominate over questions that affect only individual class members.

60.   Typicality--Fed. Civ. Proc. 23(a)(3): The claims of the named

**Class Action Complaint**

Plaintiff are typical of those of the Class.  Plaintiff is asserting the same claims as the Class members. Plaintiff's claims arose from the same practice or course of conduct by CoreLogic in violation of 17 U.S.C. §1202.

61.     Adequacy of Representation--Fed. R. Civ. Proc. 23(a)(4): Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff's interests do not in any way conflict with the interests of the members of the Class that he seeks to represent. Plaintiff is committed to the vigorous prosecution of this action.  Plaintiff has retained competent counsel experienced in complex class action litigation and experienced in actions for copyright violations to represent him.

62.     Injunctive Relief--Fed. R. Civ. Proc. 23(b)(2): CoreLogic has acted or refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

63.     Common Questions Predominate--Fed. R. Civ. Proc. 23(b)(3): As set forth above, the questions of law or fact common to class members predominate over any questions affecting only individual members.

64.     Superior Method--Fed. R. Civ. Proc. 23(b)(3):  A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  A class action is the best available method for the fair and efficient adjudication of this controversy. Since the damages suffered by individual class

**Class Action Complaint**

members, while not inconsequential, may be relatively small, the expense and burden of individual litigation make it impractical for members of the Class to seek redress individually for the wrongful conduct alleged herein. Should separate actions be required to be brought by each individual member of the Class, the resulting multiplicity of lawsuits would cause undue hardship and expense on the Court and the litigants. A class action is therefore the best method to assure that the wrongful conduct alleged herein is remedied, and that there is a fair, efficient, and full adjudication of this controversy.

65.     The Class members' interests in individually controlling the prosecution of separate actions is not strong given the relatively small amount of damages that may be recovered as compared to the costs of litigating an individual lawsuit.

66.     Plaintiff is aware of no litigation concerning the same claims against CoreLogic.

67.     It is desirable to concentrate the litigation in the Southern District of California.  CoreLogic has an office in San Diego.   On information and belief, CoreLogic's violations of 17 U.S.C. §1202 arise, in part, from the removal, alteration or falsification of copyright management information from images uploaded in the Southern District of California to an MLS operated or maintained by CoreLogic.  Additionally, CoreLogic's headquarters in Irvine, California is less

than eighty miles from the courthouse in San Diego.  The Southern District of California has procedures in place, such as an Early Neutral Evaluation Conference, that will help facilitate the efficient resolution of this matter.

68.    The likely difficulties in managing a class action are few.  Plaintiff anticipates no undue difficulty in the management of this litigation as a class action. As set forth above, determination of the common issues set forth above can be proven on a common basis and will result in a judgment in favor of the Class and monetary relief that may be awarded on a common basis   Additionally, any award of injunctive relief would apply to the Class as a whole.

# COUNT I
(Violation of 17 U.S.C. §1202)

69.    Plaintiff incorporates the allegations of paragraphs 1 through 68 of this complaint as if fully set forth herein.

70.    Plaintiff and members of the Class hold the copyright in one or more images stored in a digital file with metadata containing copyright management information that was uploaded to a CoreLogic MLS product.

71.    Without the authority of Plaintiff and the Class, CoreLogic intentionally removed or altered copyright management information, distributed copyright management information knowing that the copyright management information was removed or altered, or distributed copies of images knowing that that copyright management information had been removed or altered in violation of

**Class Action Complaint**

17 U.S.C. §1202(b).

72.    CoreLogic never contacted Plaintiff and the Class to obtain "authority" to remove or alter copyright management information from digital images uploaded to a CoreLogic MLS product within the meaning of 17 U.S.C. §1202(b).

73.    CoreLogic intentionally removed or altered copyright management information from digital images that are owned by Plaintiff and the Class after the images were uploaded to a CoreLogic MLS product in violation of 17 U.S.C. §1202(b)(1).

74.    CoreLogic distributed copyright management information knowing that the copyright management information had been removed or altered without authority of the copyright owner or the law with respect to digital images that are owned by Plaintiff and the Class that were uploaded to a CoreLogic MLS product in violation of 17 U.S.C. §1202(b)(2).

75.    CoreLogic distributed copies of works knowing that the copyright management information had been removed or altered without authority of the copyright owner or the law with respect to digital images that are owned by Plaintiff and the Class that were uploaded to a CoreLogic MLS product in violation of 17 U.S.C. §1202(b)(3).

76.    CoreLogic removed or altered copyright management information from digital images that are owned by Plaintiff and the Class knowing that it will

**Class Action Complaint**

induce, enable, facilitate or conceal infringement of copyright in violation of 17

U.S.C. §1202(b).

77.     CoreLogic removed or altered copyright management information

from digital images that are owned by Plaintiff and the Class after having

reasonable grounds to know that it will induce, enable, facilitate or conceal

infringement of copyright in violation of 17 U.S.C. §1202(b).

78.     CoreLogic knowingly provided copyright management information

that is false with respect to digital images that are owned by Plaintiff and the Class

that were uploaded to a CoreLogic MLS product in violation of 17 U.S.C.

§1202(a)(1).

79.     CoreLogic knowingly distributed copyright management information

that is false with respect to digital images that are owned by Plaintiff and the Class

that were uploaded to a CoreLogic MLS product within the meaning of 17 U.S.C.

§1202(a)(2).

80.     CoreLogic provided or distributed false copyright management

information from digital images with respect to digital images that are owned by

Plaintiff and the Class that were uploaded to a CoreLogic MLS product with the

intent to induce, enable, facilitate, or conceal infringement in violation of 17 U.S.C.

§1202(a).

81.     The profits attributable to CoreLogic's violation of 17 U.S.C. §1202

**Class Action Complaint**

27

include the revenue from CoreLogic's non-MLS products, such as RealQuest and risk management products, that contain copies of Plaintiff's and the Class members' images after the copyright management information has been removed, altered and/or falsified.  Plaintiff and the Class members' photographs add significant value to CoreLogic's non-MLS products, because the customers and users of those products use those photographs.

82.   CoreLogic's non-MLS products that use Plaintiff's and the Class members' photographs are very lucrative and generate millions in revenues each year.

83.   CoreLogic did not request permission of Plaintiff and the Class to use their images for CoreLogic's non-MLS products.

84.   CoreLogic's 2013 revenues were over $1.3 billion.  CoreLogic is extremely sophisticated with respect to intellectual property matters.  CoreLogic spent over $7.0 million in 2012 to enforce patent and other intellectual property rights.  In its 2012 Annual Report, CoreLogic states: "Our success depends, in part, upon our intellectual property rights. We rely primarily on a combination of patents, copyrights, trade secrets, and trademark laws and nondisclosure and other contractual restrictions on copying and distribution to protect our proprietary technology and information."  CoreLogic acknowledged its business risk for violating the Copyright laws when it states: "As we continue to develop and expand

**Class Action Complaint**

our products and services, we may become increasingly subject to infringement claims from third parties such as non-practicing entities, software providers or suppliers of data. Likewise, if we are unable to maintain adequate controls over how third-party software and data are used we may be subject to claims of infringement."

85.     Unless enjoined from violating 17 U.S.C. §1202, Plaintiff and the Class members will suffer irreparable harm by depriving them of the right to identify and control the reproduction and/or distribution of their copyrighted works, to receive licensing revenue, and to pursue copyright infringement remedies.  The balance of hardships tips in favor of Plaintiff and the Class because CoreLogic will not be damaged if it is required to comply with 17 U.S.C. §1202.  Plaintiff and the Class members are therefore entitled to an injunction barring CoreLogic from violating 17 U.S.C. §1202 and impounding any device or product that is in the custody or control of CoreLogic and that the court has reasonable cause to believe was involved in a violation of 17 U.S.C. §1202.

86.     Plaintiff and the Class pray for relief as set forth in the Prayer below.

## COUNT II
(Declaratory Relief)

87.     Plaintiff incorporates the allegations of paragraphs 1 through 86 of this complaint as if fully set forth herein.

88.     An actual controversy exists between the Plaintiff and the Class

**Class Action Complaint**

Members on the one hand, and CoreLogic on the other hand, by reason of CoreLogic's present and continuing violations of 17 U.S.C. § 1202 alleged herein.

89.     Plaintiff and Class members are entitled to a judgment declaring that CoreLogic's actions are unlawful and, specifically, that CoreLogic violated their rights under 17 U.S.C. § 1202.

90.     To the extent CoreLogic argues it had authority from Plaintiff and Class to undertake any of the actions set forth in 17 U.S.C. §1202(b)(1), (2) or (3) without compensation to Plaintiff and the Class, a declaration that any such authority has been revoked as a result of this lawsuit or has expired.

91.     A declaration that CoreLogic did not request permission from Plaintiff and the Class to use their photographs in connection with any non-MLS CoreLogic products.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the class members pray for relief and that judgment be entered against defendant as follows:

a.  For certification of a Class or subclasses, as appropriate;

b.  Temporary and permanent injunctions to prevent or restrain a violation of 17 U.S.C. §1202 pursuant to 17 U.S.C. §1203(b)(1);

c.   An order impounding "any device or product that is in the custody or control of the alleged violator and that the court has reasonable cause

**Class Action Complaint**

to believe was involved in a violation" of 17 U.S.C. §1202 pursuant to 17 U.S.C. §1203(b)(2);

d. Damages pursuant to 17 U.S.C. §1203(a)(3) and (c) including actual damages and defendant's profits attributable to the violation of 17 U.S.C. §1202;

e. At Plaintiff's election, statutory damages in the sum of not less than $2,500 or more than $25,000" for Plaintiff and each Class member pursuant to 17 U.S.C. §1203(c)(3)(B);

f. Costs pursuant to 17 U.S.C. §1203(b)(4);

g. Attorney fees pursuant to 17 U.S.C. §1203(b)(5);

h. As part of a final judgment or decree finding a violation, ordering the remedial modification or the destruction of any device or product involved in the violation that is in the custody or control of the violator or has been impounded pursuant to 17 U.S.C. §1203(b)(6);

i. Declaratory relief;

j. A trial by jury on all claims so triable; and

k.  Such other and further relief as may be proper.

\\

\\

**Class Action Complaint**

DATED:  May 7, 2014

Respectfully submitted,

**LAW OFFICES OF DARREN J. QUINN**


    s/s/ Darren J. Quinn
     Darren J. Quinn

 12702 Via Cortina, Suite 105
 Del Mar, CA 92014
 dq@dqlaw.com

SCHNEIDER ROTHMAN
INTELLECTUAL PROPERTY LAW
GROUP PLLC
JOEL B. ROTHMAN (*Pro Hac Vice*
pending)
 Joel.rothman@sriplaw.com
4651 North Federal Highway
Boca Raton, FL 33431
Tel:  561-404-4350

*Attorneys for Plaintiff and the Class*

**Class Action Complaint**

1

**JURY DEMAND**

2          Plaintiff demands a jury trial on all claims so triable.

3

4     DATED:  May 7, 2014          Respectfully submitted,

5                                 **LAW OFFICES OF DARREN J. QUINN**

6

7                                 _____

8                                     s/s/ Darren J. Quinn
                                       Darren J. Quinn

9
                                   12702 Via Cortina, Suite 105
10                                 Del Mar, CA 92014
                                   dq@dqlaw.com
11

12                                 SCHNEIDER ROTHMAN
                                   INTELLECTUAL PROPERTY LAW
13                                 GROUP PLLC
                                   JOEL B. ROTHMAN (*Pro Hac Vice*
14                                 pending)
                                   Joel.rothman@sriplaw.com
15                                 4651 North Federal Highway
16                                 Boca Raton, FL 33431
                                   Tel:  561-404-4350
17

18                                 *Attorneys for Plaintiff and the Class*
19

20

21

22

23

24

25

26

27

28

**Class Action Complaint**
                                           33