1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LAW OFFICES OF DARREN J. QUINN**
Darren J. Quinn (149679)
12702 Via Cortina, Ste 105
Del Mar, CA 92014
dq@dqlaw.com

**SCHNEIDER ROTHMAN INTELLECTUAL
PROPERTY LAW GROUP PLLC**
Joel B. Rothman (Admitted *Pro Hac Vice*)
4651 N. Federal Hwy
Boca Raton, FL 33431
Joel.rothman@sriplaw.com

*Attorneys for Plaintiffs And The Class*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT STEVENS and STEVEN VANDEL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CORELOGIC, INC., a Delaware Corporation,<br><br>Defendant. | Case No.: 14CV1158 BAS (JLB)<br><br><br>**FIRST AMENDED CLASS ACTION COMPLAINT** |

# Contents

I.     NATURE OF THE ACTION ............................................................................. 1

II.    JURISDICTION AND VENUE ........................................................................ 1

III.   PARTIES ........................................................................................................ 2

A.     Individual Representatives Stevens and Vandel ............................................ 2

B.     Defendant Corelogic ...................................................................................... 2

IV.    FACTS ............................................................................................................ 3

A.     CoreLogic Data and MLS Products ............................................................... 3

B.     Copyright Management Information and the Adoption of the DMCA .......... 5

C.     Copyright Management Information Metadata Used by Plaintiffs and
       Class Members ............................................................................................. 10

D.     CoreLogic's Removal, Alteration or Falsification of Metadata Used by
       Plaintiffs and Class Members ...................................................................... 12

E.     CoreLogic's Knowledge that its Removal, Alteration or Falsification
       of Metadata Used by Plaintiffs and Class Members Enables, Facilitates
       or Conceals Infringement. ........................................................................... 14

F.     Examples of Removal, Alteration or Falsification By CoreLogic of
       Stevens' Copyright Management Information .............................................. 17

G.     Examples of Removal, Alteration or Falsification by CoreLogic of
       Vandel's Copyright Management Information ............................................. 22

H.     Other Examples of Removal, Alteration or Falsification of Copyright
       Management Information by CoreLogic ....................................................... 26

V.     CLASS ALLEGATIONS ............................................................................... 27

VI.    COUNT I - VIOLATION OF 17 U.S.C. §1202 ............................................ 34

VII.   COUNT II-DECLARATORY RELIEF .......................................................... 40

VIII.  PRAYER FOR RELIEF .................................................................................. 41

IX.    JURY DEMAND ............................................................................................ 44

# Table of Figures

Figure 1 - Image of 3800 N. Ocean Drive Created by Stevens Showing Metadata  18
Figure 2 - CoreLogic RealQuest Report with Stevens' Photograph ........................ 20
Figure 3 - Stevens' Photograph Stripped of Metadata ............................................ 21
Figure 4 - Image of 915 Fawntail St. Created by Vandel Showing Metadata ........ 23
Figure 5 - CoreLogic RealQuest Report with one of Vandel's Photographs ........... 25

Figure 6 - Vandel's Photograph Stripped of Metadata............................................26

Plaintiffs ROBERT STEVENS and STEVEN VANDEL bring this action individually and on behalf of all others similarly situated (the "Class," as defined below), by and through undersigned counsel, against defendant CORELOGIC, INC. ("CoreLogic").

## I.    NATURE OF THE ACTION

1.    This case arises from CoreLogic's falsification, removal and/or alteration of photographers' copyright management information (such as the name of the author and copyright owner) in photographic works in violation of 17 U.S.C. §1202(a) and (b).  Plaintiffs Stevens and Vandel and the other class members are real estate and architectural photographers. Plaintiffs allege that CoreLogic knew or had reasonable grounds to know that its falsification, removal and/or alteration of copyright management information would induce, enable, facilitate or conceal copyright infringement of the photographic works of the individual Plaintiffs and the Class.  The individual Plaintiffs and the Class seek civil remedies under 17 U.S.C. §1203(b), including an injunction, impounding of any device or product involved in a violation of 17 U.S.C. §1202 for remedial modification or destruction, damages, costs and attorneys' fees.

## II.    JURISDICTION AND VENUE

2.    This action arises under the Copyright Act, 17 U.S.C. §101, *et seq.*

**First Amended Class Action Complaint**

1

3. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338(a) (acts of Congress related to copyright).

4. Defendant is subject to personal jurisdiction in this district.

5. Venue is proper in this district under 28 U.S.C. §1391(b) and §1400(a) because the events giving rise to the claims occurred in this district, Defendant is engaged in copyright violations in this district, and Defendant is subject to personal jurisdiction in this district.

### III.   PARTIES

#### A.   Individual Representatives Stevens and Vandel

6. Plaintiff Robert Stevens ("Stevens") provides real estate photography services to real estate brokers and agents. Stevens resides in Lake Worth, Florida.

7. Plaintiff Steven Vandel ("Vandel") provides real estate photography services to real estate brokers and agents. Vandel does business as Square Foot Studios.  Vandel resides in San Diego, California.

#### B.   Defendant Corelogic

8. Defendant CORELOGIC, INC. ("CoreLogic") is a Delaware corporation with offices in this district at 10277 Scripps Ranch Blvd., San Diego, California 92131.

---

**First Amended Class Action Complaint**

# IV.    FACTS

## A.    CoreLogic Data and MLS Products

9.      "A multiple listing service is a common database where member companies submit listings to facilitate the exchange of information about one another's listings so agents can cross company lines to sell one another's houses and can show clients all houses on the market, not just those homes listed with their own company." *Mid-America Real Estate Co. v. Iowa Realty Co*., No. 4:04-CV-10175, 2004 U.S. Dist. LEXIS 10155, 2004 WL 1280895, at *2 (S.D. Iowa 2004).

10.     Multiple Listing Service ("MLS") organizations typically require every listing contain at least one, and sometimes several, photographs of property offered for sale.  CoreLogic is the largest provider of technology services to MLS organizations in the United States.

11.     CoreLogic represents it has as clients 17 of the 20 top MLS organizations.

12.      CoreLogic represents that its data includes more than 3.3 billion property and financial records spanning more than 40 years.

13.     CoreLogic represents its data includes more than 99 percent of U.S. property records.

14.     CoreLogic's data includes photographs of real property created by Plaintiffs and the Class.

---

**First Amended Class Action Complaint**

3

15.     CoreLogic represents its data includes more than two million multiple listing systems-based active property listings.  On information and belief, these listings include photographs of real property created by Plaintiff and the Class.

16.     CoreLogic offers three MLS technology products under its MarketLinx® line: Fusion™, Innovia™ and Matrix™.

17.     CoreLogic products allow users of its MLS products to upload photographs of real estate listings.  CoreLogic's Fusion™ product features include uploading multiple photos to a listing simultaneously. CoreLogic's Innovia™ product features a drag-and-drop photo utility. CoreLogic's Matrix™ product features include a Matrix Photo Manager where users can upload multiple images at once.  On information and belief, millions of photographs of real property created by Plaintiffs and the Class were uploaded using products in CoreLogic's custody or control.

18.     Homes sell better when real estate listing photos are created by professional photographers.  *See* "A Picture is Worth a Thousand Dollars. True or False?" at http://www.redfin.com/research/reports/special-reports/2010/a_picture_is_worth_a_thousand_dollars_true_or_false.html accessed on July 14, 2013.

19.     Adding additional photographs to a listing increases the price that can be obtained for a property. *See* Benefield, at al., On the Relationship Between

Property Price, Time-on-Market, and Photo Depictions in a Multiple Listing

Service, Journal of Real Estate Finance and Economics, Vol. 43, No. 3, 2011.

20.     CoreLogic pays MLSs for the right to use data in CoreLogic's risk

management operations for its MLS Data-Drive Products.

     a.  Lenders use CoreLogic's MLS Data-Driven Solutions to provide

        timely and accurate information (analytics / solutions) to support risk

        management initiatives.

     b.  Appraisers seeking to improve the quality of valuation products and

        services (to lenders) can benefit from CoreLogic's MLS Data-Driven

        Solutions reports.

     c.  Government Agencies use MLS Data-Driven Solutions to provide a

        solution for risk management initives.

**B.      Copyright Management Information and the Adoption of the DMCA**

21.     The Copyright Act grants exclusive rights to Plaintiffs and the Class

members in their copyrighted works.  These exclusive rights include the right to (1)

reproduce the copyrighted work in copies, (2) to prepare derivative works based

upon the copyrighted work, (3) to distribute copies of the copyrighted work to the

public by sale or other transfer of ownership, or by rental, lease or lending, and (4)

to display the copyrighted work publicly. 17 U.S.C. § 106.

---

**First Amended Class Action Complaint**

22.   The Plaintiffs and the Class are entitled to these exclusive rights for all of the photographs at issue in this lawsuit.

23.   All of the photographs at issue in this lawsuit created by Plaintiffs and the Class contained "copyright management information" (sometimes referred to as "CMI") as that term is defined in 17 U.S.C. §1202(c).

24.   17 U.S.C. §1202 was first considered by Congress in 1998 as part of legislation designed to implement the World Intellectual Property Organization (WIPO) Copyright Treaty (CT) and Performances and Phonograms Treaty (WPPT).

25.   The text of Article 12 of the CT and Article 19 of the WPPT are similar.  Both require contracting parties to provide "adequate and effective legal remedies against any person performing any of the following acts … having reasonable grounds to know that it will induce, enable, facilitate or conceal an infringement …(i) to remove or alter any electronic rights management information without authority."

26.   Article 12 of the CT also requires adoption of "legal remedies against any person performing any of the following acts … having reasonable grounds to know, that it will induce, enable, facilitate or conceal an infringement … (ii) to distribute, import for distribution, broadcast or communicate to the public, without authority, works or copies of works knowing that electronic rights management information has been removed or altered without authority."

**First Amended Class Action Complaint**

27.     Both the WPPT and CT define "rights management information" as "information which identifies the work, the author of the work, the owner of any right in the work, or information about the terms and conditions of use of the work, and any numbers or codes that represent such information, when any of these items of information is attached to a copy of a work or appears in connection with the communication of a work to the public."

28.     Several bills with different names were introduced in the House of Representatives and the Senate in 1997 to implement WPPT and CT.  Reports were issued and hearings were held in both houses of Congress in 1998. The different bills were consolidated and renamed the "Digital Millennium Copyright Act of 1998" ("DMCA"). On May 11, 1998, the Senate Judiciary Committee issued a Report on the DMCA (Sen. Rpt. 105-190), which further described the intent of the prohibitions being adopted in Section 1202 of the DMCA.

> Copyright Management Information (CMI) is an important element in establishing an efficient Internet marketplace in copyrighted works free from governmental regulation. Such information will assist in tracking and monitoring uses of copyrighted works, as well as licensing of rights and indicating attribution, creation and ownership.

> Under the bill, CMI includes such items as the title of the work, the author, the copyright owner, and in some instances, the writer, performer, and director. CMI need not be in digital form, but CMI in digital form is expressly included. It is important to note that the DMCA does not require CMI, but if CMI is provided, the bill protects it from falsification, removal or alteration. Information that is not defined as CMI under the bill would not be protected by these provisions, although its removal or falsification might be protected under other laws, such as unfair trade. The definition of CMI may be expanded by regulation prescribed by the Register of Copyrights.

---

**First Amended Class Action Complaint**                    7

29.     The intentions of the Senate regarding copyright management information were expressed further in the Report's discussion of the language proposed for Section 1202.

> This section does not mandate the use of CMI, nor does it prescribe the choice of any particular type of CMI for those who do use it. It merely protects the integrity of CMI if a party chooses to use it in connection with a copyrighted work by prohibiting its deliberate deletion or alteration. Furthermore, this section imposes liability for specified acts. It does not address the question of liability for persons who manufacture devices or provide services.

30.     The DMCA was debated on the Senate floor on May 14, 1998.  During debate, Sen. Thompson noted:

> New technology creates exciting opportunities for intellectual property, but the digital environment also poses threats to this form of property. Unscrupulous copyright violators can use the Internet to more widely distribute copyrighted material without permission. To maintain fair compensation to the owners of intellectual property, a regime for copyright protection in the digital age must be created. Technology to protect access to copyrighted work must be safeguarded. Copyright management information that identifies the copyright owner and the terms and conditions of use of the copyrighted material must be secured.

Senate Floor Debate, Cong. Rec., S.4892 (May 14, 1998).

31.     A recurring theme throughout the debates of the DMCA is the protection the law provides against piracy. In statements and remarks before both House and Senate, members of Congress repeatedly extolled the benefits of the DMCA for the protections against piracy it would provide. The protection of copyright management information integrity, and the prohibition against alteration,

removal or falsification of copyright management information, implements

Congress' goal of preventing piracy.

32.    As adopted, 17 U.S.C. §1202(c) provides:

Definition. As used in this section, the term "copyright management information" means any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form, except that such term does not include any personally identifying information about a user of a work or of a copy, phonorecord, performance, or display of a work:

(1) The title and other information identifying the work, including the information set forth on a notice of copyright.

(2) The name of, and other identifying information about, the author of a work.

(3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.

(4) With the exception of public performances of works by radio and television broadcast stations, the name of, and other identifying information about, a performer whose performance is fixed in a work other than an audiovisual work.

(5) With the exception of public performances of works by radio and television broadcast stations, in the case of an audiovisual work, the name of, and other identifying information about, a writer, performer, or director who is credited in the audiovisual work.

(6) Terms and conditions for use of the work.

(7) Identifying numbers or symbols referring to such information or links to such information.

(8) Such other information as the Register of Copyrights may prescribe by regulation, except that the Register of Copyrights may not require the provision of any information concerning the user of a copyrighted work.

---

**First Amended Class Action Complaint**                  9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**C.      Copyright Management Information Metadata Used by Plaintiffs and Class Members**

33.      Each of the photographs created by Plaintiffs and Class members was under copyright protection the moment the photograph was created, and copyright management information (such as the name of the author or copyright owner) was added to help maintain control of the photos and prevent copyright infringement.

34.      One important purpose of copyright management information is to identify digital images as the works of Plaintiffs or Class members. The Internet has made it possible for images to be copied and distributed worldwide without detection. As a result, copyright infringement on the Internet has become a serious problem for professional photographers.   Real estate photographers are particularly vulnerable to the unauthorized copying of photographs due to the wide distribution of these photographs through an MLS.

35.      When copyright management information is removed, altered or falsified, Plaintiffs and the Class may find it difficult or impossible to enforce their rights under the Copyright Act.  For instance, Plaintiffs and Class members may find it more difficult or impossible to prove that their works were copied or used without permission when copyright management information has been removed, altered or falsified.  Additionally, subsequent infringers may claim that their copyright infringement was innocent, because the copyright management information on the infringing copy was removed, altered or falsified.  Further, it

may be difficult or impossible for a copyright owner to trace an infringer's profits from an infringing copy that has copyright management information removed, altered or falsified.

36.    At the time photographs are uploaded to a CoreLogic MLS product, the metadata of the digital files contains identifying information, such as information set forth in a notice of copyright. This metadata may include the name of the photographer, the name of the copyright owner (who might be different from the photographer who created the photograph if the photographer took the photo as a work for hire while employed by another photographer or photography studio, *see* 17 U.S.C. § 201), the terms and conditions for use, or other information related to the work such as geo-location information showing where the photograph was originally created.

37.    The individual items of metadata information are called "tags." A wide variety of tags can be included in metadata. Digital cameras record the current date and time a photograph is created and save this data in metadata. Camera settings, the model and make of camera, image orientation (rotation), aperture, shutter speed, focal length, metering mode, and ISO speed information are also stored in metadata, as is a thumbnail for previewing the picture on the camera's LCD screen, in file managers, or in photo manipulation software.  Such information can be used to identify the author or copyright owner of a photograph.

38.     Metadata also stores copyright information, such as the name of photographer and copyright owner, and permissions, if any, granted for use or reserved to the owner. For example, the permissions tag might contain the words "all rights reserved" to indicate to anyone who might encounter that image file that all rights for the use of the image were reserved by the copyright owner and any further use requires the owner's permission.

39.     Embedding metadata in image files is a standard technical measure used by Plaintiffs and the Class members to identify and protect their copyrighted works.

40.     Image metadata was developed pursuant to a broad consensus of copyright owners and service providers in an open, fair, voluntary, multi-industry standards process.  The metadata does not impose substantial costs on Internet service providers or substantial burdens on their systems or networks.

41.     Metadata for each digital image metadata (typically 64kB or less) is extremely small when compared to the size of the digital image of the photograph which may be a hundred times (e.g. 6.4 MB) larger or more.

**D.    CoreLogic's Removal, Alteration or Falsification of Metadata Used by Plaintiffs and Class Members**

42.     Real estate photographers across the nation have embedded copyright management information in the metadata of their images.

---

**First Amended Class Action Complaint**

43. All digital images uploaded to a CoreLogic MLS product by Plaintiffs and the Class members contained copyright management information metadata.

44. Copyright management information metadata was present at the time it was uploaded to an MLS operated or maintained by CoreLogic.

45. CoreLogic removed, altered and/or falsified this copyright management information after it was uploaded to an MLS operated or maintained by CoreLogic.

46. CoreLogic came into possession of the photographs uploaded to an MLS with copyright management information attached and CoreLogic intentionally and improperly removed it. Alternatively, the photographs uploaded to an MLS came into CoreLogic's possession without copyright management information attached, but CoreLogic knew that copyright management information had been improperly removed, and CoreLogic used the photographs anyway.

47. CoreLogic knew that it did not own the copyrights for the photographs uploaded to an MLS via a product that CoreLogic had custody or control of.

48. CoreLogic knew that it did not have any written authorization from the copyright owner to remove or alter copyright management information for the photographs uploaded to an MLS via a product that CoreLogic had custody or control of.

49.     CoreLogic made no attempt to contact the photographers for authorization to remove or alter the copyright management information for the photographs uploaded to a CoreLogic MLS product.

**E.     CoreLogic's Knowledge that its Removal, Alteration or Falsification of Metadata Used by Plaintiffs and Class Members Enables, Facilitates or Conceals Infringement**

50.     CoreLogic's use of the digital images of Plaintiffs and the Class is important to the desirability of its products by its paying users.

51.     CoreLogic has a business practice of removing or altering copyright management information from digital images that are owned by Plaintiffs and the Class.   On information and belief, CoreLogic created, owns and/or uses software that strips the copyright management information from the digital images of Plaintiff and the Class that were uploaded  to an MLS operated or maintained by CoreLogic.

52.     There is no legitimate business reason for CoreLogic to remove or alter copyright management information from digital images that are owned by Plaintiffs and the Class.   Digital images with copyright management information intact can be used by CoreLogic's software products just as easily as digital images with copyright management information removed.

53.     The copyright management information removed from the digital images does not materially reduce the file size of the digital images or materially

1
2
3
4

reduce storage costs for the digital images. The removal of copyright management information from the digital images does not materially slow down loading of the digital images.

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

54. CoreLogic knows, or has reasonable grounds to know, that removal or alteration of copyright management information will induce, enable, facilitate or conceal infringement of copyrights owned by Plaintiff and the Class. Without the copyright management information intact on the digital images, infringers are induced or enabled to copy the images of Plaintiffs and the Class, because copyright management information (*e.g.* name of author or copyright owner) have been removed. Without the copyright management information, an MLS user may mistakenly believe that the digital images of Plaintiffs and the Class can be downloaded or used freely. Without the copyright management information, copyright infringement is facilitated or concealed, because Plaintiffs and the Class have the difficult or impossible task of proving that a digital image belongs to them.

20
21
22
23
24
25
26
27

55. CoreLogic has a business practice of placing its own copyright notice on the same webpage or report as the digital images that are owned by Plaintiffs and the Class. This false copyright management information on CoreLogic webpages or reports induces or enables CoreLogic or its users to copy the images of Plaintiffs and the Class, because copyright management information (*e.g.* name of author or copyright owner) have been removed.

28

**First Amended Class Action Complaint**

15

56.     CoreLogic's false copyright management information can affirmatively mislead a CoreLogic product user to believe that the digital image can be downloaded and used without the consent of Plaintiff and the Class.  If CoreLogic disclosed to its users that it did not have the rights to reproduce, distribute or display the images of Plaintiffs and the Class, then CoreLogic's products are no longer appealing or less appealing to CoreLogic's users. CoreLogic's false copyright management information induces, enables or facilitates its paying users to use the infringing digital images in connection with an opinion or service (*e.g.* appraisal, insurability, etc.) by its users based upon the infringing images.

57.     CoreLogic's false copyright information on CoreLogic webpages or reports also facilitates or conceals infringement by CoreLogic and its users, because Plaintiffs and the Class will have the difficult or impossible task of proving that a digital image belongs to them when CoreLogic's copyright notice is associated with it.  Falsified copyright management information makes it harder for Plaintiffs and the Class to identify and prove infringement than simply removed copyright management information.   In fact, falsified copyright management information can affirmatively mislead Plaintiffs and the Class that the digital images are not owned by them.  With real estate photography, two different photographers of the same property would likely have at least some very similar photographs, but each would have separate copyrights in the similar photographs.

**First Amended Class Action Complaint**

58.     CoreLogic has been notified by at least one Class Member that infringing images have been uploaded to CoreLogic MLS products without permission.  When CoreLogic was notified of infringing images residing on a CoreLogic MLS product, CoreLogic responded to the Class Member that the photographs had been removed.

**F.     Examples of Removal, Alteration or Falsification By CoreLogic of Stevens' Copyright Management Information**

59.     Robert Stevens is an accomplished real estate and architectural photographer who works in South Florida.

60.     On August 9, 2009, Stevens created an aerial photograph of a residential condominium building located at 3800 N. Ocean Drive, Singer Island, Florida known as Resort at Singer Island. Stevens processed the image and, since he created it, he has licensed it for a fee to several real estate agents and brokers who have marketed condominium units for sale at 3800 N. Ocean Drive.

61.     The image in .jpg format that Stevens created and Stevens licensed to real estate agents and brokers contained copyright management information embedded in the metadata of the image. The metadata included information identifying Stevens as the author and claimed a copyright in the image. The photo of 3800 N. Ocean Drive showing a portion of the metadata is shown in Figure 1 (and **Exhibit 1**).

1
2
3
4
5
6
7
8
9
10
11



12
13

**Figure 1 - Image of 3800 N. Ocean Drive Created by Stevens Showing Metadata**

14

15    62.    Stevens licensed this image to Real Estate Agent Dermot C. O'Brien

16  for his use in connection with marketing properties at 3800 N. Ocean Drive. Mr.

17  O'Brien uploaded the image, with all metadata intact, to his listings with the

18

19  Realtors' Association of the Palm Beaches ("RAPB"), a South Florida MLS.

20    63.    RAPB is a client of CoreLogic and uses a CoreLogic MLS product to

21

22  operate its MLS business.

23    64.    Stevens is not a member of RAPB or any other multiple listing service.

24

25  Stevens has no contractual relationship with RAPB concerning his image of 3800

26  N. Ocean Drive.  Stevens never gave authority to RAPB or CoreLogic to remove or

27

28

---

**First Amended Class Action Complaint**

alter the copyright management information metadata on the images he provided to his Client.

65.    After Dermot C. O'Brien uploaded the photograph Stevens created of 3800 N. Ocean Dr. to the CoreLogic MLS product used by RAPB, CoreLogic copied Stevens' image into its RealQuest® database and sold access to the database and reports produced by the database without Stevens' permission, authority or compensation.  Figure 2 (and **Exhibit 2)** is a portion of a CoreLogic RealQuest® report for 3800 N. Ocean Dr. displaying Stevens' copyrighted image.   On information and belief, the report falsely attributes copyright ownership of Stevens' photograph to CoreLogic on the same webpage as Stevens' image with the stripped metadata.



**Figure 2 - CoreLogic RealQuest Report with Stevens' Photograph**

66.     Before CoreLogic copied Stevens' image, it stripped out the copyright management information metadata Stevens had embedded in his images. Figure 3 (and **Exhibit 3**) shows a screenshot of 3800 N. Ocean Dr. downloaded from RealQuest® stripped of all copyright management information metadata.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Figure 3 - Stevens' Photograph Stripped of Metadata**

67.     CoreLogic knew or had reasonable grounds to know that removal or alteration of Stevens' copyright management information would induce, enable, facilitate or conceal copyright infringement, and that any use of Stevens' copyrighted images without his permission would constitute copyright infringement.

68.     In fact, CoreLogic's removal of Stevens' copyright management information **did in fact enable, facilitate or conceal copyright infringement in this instance**.  Since Stevens first licensed his image of 3800 N. Ocean to Dermot C. O'Brien who used it to market properties at that address, other real estate agents have copied Stevens' copyrighted image without his permission and used it,

**First Amended Class Action Complaint**

without license or authority, to promote the sale of properties at 3800 N. Ocean.  In fact, **the real estate agent who listed Apt. 1850 at 3800 N. Ocean shown in Figure 2 above is an infringer of Stevens' image**. Upon information and belief, the infringer obtained Stevens' copyrighted image stripped of Stevens' metadata from the multiple listing service that both the infringer and O'Brien belong to and then used that image, without Stevens' authorization, in connection with the sale of the agent's listing for Apt. 1850.

### G.    Examples of Removal, Alteration or Falsification by CoreLogic of Vandel's Copyright Management Information

69.    Steven Vandel is a photographer and an architect specializing in photography of buildings and interior spaces.  Vandel does business as Square Foot Studios and resides in San Diego, California.

70.    On February 4, 2014, Vandel created 25 images of a single family residence located at 915 Fawntail St., San Marcos, California.  Vandel processed the image and, since he created it, he licensed it to a real estate agent brokers who marketed the residence for sale.

71.     The 25 images in .jpg format that Vandel created and licensed contained copyright management information embedded in the metadata of the images. The metadata included information identifying the copyright as belonging



**Figure 4 - Image of 915 Fawntail St. Created by Vandel Showing Metadata**

to "Square Foot Studios 2014." One of Vandel's 25 photographs showing a portion of the metadata is shown in Figure 4 (and **Exhibit 4**).

72.     Vandel licensed his 25 images to a local San Diego real estate agent for use in connection with marketing the property at 915 Fawntail St. The agent uploaded the image, with all metadata intact, to a listing with the San Diego County Regional Multiple Listing Service known as Sandicor.

73.     Sandicor is a client of CoreLogic and uses a CoreLogic MLS product to operate its MLS business.

---

**First Amended Class Action Complaint**

23

74.    Vandel is not a member of Sandicor or any other multiple listing service. Vandel has no contractual relationship with Sandicor concerning his image of 915 Fawntail St. Vandel never gave authority to Sandicor or CoreLogic to remove or alter the copyright management information metadata on the images he provided to his real estate agent client.

75.    After Vandel's real estate agent client uploaded the photographs Vandel created of 915 Fawntail St. to the CoreLogic MLS product used by Sandicor, CoreLogic copied Vandel's images into its RealQuest® database and sold access to the database and reports produced by the database without Vandel's permission, authority or compensation.  Figure 5 (and **Exhibit 5**) is a portion of a CoreLogic RealQuest® report for 915 Fawntail St. displaying one of Vandel's copyrighted images.  On information and belief, the report falsely attributes copyright ownership of Vandel's photograph to CoreLogic on the same webpage as as Vandel's image with the stripped metadata.

**Figure 5 - CoreLogic RealQuest Report with one of Vandel's Photographs**

76.     Before CoreLogic copied Vandel's 25 images, it stripped out the copyright management information metadata Vandel had embedded in his images. Figure 6 (and **Exhibit 6**) shows a screenshot of 915 Fawntail St. downloaded from RealQuest® stripped of all copyright management information metadata.

**First Amended Class Action Complaint**

1

2

3

4

5

6

7

8

9

10

11



12

**Figure 6 - Vandel's Photograph Stripped of Metadata**

13

### H.   Other Examples of Removal, Alteration or Falsification of Copyright Management Information by CoreLogic

14

15

77.   Copyright management information in metadata was present in

16

photographs of 4502 Lake Forrest Drive, Atlanta, Georgia 30327 taken by a

17

professional real estate photographer.  After the photographs were uploaded to an

18

19

MLS operated or maintained by CoreLogic, the copyright management information

20

metadata embedded in those images was stripped out.  Upon information and belief,

21

CoreLogic stripped out the copyright management information metadata.

22

23

CoreLogic then copied one or more of these images into its RealQuest® database

24

and sold access to the database and reports produced by the database without the

25

photographer's permission or authority and without compensation to the

26

27

photographer.

28

---

**First Amended Class Action Complaint**

## V.    CLASS ALLEGATIONS

78.    Plaintiffs and the Class have brought this case against CoreLogic because CoreLogic violated 17 U.S.C. §1202 by removing, altering and/or falsifying copyright management information of Plaintiffs and Class for the photographs uploaded to a CoreLogic MLS product.

79.    The Class is defined as all persons or entities that hold the copyright in one or more images stored in a digital file with metadata containing copyright management information that was uploaded to a multiple listing service via a product in the custody or control of CoreLogic.  Excluded from the Class are (a) defendant and any entity in which any defendant has a controlling interest; (b) the employees, officers and directors of those identified in subparagraph (a); (c) the heirs, successors, assigns and legal representatives of the persons identified in subparagraph (b) above; and (d) a multiple listing service.

80.    Plaintiffs reserve the right to request creation of subclasses.  Plaintiffs also reserve the right to expand the Class or any subclass to include a multiple listing service.

81.    This action has been brought and may properly be maintained as a class action pursuant to Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

82.     Numerosity of the Class--Fed. R. Civ. Proc. 23(a)(1): The persons and/or entities in the Class are so numerous that their joinder is impractical. Defendant represents over 2 million active MLS listings with photographs uploaded via a product in the custody or control of CoreLogic.

83.     Existence and Predominance of Common Question of Law and Fact--Fed. R. Civ. Proc. 23(a)(2) & 23(b)(3): There is a well-defined community of interest in the questions of law and fact involved affecting the Class. Questions of law and fact common to the Class include, but are not limited to, the following:

a.   Whether CoreLogic contacted Plaintiffs and the Class to obtain "authority" to remove or alter copyright management information from digital images uploaded to a multiple listing service via a product in the custody or control of CoreLogic within the meaning of 17 U.S.C. §1202(b);

b.   Whether CoreLogic "intentionally remove[d] or alter[ed] copyright management information" from digital images that are owned by Plaintiffs and the Class after the images were uploaded to a multiple listing service via a product in the custody or control of CoreLogic within the meaning of 17 U.S.C. §1202(b)(1);

c.   Whether CoreLogic "distribute[d] . . . copyright management information knowing that the copyright management information has

been removed or altered without authority of the copyright owner or the law" with respect to digital images that are owned by Plaintiffs and the Class that were uploaded to a multiple listing service via a product in the custody or control of CoreLogic within the meaning of 17 U.S.C. §1202(b)(2);

d.   Whether CoreLogic "distribute[d] . . . copies of works . . . knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law" with respect to digital images that are owned by Plaintiffs and the Class that were uploaded to a multiple listing service via a product in the custody or control of CoreLogic within the meaning of 17 U.S.C. §1202(b)(3);

e.   Whether CoreLogic removed or altered copyright management information from digital images that are owned by Plaintiffs and the Class knowing "that it will induce, enable, facilitate or conceal infringement of copyright" within the meaning of 17 U.S.C. §1202(b).

f.   Whether CoreLogic removed or altered copyright management information from digital images that are owned by Plaintiffs and the Class after "having reasonable grounds to know, that it will induce, enable, facilitate or conceal infringement of copyright" within the meaning of 17 U.S.C. §1202(b).

g. Whether CoreLogic knowingly "provide[d] copyright management information that is false" with respect to digital images that are owned by Plaintiffs and the Class that were uploaded to a multiple listing service via a product in the custody or control of CoreLogic within the meaning of 17 U.S.C. §1202(a)(1);

h. Whether CoreLogic knowingly "distribute[d] . . . copyright management information that is false" with respect to digital images that are owned by Plaintiffs and the Class that were uploaded to a multiple listing service via a product in the custody or control of CoreLogic within the meaning of 17 U.S.C. §1202(a)(2);

i. Whether CoreLogic provided or distributed false copyright management information from digital images with respect to digital images that are owned by Plaintiffs and the Class that were uploaded to a multiple listing service via a product in the custody or control of CoreLogic "with the intent to induce, enable, facilitate, or conceal infringement" within the meaning of 17 U.S.C. §1202(a);

j. Whether the Court should "grant temporary and permanent injunctions on such terms as it deems reasonable to prevent or restrain a violation" of 17 U.S.C. §1202 pursuant to 17 U.S.C. §1203(b)(1);

k.  Whether the Court should "order the impounding, on such terms as it deems reasonable, of any device or product that is in the custody or control of the alleged violator and that the court has reasonable cause to believe was involved in a violation" of 17 U.S.C. §1202 pursuant to 17 U.S.C. §1203(b)(2);

l.  Whether the Court should "as part of a final judgment or decree finding a violation, order the remedial modification or the destruction of any device or product involved in the violation that is in the custody or control of the violator or has been impounded" pursuant to 17 U.S.C. §1203(b)(6);

m.  The amount of statutory damages "in the sum of not less than $ 2,500 or more than $25,000" for Plaintiffs and each Class member within the meaning of 17 U.S.C. §1203(c)(3)(B);

n.  The amount of "any profits of the violator that are attributable to the violation and are not taken into account in computing the actual damages" pursuant to 17 U.S.C. §1203(c)(2);

o.  Whether the named Plaintiffs and the members of the Class are entitled to declaratory relief regarding their rights.

These questions of law and fact predominate over questions that affect only individual class members.

---

**First Amended Class Action Complaint**

1
2
3
4
5

84.     Typicality--Fed. R. Civ. Proc. 23(a)(3): The claims of the named Plaintiffs are typical of those of the Class.  Plaintiffs are asserting the same claims as the Class members. Plaintiff's claims arose from the same practice or course of conduct by CoreLogic in violation of 17 U.S.C. §1202.

6
7
8
9
10
11
12
13
14
15

85.     Adequacy of Representation--Fed. R. Civ. Proc. 23(a)(4): Plaintiffs are adequate representatives of the Class and will fairly and adequately protect the interests of the Class. The individual Plaintiffs' interests do not in any way conflict with the interests of the members of the Class that they seek to represent. Plaintiffs are committed to the vigorous prosecution of this action.  Plaintiffs have retained competent counsel experienced in complex class action litigation and experienced in actions for copyright violations to represent them.

16
17
18
19

86.     Injunctive Relief--Fed. R. Civ. Proc. 23(b)(2): CoreLogic has acted or refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

20
21
22
23

87.     Common Questions Predominate--Fed. R. Civ. Proc. 23(b)(3): As set forth above, the questions of law or fact common to class members predominate over any questions affecting only individual members.

24
25
26
27
28

88.     Superior Method--Fed. R. Civ. Proc. 23(b)(3):  A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  A class action is the best available method for the fair and efficient

**First Amended Class Action Complaint**

adjudication of this controversy. Since the damages suffered by individual class members, while not inconsequential, may be relatively small, the expense and burden of individual litigation make it impractical for members of the Class to seek redress individually for the wrongful conduct alleged herein. Should separate actions be required to be brought by each individual member of the Class, the resulting multiplicity of lawsuits would cause undue hardship and expense on the Court and the litigants. A class action is therefore the best method to assure that the wrongful conduct alleged herein is remedied, and that there is a fair, efficient, and full adjudication of this controversy.

89.     The Class members' interests in individually controlling the prosecution of separate actions is not strong given the relatively small amount of damages that may be recovered as compared to the costs of litigating an individual lawsuit.

90.     Plaintiffs are aware of no litigation concerning the same claims against CoreLogic.

91.     It is desirable to concentrate the litigation in the Southern District of California.  CoreLogic has an office in San Diego, and plaintiff Vandel resides in San Diego.  On information and belief, CoreLogic's violations of 17 U.S.C. §1202 arise, in part, from the removal, alteration or falsification of copyright management information from images uploaded in the Southern District of California to an MLS

operated or maintained by CoreLogic.  Additionally, CoreLogic's headquarters in Irvine, California is less than eighty miles from the courthouse in San Diego.  The Southern District of California has procedures in place, such as an Early Neutral Evaluation Conference, that will help facilitate the efficient resolution of this matter.

92.     The likely difficulties in managing a class action are few.  Plaintiff anticipates no undue difficulty in the management of this litigation as a class action. As set forth above, determination of the common issues set forth above can be proven on a common basis and will result in a judgment in favor of the Class and monetary relief that may be awarded on a common basis.  Additionally, any award of injunctive relief would apply to the Class as a whole.

## VI.    COUNT I - VIOLATION OF 17 U.S.C. §1202

93.     Plaintiffs incorporate the allegations of paragraphs 1 through 92 of this complaint as if fully set forth herein.

94.     Plaintiffs and members of the Class hold the copyright in one or more images stored in a digital file with metadata containing copyright management information that was uploaded to a CoreLogic MLS product.

95.     CoreLogic never contacted Plaintiffs and the Class to obtain "authority" to remove or alter copyright management information from digital

---

images uploaded to a CoreLogic MLS product within the meaning of 17 U.S.C. §1202(b).

96.     CoreLogic knew that it never contacted Plaintiffs and the Class to obtain "authority" to remove or alter copyright management information from digital images uploaded to a CoreLogic MLS product within the meaning of 17 U.S.C. §1202(b).

97.     CoreLogic has never had a business practice of attempting to contact Plaintiffs and the Class to obtain "authority" to remove or alter copyright management information from digital images uploaded to a CoreLogic MLS product within the meaning of 17 U.S.C. §1202(b).   In fact, CoreLogic's removal of copyright management information made it difficult or impossible to contact Plaintiffs and the Class to obtain "authority" " to remove or alter copyright management information from digital images uploaded to a CoreLogic MLS product within the meaning of 17 U.S.C. §1202(b).   Rather, CoreLogic has a business practice of removing or altering copyright management information from digital images that are owned by Plaintiffs and the Class after the images were uploaded to a CoreLogic MLS product.

98.     Without the authority of Plaintiffs and the Class, CoreLogic intentionally removed or altered copyright management information from digital

images that are owned by Plaintiffs and the Class after the images were uploaded to a CoreLogic MLS product in violation of 17 U.S.C. §1202(b)(1).

99.    Without the authority of Plaintiffs and the Class, CoreLogic distributed copyright management information knowing that the copyright management information had been removed or altered without authority of the copyright owner or the law with respect to digital images that are owned by Plaintiffs and the Class that were uploaded to a CoreLogic MLS product in violation of 17 U.S.C. §1202(b)(2).

100.   CoreLogic distributed copies of works knowing that the copyright management information had been removed or altered without authority of the copyright owner or the law with respect to digital images that are owned by Plaintiffs and the Class that were uploaded to a CoreLogic MLS product in violation of 17 U.S.C. §1202(b)(3).

101.   CoreLogic removed or altered copyright management information from digital images that are owned by Plaintiffs and the Class knowing that it will induce, enable, facilitate or conceal infringement of copyright in violation of 17 U.S.C. §1202(b).  Without the copyright management information intact on the digital images, infringers are induced or enabled to copy the images of Plaintiffs and the Class, because copyright management information (*e.g.* name of author or copyright owner) have been removed.  Without the copyright management

information, copyright infringement is facilitated or concealed, because Plaintiffs and the Class have the difficult or impossible task of proving that a digital image belongs to them.

102.   CoreLogic removed or altered copyright management information from digital images that are owned by Plaintiffs and the Class after having reasonable grounds to know that it will induce, enable, facilitate or conceal infringement of copyright in violation of 17 U.S.C. §1202(b).  Without the copyright management information intact on the digital images, CoreLogic has reasonable grounds to know that infringers are induced or enabled to copy the images of Plaintiffs and the Class, because copyright management information (*e.g.* name of author or copyright owner) have been removed.  Without the copyright management information, CoreLogic has reasonable grounds to know copyright infringement is facilitated or concealed, because Plaintiffs and the Class have the difficult or impossible task of proving that a digital image belongs to them.

103.   CoreLogic knowingly provided copyright management information that is false with respect to digital images that are owned by Plaintiffs and the Class that were uploaded to a CoreLogic MLS product in violation of 17 U.S.C. §1202(a)(1).  CoreLogic has a business practice of placing its own copyright notice on the same webpage or report as the digital images that are owned by Plaintiffs and the Class.

**First Amended Class Action Complaint**

37

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

104.   CoreLogic knowingly distributed copyright management information that is false with respect to digital images that are owned by Plaintiffs and the Class that were uploaded to a CoreLogic MLS product in violation of 17 U.S.C. §1202(a)(2).  CoreLogic has a business practice of placing its own copyright notice on the same webpage or report as the digital images that are owned by Plaintiffs and the Class.

105.   CoreLogic provided or distributed false copyright management information from digital images with respect to digital images that are owned by Plaintiffs and the Class that were uploaded to a CoreLogic MLS product with the intent to induce, enable, facilitate, or conceal infringement in violation of 17 U.S.C. §1202(a).  CoreLogic has a business practice of placing its own copyright notice on the same webpage or report as the digital images that are owned by Plaintiffs and the Class.   This false copyright information on CoreLogic webpages or reports induces or enables CoreLogic or its users to copy the images of Plaintiffs and the Class, because copyright management information (*e.g.* name of author or copyright owner) have been removed.  This false copyright information on CoreLogic webpages or reports facilitated or concealed infringement by CoreLogic and its users, because Plaintiffs and the Class have the difficult or impossible task of proving that a digital image belongs to them.

---

**First Amended Class Action Complaint**
                                        38

106.   The profits attributable to CoreLogic's violation of 17 U.S.C. §1202 include the revenue from CoreLogic's non-MLS products, such as RealQuest and risk management products, that contain copies of Plaintiffs' and the Class members' images after the copyright management information has been removed, altered and/or falsified.  Plaintiffs' and the Class members' photographs add significant value to CoreLogic's non-MLS products, because the customers and users of those products use those photographs.

107.   CoreLogic's non-MLS products that use Plaintiffs' and the Class members' photographs are very lucrative and generate millions in revenues each year.

108.   CoreLogic did not request permission of Plaintiffs and the Class to use their images for CoreLogic's non-MLS products.

109.   CoreLogic's 2013 revenues were over $1.3 billion.  CoreLogic is extremely sophisticated with respect to intellectual property matters.  CoreLogic spent over $7.0 million in 2012 to enforce patent and other intellectual property rights.  In its 2012 Annual Report, CoreLogic states: "Our success depends, in part, upon our intellectual property rights. We rely primarily on a combination of patents, copyrights, trade secrets, and trademark laws and nondisclosure and other contractual restrictions on copying and distribution to protect our proprietary technology and information."  CoreLogic acknowledged its business risk for

violating the Copyright laws when it states: "As we continue to develop and expand our products and services, we may become increasingly subject to infringement claims from third parties such as non-practicing entities, software providers or suppliers of data. Likewise, if we are unable to maintain adequate controls over how third-party software and data are used we may be subject to claims of infringement."

110.   Unless enjoined from violating 17 U.S.C. §1202, Plaintiffs and the Class members will suffer irreparable harm by depriving them of the right to identify and control the reproduction and/or distribution of their copyrighted works, to receive licensing revenue, and to pursue copyright infringement remedies.  The balance of hardships tips in favor of Plaintiffs and the Class because CoreLogic will not be damaged if it is required to comply with 17 U.S.C. §1202.  Plaintiffs and the Class members are therefore entitled to an injunction barring CoreLogic from violating 17 U.S.C. §1202 and impounding any device or product that is in the custody or control of CoreLogic and that the court has reasonable cause to believe was involved in a violation of 17 U.S.C. §1202.

111.   Plaintiffs and the Class pray for relief as set forth in the Prayer below.

## VII.   COUNT II - DECLARATORY RELIEF

112.   Plaintiffs incorporate the allegations of paragraphs 1 through 111 of this complaint as if fully set forth herein.

113.   An actual controversy exists between the Plaintiffs and the Class Members on the one hand, and CoreLogic on the other hand, by reason of CoreLogic's present and continuing violations of 17 U.S.C. § 1202 alleged herein.

114.   Plaintiffs and Class members are entitled to a judgment declaring that CoreLogic's actions are unlawful and, specifically, that CoreLogic violated their rights under 17 U.S.C. § 1202.

115.   To the extent CoreLogic argues it had authority from Plaintiffs and Class to undertake any of the actions set forth in 17 U.S.C. §1202(b)(1), (2) or (3) without compensation to Plaintiffs and the Class, a declaration is sought that any such authority has been revoked as a result of this lawsuit or has expired.

116.   A declaration is sought that CoreLogic did not request permission from Plaintiffs and the Class to use their photographs in connection with any non-MLS CoreLogic products.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the class members pray for relief and that judgment be entered against defendant as follows:

a.   For certification of a Class or subclasses, as appropriate;

b.   Temporary and permanent injunctions to prevent or restrain a violation of 17 U.S.C. §1202 pursuant to 17 U.S.C. §1203(b)(1);

---

**First Amended Class Action Complaint**

c.   An order impounding "any device or product that is in the custody or control of the alleged violator and that the court has reasonable cause to believe was involved in a violation" of 17 U.S.C. §1202 pursuant to 17 U.S.C. §1203(b)(2);

d.   Damages pursuant to 17 U.S.C. §1203(a)(3) and (c) including actual damages and defendant's profits attributable to the violation of 17 U.S.C. §1202;

e.   At Plaintiffs' election, statutory damages in the sum of not less than $2,500 or more than $25,000 for Plaintiffs and each Class member pursuant to 17 U.S.C. §1203(c)(3)(B);

f.   Costs pursuant to 17 U.S.C. §1203(b)(4);

g.   Attorneys' fees pursuant to 17 U.S.C. §1203(b)(5);

h.   As part of a final judgment or decree finding a violation, ordering the remedial modification or the destruction of any device or product involved in the violation that is in the custody or control of the violator or has been impounded pursuant to 17 U.S.C. §1203(b)(6);

i.   Declaratory relief;

j.   A trial by jury on all claims so triable; and

k.   Such other and further relief as may be proper.

1

DATED:  August 6, 2014          Respectfully submitted,

2

**LAW OFFICES OF DARREN J. QUINN**

3

4

/s/ Darren J. Quinn

5

DARREN J. QUINN
12702 Via Cortina, Suite 105

6

Del Mar, CA 92014

7

Tel: 858-509-9401
dq@dqlaw.com

8

9

**SCHNEIDER ROTHMAN**

10

**INTELLECTUAL PROPERTY LAW**
**GROUP PLLC**

11

12

/s/ Joel B. Rothman

13

JOEL B. ROTHMAN

14

4651 North Federal Highway

15

Boca Raton, FL 33431
Tel:  561-404-4350

16

Joel.rothman@sriplaw.com

17

*Attorneys for Plaintiffs and the Class*

18

19

20

21

22

23

24

25

26

27

28

## IX.   JURY DEMAND

Plaintiffs demand a jury trial on all claims so triable.


DATED:  August 6, 2014          Respectfully submitted,

                                **LAW OFFICES OF DARREN J. QUINN**


                                /s/ Darren J. Quinn
                                DARREN J. QUINN
                                12702 Via Cortina, Suite 105
                                Del Mar, CA 92014
                                Tel: 858-509-9401
                                dq@dqlaw.com

                                **SCHNEIDER ROTHMAN**
                                **INTELLECTUAL PROPERTY LAW**
                                **GROUP PLLC**


                                /s/ Joel B. Rothman
                                JOEL B. ROTHMAN Admitted *Pro Hac*
                                *Vice*
                                Joel.rothman@sriplaw.com
                                4651 North Federal Highway
                                Boca Raton, FL 33431
                                Tel:  561-404-4350

                                *Attorneys for Plaintiffs and the Class*

**First Amended Class Action Complaint**
                                            44