UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT STEVENS, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>CORELOGIC, INC.,<br>　　　　　　　　　　　　Defendant. | Case No.: 14cv1158 BAS (JLB)<br><br>**ORDER DENYING PLAINTIFFS' EX PARTE MOTION TO CONTINUE CLASS CERTIFICATION AND EXPERT REPORT DEADLINES**<br><br>**[ECF No. 53]** |

Presently before the Court is Plaintiffs' *ex parte* Motion to Continue Class Certification and Expert Report Deadlines for Two Weeks. (ECF No. 53.) Defendant filed a Response in Opposition (ECF No. 56), and Plaintiffs filed a Reply (ECF No. 57). For the reasons set forth below, Plaintiffs' Motion is **DENIED**.

Plaintiffs seek to continue the class certification and expert deadlines until after the Court has addressed outstanding discovery issues,[1] and has ruled upon Plaintiff's June 15, 2015 request to modify the Scheduling Order dates.[2] (ECF No. 53 at 2.) Plaintiffs assert

---

[1] The Court has scheduled an informal telephonic discovery conference for July 17, 2015. (ECF No. 52.)

[2] Plaintiffs incorrectly state that they have a pending request to modify the Scheduling Order. Judge Burkhardt's Civil Chambers Rules provide: "The dates and times set in the Case Management Conference Order will not be modified except for good cause shown in *timely filed motions*." (Section III, Paragraph C.) The request that Plaintiffs allude to was made in an informal joint discovery statement that was lodged to Judge Burkhardt's efile email address.

1

that "CoreLogic's refusal to timely comply with its discovery obligations has made it effectively impossible for [P]laintiffs to comply with [P]laintiffs' Monday, July 13, 2015 deadline to file class certification papers and Tuesday, July 15, 2015 deadline to file initial expert reports." (*Id*. at 5.)

In its Opposition, Defendant argues that Plaintiffs "do not explain how or why the discovery they demand is necessary for the expert reports or class certification briefing they seek to delay." (ECF No. 56 at 2.) Furthermore, Plaintiffs have agreed to defer a number of discovery issues. "Plaintiffs cannot decide to defer discovery disputes and then contend that those discovery disputes provide a basis for delaying this case." (*Id*. at 6.) Finally, Defendant maintains that Plaintiffs' *ex parte* Motion is untimely and inappropriate because it "raises new discovery disputes regarding, for instance, interrogatories and document requests, about which the parties have not met and conferred." (*Id*. at 7.)

The Court finds that Plaintiffs have failed to set forth good cause for the requested extension. Plaintiffs do not address why the requested discovery is relevant to the dates they seek to continue. While Plaintiffs argue that "CoreLogic's refusal to timely comply with its discovery obligations has made it effectively impossible for [P]laintiffs to comply" with deadlines, Plaintiffs fail to address how the outstanding discovery relates to, or why it is necessary for, their motion for class certification or expert reports.

Additionally, Judge Burkhardt's Civil Chambers Rules required that "Any motion requesting extensions should be filed **ten calendar days** in advance of the dates and deadlines at issue . . . ." (Section III, Paragraph C.) Plaintiffs' motion was filed on July 7, 2015, less than one week before the class certification deadline. (ECF No. 53.) "When [a] motion is made after time has expired, Fed. R. Civ. P. 6(b)(1)(B) requires the parties to address excusable neglect." (Judge Burkhardt's Civil Chambers Rules, Section III, Paragraph C.) Plaintiffs' motion fails to address excusable neglect, nor does it acknowledge that the motion to continue is untimely. The deadlines that Plaintiffs seek to continue have been in place since January 7, 2015. (ECF No. 26.)

Furthermore, a number of the pending discovery disputes that Plaintiffs offer in support of their Motion to Continue, are not yet ripe for Court intervention. Plaintiffs seek to continue deadlines until after the Court has addressed the outstanding discovery disputes raised in the June 15, 2015 Joint Statement, attached hereto as Exhibit A. (ECF No. 53 at 2.) Specifically, Plaintiffs point to Defendant's "hampering and delaying communications and subpoenas to its MLS customers," as a justification for continuing dates. (ECF No. 53 at 7.) However, Plaintiffs have agreed to defer this dispute, as well as others: "The parties agree that this dispute is deferred." (June 15, 2015 Joint Statement, Exhibit A at 9.)

Finally, Defendant contends that a number of discovery disputes were raised for the first time in the Joint Statement and in Plaintiffs' *ex parte* Motion. (ECF No. 56 at 6.) In light of Defendant's representation, it appears that the parties have not completed the meet and confer process as to a number of the disputes raised. Accordingly, these disputes are not properly before the Court. "The Court will not address discovery disputes until counsel have met and conferred to resolve the dispute. The Court expects strict compliance with the meet and confer requirement . . . ." (Judge Burkhardt's Civil Chambers Rules, Section IV, Paragraph A.) The Minute Order directing the parties to lodge the Joint Statement further provided: "The Court expects that the parties have complied with Judge Burkhardt's Civil Chambers Rules regarding the meet and confer requirements as to each discovery dispute raised in the Joint Statement." (ECF No. 48.)

For the reasons set forth above, Plaintiffs' *ex parte* Motion to Continue Class Certification and Expert Report Deadlines is **DENIED**.

**IT IS SO ORDERED.**

Dated: July 10, 2015

_Jill Burkhardt_
Hon. Jill L. Burkhardt
United States Magistrate Judge

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: MULTIPLE LISTING SERVICE REAL ESTATE PHOTO LITIGATION | Case No. 3:14-cv-01158-BAS-JLB<br><br>**JOINT STATEMENT REGARDING OUTSTANDING DISCOVERY DISPUTES**<br><br>Magistrate Judge: Hon. Jill L. Burkhardt |

The parties in the above-captioned matter submit the following Joint Statement Regarding Outstanding Discovery Disputes pursuant to the Minute Order, filed June 12, 2015 advising "the Court of the nature of ALL currently outstanding discovery disputes." [ECF 48]

## I. PLAINTIFFS' OUTSTANDING DISCOVERY DISPUTES WITH DEFENDANT CORELOGIC

### A. Production of Documents CoreLogic Agreed To Produce Pursuant to CoreLogic's March 9, 2015 Discovery Responses

CoreLogic agreed to produce documents pursuant to CoreLogic's discovery responses served March 9, 2015 and subsequent meet and confer discussions. A chart summarizing the documents CoreLogic agreed to produce in discovery responses is attached as **Exhibit A**, with annotations that Plaintiffs contend represent the state of CoreLogic's production. A chart that Plaintiffs contend summarizes documents CoreLogic agreed to produce after meet and confer discussions is attached as **Exhibit B**.

On March 16, 2015, CoreLogic produced documents it identified as Bates CoreLogic135-11147 containing contracts between CoreLogic and MLS operators that were identified in response to Interrogatory Nos. 1 and 2 and Bates CoreLogic 1148-11541 containing contracts between MLS operators and MLS users.

On June 12, 2015, CoreLogic produced additional documents that it identified as containing PartnerInfoNet contracts, marketing documents for certain CoreLogic products and a spreadsheet. There is an "unexpected end of archive" error with the those files, so they could not be extracted and viewed. The error was corrected on June 15, 2015.

On June 15, 2015 at 3:50 pm, CoreLogic made an additional production of documents.

Plaintiffs request that CoreLogic complete production of these documents by **Friday, June 26, 2015 (or such other date consistent with any amended Scheduling Order)**.

*CoreLogic's Position:* Today is the first time Plaintiffs have proposed a date certain for the completion of CoreLogic's production. CoreLogic has been producing documents

on a rolling basis, and has produced more than 13,000 pages of documents, as well as the many thousands of requested source-code files.  Plaintiffs' charts regarding the claimed deficiencies in CoreLogic's production are not accurate; for example, they say that CoreLogic has not produced MLS rules and regulations in its possession, but CoreLogic produced those documents back in March.  They say that CoreLogic has not produced sales brochures or identified product web pages, but CoreLogic did so last week.  They say that CoreLogic has not identified those involved in writing MLS software code to copy or modify photos, but CoreLogic has provided its records of who wrote which pieces of the code in question as part of its source code repositories.  And Plaintiffs first identified their technical problem extracting CoreLogic's June 12 document production *today*, June 15, at 12:21 PM; CoreLogic resolved that issue by 2:03 PM today.  This is a manufactured dispute.  To the extent Plaintiffs believe there are remaining deficiencies in CoreLogic's document production, they should identify those deficiencies and meet and confer regarding a date for production of those documents (or receive confirmation that no such documents exist).

### B. CoreLogic Partially Produced Contracts with MLS Operators In Response to Interrogatory Nos. 1 and 2

On March 16, 2015, CoreLogic produced documents Bates CoreLogic135-11147 containing contracts between CoreLogic and MLS operators that were identified in response to Interrogatory Nos. 1 and 2.  Those interrogatories requested the identities of CoreLogic's MLS software customers

On April 21, 2015, plaintiffs sent CoreLogic's counsel a list of the MLS operators listed in those document and a list of MLS operators disclosed in CoreLogic press releases to show CoreLogic's production of contracts was incomplete.

Plaintiffs request that CoreLogic complete production of these documents by **Friday, June 26, 2015 (or such other date consistent with any amended Scheduling Order)**.  In light of the partial and incomplete production of contracts by CoreLogic, plaintiffs also request that CoreLogic respond to Interrogatory No. 1 without reference to

2

Rule 33(d) by **Friday, June 26, 2015 (or such other date consistent with any amended Scheduling Order)** so plaintiffs can be assured that they have all agreements.

*CoreLogic's Position:* This is another attempt to manufacture a discovery dispute where none exists: Plaintiffs have never met and conferred with CoreLogic regarding this issue. If they had, they would have learned that they are mistaken in their understanding of the CoreLogic press releases they referenced in the list they sent in April. That list includes 58 MLSes listed as participating in CoreLogic's "PartnerInfoNet" arrangement. But that arrangement is not limited to those who use CoreLogic's MLS software, and thus it is no surprise that some MLSes are identified as participating in PartnerInfoNet but have no contract with CoreLogic for the use of CoreLogic's MLS software.

### C. Rule 30(b)(6) Deposition of CoreLogic Set for June 1, 2015

On May 11, 2015, plaintiffs served their Notice of Video Deposition of Defendant CoreLogic, Inc. ("PMK Deposition") listing thirty-two (32) categories of testimony. Almost all of those deposition categories were conveyed to CoreLogic via email on April 22, 2015 to facilitate discussion prior to serving the formal deposition notice.

The PMK Deposition was noticed to commence on June 1, 2015 in downtown San Diego. Plaintiffs explained in an email accompanying the PMK Deposition notice that "downtown San Diego [] is only about 75 miles from CoreLogic's principal place of business in Irvine and is about a 10 minute drive from the airport or about five minute walk from the train station. 'The general presumption is that a corporate designee is deposed at the corporation's principal place of business.' *Avago Techs. U.S. Inc. v. IPtronics, Inc.*, 2012 U.S. Dist. LEXIS 159260 (N.D. Cal. Nov. 6, 2012)."

On May 29, 2015, CoreLogic served objections to plaintiffs' PMK Deposition, so the PMK Deposition did not go forward on June 1, 2015. [*See* **Exhibit C.**] On June 2, 2015, the parties met and conferred regarding those objections. CoreLogic objects to producing a witness for certain deposition testimony topics or subtopics as set forth on **Exhibit D**.

On June 11, CoreLogic offered the following deposition dates:

| Al McElmon | 6/23/15 | Greensboro, NC | Topics 1, 2, 3, 4 (technical subjects) | Technical issues relating to InnoVia |
| Alex Troy | 6/30/15 | Vancouver, Canada | Topic 5 (technical subjects) | Technical issues relating to Fusion, Matrix, MLXchange, and Tempo5 |

Plaintiffs request that CoreLogic designate and produce witnesses for all 32 deposition topics by **Tuesday, June 30, 2015 (or such other date consistent with any amended Scheduling Order).**

Plaintiffs request that the PMK Deposition take place within 75 miles of CoreLogic's world headquarters in Irvine, CA.  *See Avago Techs. U.S. Inc*, 2012 U.S. Dist. LEXIS 159260 (N.D. Cal. Nov. 6, 2012).

*CoreLogic's Position:* **Deposition Topics.**  Plaintiffs served a *fifteen-page* 30(b)(6) deposition notice on CoreLogic, containing *thirty-two* topics for deposition—many of which contain numerous subparts, making the real number of topics more than 100, covering numerous aspects of CoreLogic's business, marketing, technology, and finances. Meanwhile, Plaintiffs have noticed *zero* individual depositions.  The parties met and conferred telephonically regarding those topics on June 2.  On that call, Plaintiffs agreed to narrow or clarify some of the topics, but said that they wished to expand or modify other topics.  They sent a (somewhat cryptic) summary of the call on June 4.  On June 5, counsel for CoreLogic requested that Plaintiffs provide an amended list of topics setting forth clearly what modifications, clarifications, amendments, and expansions to topics they were proposing.  Plaintiffs have not provided such an amended list of topics or made any further effort to meet and confer in the intervening week.  Because it is not clear what Plaintiffs are proposing, CoreLogic is not able to fully respond, except by reference to the objections it served.

Nevertheless, CoreLogic acknowledges that there are some topics encompassed within the 30(b)(6) notice on which Plaintiffs are entitled to testimony, and has moved forward with scheduling depositions on those topics even while the dispute regarding deposition topics is ongoing.  CoreLogic offered witnesses on the key technical issues in

the case—the operation of the CoreLogic MLS software that is the subject of Plaintiffs' claims—on June 11. Plaintiffs have not said whether or not they plan to go forward with the depositions on the offered dates. Given that Plaintiffs have not confirmed these first two depositions, CoreLogic cannot offer further dates for other witnesses, since the scheduling of those depositions depends in part on whether the first two witnesses' depositions go forward on June 23 and June 30.

**Deposition Location.** Plaintiffs have chosen to serve a vast array of 30(b)(6) topics, which will necessitate testimony from a number of CoreLogic employees who work in different offices. None of CoreLogic's operations relating to the subject matter of this case occur in this district. Some CoreLogic operations relating to the case occur at CoreLogic's Irvine, California office, and witnesses relating to those operations (for example, the company's finances) will be offered in Irvine, where those witnesses live and work. But the software on which Plaintiffs have chosen to focus their claims is not developed in California. Some of the software is developed in North Carolina, and CoreLogic intends to offer its witness on that software for deposition in North Carolina. Other software at issue is developed near Vancouver, Canada, and CoreLogic will offer a witness on that software in Vancouver. The relevant "place of business" of CoreLogic here is where the business operations that are the subject of each particular topic are conducted; thus, even under the default rule, they should be conducted near the CoreLogic offices in question. Plaintiffs have noticed no individual depositions and are using the 30(b)(6) process as a substitute for individual depositions. There is no question that individual depositions would need to take place where the witnesses live and work; Plaintiffs should not be able to shift the burden onto Defendant by serving dozens upon dozens of 30(b)(6) topics instead of noticing individual depositions.

### D.     Source Code Review Issues

On June 9, 2015, the parties filed a Stipulation Regarding Source Code Review [ECF47] to resolve several outstanding disputes regarding review of source code produced by CoreLogic in response to discovery. The parties set a source code review on

**Monday, June 15, 2015** in San Francisco (CoreLogic's counsel's office) with plaintiffs' counsel (Joel Rothman) and their computer expert (Chuck Hedrick) flying to San Francisco.

### 1. Reimbursement of Costs for Source Code Review in Irvine on May 15, 2015

Plaintiffs contend plaintiffs' expert Chuck Hedrick was unable to meaningfully review CoreLogic source code when it was produced in Irvine, California on **May 15, 2015** for the reasons set forth in the Declaration of Chuck Hedrick submitted to the court on June 4, 2015.

Plaintiffs expended over $6,500 to attend this May 15, 2015 source code review consisting of $750 to fly an IT Manager from CoreLogic's counsels' firm to supervise the source code review, plus over 10 hours of attorney time ($4,500) and expert time ($1,200) in connection with the May 15, 2015 source code review. Paragraph 5 of the Stipulation Regarding Source Code Review [ECF47] reserves plaintiffs' right to seek reimbursement.

*CoreLogic's Position:* There is no dispute for the Court to resolve. Plaintiffs appear to be reserving the right to raise a dispute in the future. Any difficulties experienced by Plaintiff's expert at the first source code review result from the fact that Plaintiffs did not request that certain software tools be installed on the source code review computer, and later decided that such tools would facilitate the review. Plaintiffs requested that Defendant install those tools in advance of the second source code review, and Defendant did so.

### 2. Production of Source Code Files Identified in CoreLogic's Interrogatory Responses Nos 6-8

On June 2, 2015, the parties submitted to the court Defendant Corelogic, Inc.'s Supplemental Responses And Objections to Interrogatory Nos. 6, 7, and 8  *See* **Exhibit E**. As more fully set forth in **Exhibit E**, CoreLogic identified and agreed to produce certain source code files in response to Interrogatory Nos. 6-8, that request information regarding the operation of CoreLogic's MLS software.

Paragraph 6 of the Stipulation Regarding Source Code Review [ECF47] provides: "The parties defer their dispute regarding whether CL has sufficiently responded to Plaintiffs' Interrogatories 6, 7 and 8, and whether CL can rely upon Fed. R. Civ. P. 33(d) in its responses to these interrogatories."

Plaintiffs anticipate to be able to determine at the June 15, 2015 source code review in San Francisco whether CoreLogic may rely upon Rule 33(d) in responding to these interrogatories.

***CoreLogic's Position:*** There is no dispute for the Court to resolve. Plaintiffs appear to be reserving the right to raise a dispute in the future. CoreLogic has appropriately relied on Rule 33(d) in responding to these interrogatories, as the answer to the interrogatory may be determined by examining the source code of the CoreLogic products in question, and the burden of ascertaining the answer is substantially the same for either party.

### 3. Production of Source Code Files Identified In Response to Interrogatory No. 6

On May 18, 2015, pursuant to ¶9(d) of the Order Granting Joint Motion And Entering Stipulated Protective Order [ECF 42], plaintiffs requested .tiff or .pdf copies of the following "limited portions of source code that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial."

> 1. The files listed in DEFENDANT CORELOGIC, INC.'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO INTERROGATORY NOS. 6, 7, AND 8 IN PLAINTIFF STEVEN VANDEL'S FIRST SET OF INTERROGATORIES, namely:
> [list of files]
> 2. The files Mr. Hedrick identified on the .txt file he saved to the C: drive of the source code review laptop that he showed to Mr. Weinroth.

Paragraph 2 of the Stipulation Regarding Source Code Review [ECF47] provides: "Portions of source code identified by Plaintiffs' expert pursuant to the terms of the

Stipulated Protective Order entered at Dkt. 41 in this action ("SPO") shall be produced with Bates numbering within three (3) days of Plaintiffs' request unless said portions are challenged pursuant to the terms of the SPO."

No Bates numbered source code files have been produced to plaintiffs. CoreLogic takes the position that plaintiffs' expert must review each of these files identified in its interrogatory responses at the **June 15, 2015** source code review in San Francisco.

Plaintiffs request that all source code files designated by plaintiffs' expert on June 15, 2015 be produced in Bates format no later than **Thursday, June 18, 2015**.

*CoreLogic's Position*: CoreLogic is producing the source files identified by Mr. Hedrick at the source code review (denominated "2" above) today, June 15, 2015. The source files denominated "1" above are not subject to production under the Protective Order, because Plaintiffs are requesting their production in lieu of inspection. That is expressly forbidden by the protective order to which the parties agreed. *See* ECF No. 42 ¶ 9(d) ("The Receiving Party may request .tiff or .pdf copies of limited portions of source code that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial, **but shall not request .tiff or .pdf copies for the purpose of reviewing the source code in the first instance**.") (emphasis added). If Mr. Hedrick determines, upon inspecting them, that additional files are reasonably necessary for the agreed purposes, Plaintiffs may request their production at that time. By the parties' agreement, CoreLogic will produce the files or articulate its objection to doing so within three business days of the request.

### E.  Deferred Discovery Disputes

#### 1.  Deferred Written Discovery

The parties agreed to defer certain of plaintiffs' discovery until after CoreLogic completes producing the documents and source code it agreed to produce. *See* §I.A, *supra*.

A list of the deferred written discovery is attached as **Exhibit F**.

*CoreLogic's Position:*  This section does not identify any dispute for the Court to resolve.

### 2.   Subpoenas to MLS Operators With Cover Letter

Plaintiffs sent a blank draft subpoena to CoreLogic MLS customers on April 21, 2015.  See **Exhibit G**.  Plaintiffs took the position that a Confidential designation on contracts produced by CoreLogic cannot prevent plaintiffs from serving subpoenas to such persons.   CoreLogic took the position that the identity of its MLS customers are confidential and that plaintiffs' proposed cover letter was improper.  Plaintiffs further responded that the identity of the MLS operators is available on the Internet, including many MLS operators disclosed in CoreLogic press releases.  Plaintiffs also sent a draft cover letter to accompany each subpoena that had been revised after discussions with CoreLogic's counsel.  *See* **Exhibit H**.  CoreLogic took the position that the draft cover letter was improper.  Plaintiffs took the position that communications with those MLS operators are fully privileged and authorized pursuant to the litigation privilege set forth in Cal. Civil Code §47.

Following further meet and confer, CoreLogic sent draft objections to the draft subpoena on May 25, 2015.  *See* **Exhibit I**.  On May 29, 2015, plaintiffs agreed that they will not send any letter to an MLS until the Court has ruled on the propriety of such letter and will not serve a subpoena to an MLS until  the Court has ruled on the propriety of such subpoena (or until the parties have agreed that no Court intervention is necessary).  The parties agree that this dispute is deferred.

*CoreLogic's Position:*  This section does not identify any dispute for the Court to resolve.

### F.   Scheduling order

Because of the outstanding discovery issues above, plaintiffs believe that it is appropriate to modify the Scheduling Order [ECF 26].  The current Scheduling Order provides for, *inter alia*:

| Class Certification Motion | 7/13/15 |
|---|---|
| Expert Reports - Initial | 7/14/15 |
| Expert Reports – Opposition | 8/15/15 |
| Discovery Cut off | 9/14/15 |
| Mandatory Settlement Conference | 9/21/15 |
| Motion Cut off | 10/14/15 |

Pursuant to the Joint Discovery Plan [ECF 23], the parties focused on issues that would facilitate "plaintiffs being able to make a settlement demand and move for class certification." *Id*. at PDF 2. Pursuant to the Joint Discovery Plan, the parties pursued "informal settlement discussions." *Id*. Plaintiffs issued a written settlement demand within insurance policy limits on April 28, 2015.

Pursuant to the Joint Discovery Plan: "The parties foresee that changes to the proposed discovery and scheduling dates may be necessary in light of discovery produced, settlement discussions, motion practice and court rulings on threshold issues. The parties propose periodic attorneys only telephonic court status conferences to monitor the parties' informal settlement efforts and to monitor the need for adjustments to scheduling deadlines." *Id*.

Plaintiffs request that CoreLogic be ordered to provide dates by when CoreLogic can supply the outstanding discovery and modify the Scheduling Order dates based upon CoreLogic's final production of the outstanding discovery. Although plaintiffs provided a spreadsheet to CoreLogic on June 15, 2015 allowing the easy re-calculation of dates in the Scheduling Order, the extended dates on the spreadsheet are not a proposal by plaintiffs for an extension to those dates. Once CoreLogic commits (or is ordered) to provide all documents and its PMK witnesses by a date certain, then the dates in the Scheduling Order can be logically extended.

Alternatively, plaintiffs' counsel Darren Quinn raised the potential of: (1) extending the class certification motion deadline to a date after the completion of the PMK

Deposition; (2) setting a Mandatory Settlement Conference date within thirty days after the class certification ruling in light of the importance of the class certification ruling and the potential to seek appellate review of any class certification ruling; and (3) vacating all other scheduling dates until after the mandatory settlement conference.  Because plaintiffs' counsel Darren Quinn first thought of this alternative at about 6:30 p.m. on June 15, 2015 in connection with finalizing this Joint Statement, neither party has had the opportunity to explore this potential alternative.

*CoreLogic's Position:*  This is Plaintiffs' second attempt to modify the case schedule.  Judge Bashant denied their first attempt in an order dated April 2, 2015, ECF No. 32.  As with their first attempt, they have simply failed to meet and confer, and the request should be denied on that basis.  Plaintiffs do not appear to have learned their lesson.  For the first time today, Plaintiffs have provided their proposal to modify the schedule.

Discovery in this action closes in September.  As discussed above, CoreLogic has produced virtually all of the documents that Plaintiffs seek (as narrowed through meet-and-confer).  CoreLogic is moving forward with the presentation of 30(b)(6) witnesses, offering dates that Plaintiffs have not yet accepted.  Plaintiffs have the information they need to move forward with the case—and if they don't, they needed to speak up sooner.  There is no justification for modifying the case schedule at this stage.

| | | |
|---|---|---|
| Dated: June 15, 2015 | | DURIE TANGRI LLP |
| | By: | */s/ Joseph C. Gratz* <br> DARALYN J. DURIE <br> JOSEPH C. GRATZ |
| | | Attorneys for Defendant <br> CORELOGIC, INC. |
| Dated: June 15, 2015 | | LAW OFFICES OF DARREN J. QUINN |
| | By: | */s/ Darren J. Quinn* <br> DARREN J. QUINN |
| | | Attorney for Plaintiffs |
| Dated: June 15, 2015 | | SCHNEIDER ROTHMAN INTELLECTUAL PROPERTY LAW GROUP PLLC |
| | By: | */s/ Joel B. Rothman* <br> JOEL B. ROTHMAN |
| | | Attorney for Plaintiffs |