UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT STEVENS and STEVEN VANDEL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CORELOGIC, INC.,<br><br>Defendant. | Case No.: 14cv1158 BAS (JLB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CORELOGIC, INC.'S MOTION FOR PROTECTIVE ORDER**<br><br>**[ECF No. 93]** |

Presently before the Court is Defendant's Motion for Protective Order. (ECF No. 93.) Plaintiffs have filed a Response in Opposition. (ECF No. 96.) Having considered all of the briefing and supporting documents presented, and for the reasons set forth below, Defendant's Motion is **GRANTED in part** and **DENIED in part**.

## I. INTRODUCTION

Plaintiffs seek to depose Defendant's senior in-house litigation counsel, Mr. Rouz Tabaddor, in his personal capacity under Federal Rule of Civil Procedure 30(b)(1). (ECF No. 93 at 2.) In its Motion, Defendant asserts the deposition should not go forward for two reasons: (A) as senior in-house litigation counsel, Mr. Tabaddor's knowledge about the facts of this case comes exclusively through privileged communications and his deposition

is not reasonably calculated to lead to the discovery of admissible evidence; and (B) Plaintiffs have already exceeded their allowed number of depositions by deposing fifteen people from CoreLogic. (*Id.*)

## II. DISCUSSION

Upon a showing of good cause, a district court may issue a protective order "which justice requires 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense,' including any order prohibiting the requested discovery altogether, limiting the scope of the discovery, or fixing the terms of disclosure." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004) (quoting Fed. R. Civ. P. 26(c)). "The burden is upon the party seeking the [protective] order to 'show good cause' by demonstrating harm or prejudice that will result from the discovery." *Id.*

### A.   Deposition of Defendant's In-House Litigation Counsel

Both parties argue extensively in their moving papers about whether Mr. Tabaddor may be deposed in light of his position as Defendant's in-house litigation counsel. Defendant asserts Mr. Tabaddor's deposition should be prohibited because Mr. Tabaddor's knowledge about the case comes exclusively through privileged communications and his deposition is not reasonably calculated to lead to the discovery of admissible evidence. (ECF No. 93 at 2.)  On the other hand, Plaintiffs argue Mr. Tabaddor's deposition should go forward because Mr. Tabaddor is not only Defendant's in-house litigation counsel but also its Vice President, and therefore at least some of Mr. Tabaddor's knowledge about the case is nonprivileged and relevant.  (ECF No. 96 at 3–5.)

Neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence prohibit the taking of attorney depositions. However, courts have recognized the deposition of an opposing party's counsel can have a negative impact on the litigation process and these depositions are therefore discouraged. *See Am. Cas. Co. of Reading, Pa. v. Krieger*, 160 F.R.D. 582, 587 (S.D. Cal. 1995) (citing *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)). This is true even where it is clear the attorney is a witness to relevant nonprivileged events or conversations. *Id.* at 588. Yet, there are circumstances

"under which the deposition of a party's attorney will be both necessary and appropriate, for example, where the attorney is a fact witness, such as an 'actor or a viewer.'" *Id.* Therefore, courts allow for the deposition of an opposing party's attorney where the party seeking to take the deposition can show "(1) No other means exist to obtain the information than to depose opposing counsel; (2) The information sought is relevant and nonprivileged; and (3) The information is crucial to the preparation of the case." *Id.* at 589 (citing *Shelton*, 805 F.2d at 1327).

Having considered the parties' positions, the Court finds that *Shelton* provides the proper standard to determine whether Plaintiffs should be allowed to depose Defendant's in-house counsel. While the Ninth Circuit has not issued a published decision governing depositions of opposing counsel in the context of soliciting testimony about a pending case, courts in this district and elsewhere in the Ninth Circuit recognize *Shelton* as the leading case on attorney depositions and follow the three-factor test laid out in the case. *See, e.g.*, *Am. Cas. Co. of Reading, Pa. v. Krieger*, 160 F.R.D. 582 (S.D. Cal. 1995); *Townsend v. Imperial Cty.*, No. 12-cv-2739-WQH (PCL), 2014 WL 2090689 (S.D. Cal. May 19, 2014), *reconsideration denied*, 2014 WL 3734685 (S.D. Cal. July 28, 2014); *Chao v. Aurora Loan Servs., LLC*, No. C 10-3118 SBA (LB), 2012 WL 5988617 (N.D. Cal. Nov. 26, 2012).

Defendant identifies in its Motion the following seven topics about which Plaintiffs seek to depose Mr. Tabaddor: (1) the Partner InfoNet contracts approved by Defendant's legal department; (2) the DMCA takedown notices received by Defendant; (3) the structure and duties of Defendant's in-house attorneys; (4) Defendant's use of outside intellectual property attorneys; (5) the verification of Defendant's interrogatory responses; (6) Defendant's knowledge of sections 1202 and 1203 prior to receipt of the complaint; and (7) section 1202 knowledge issues. (ECF No. 93 at 3.) Plaintiffs' application of the *Shelton* factors to the deposition topics is addressed below.

1. **No Other Means Exist To Obtain the Information**

To depose Mr. Tabaddor, Plaintiffs must first show that no other means exist to obtain the information they seek than to depose Defendant's in-house litigation counsel.

The Court finds Plaintiffs met this burden only with respect to: (A) Mr. Tabaddor's personal verification and lack of verification of Defendant's responses to Plaintiffs' interrogatories; and (B) the DMCA takedown notices received by Defendant.

With respect to Defendant's interrogatory responses, at the time of Defendant's Motion one set of Defendant's responses to Plaintiffs' interrogatories were verified by Mr. Tabaddor and three sets remained unverified. (ECF No. 96 at 7.) To the extent Plaintiffs seek information specific to Mr. Tabaddor's personal verification and lack of verification of Defendant's interrogatory responses, such as whether Mr. Tabaddor refuses to sign the three sets of unverified responses and what were Mr. Tabaddor's grounds for verifying the single set of discovery responses as truthful and accurate, the Court finds Plaintiffs have no other means to obtain this information than to depose Mr. Tabaddor. However, as Defendant correctly points out in its Motion, Plaintiffs may not depose Mr. Tabaddor about the facts contained in Defendant's interrogatory responses because the facts are available to Plaintiffs by other means—the discovery responses themselves. *See Bybee Farms LLC v. Snake River Sugar Co.*, No. CV-06-5007-FVS, 2008 WL 820186, at *2 (E.D. Wash. Mar. 26, 2008).

With respect to the DMCA takedown notices Defendant received, the Court is not convinced that the notices and other documents Defendant produced in response to Plaintiffs' requests for production of documents supply Plaintiffs with all of the relevant and nonprivileged information regarding the DMCA notices in Defendant's possession. Mr. Tabaddor has firsthand knowledge of the DMCA takedown notices and how they were handled because he either responded directly to the notices or was included in the response process, (*see* ECF No. 96-4), and all of this information may not have come to light in the documents Defendant produced. In addition, based on the moving papers, it appears Defendant did not designate an alternative witness with knowledge of the DMCA takedown notices Plaintiffs could have deposed in Mr. Tabaddor's place. Accordingly, the Court finds Plaintiffs have no other means to obtain all relevant and nonprivileged information about the DMCA takedown notices Defendant received than to depose Mr.

Tabaddor.

With respect to Plaintiffs' five remaining deposition topics, the moving papers indicate Plaintiffs have other means to obtain the information they seek than to depose Mr. Tabaddor. (*See* ECF Nos. 93 at 3 and 93-8 at 3 (Plaintiffs deposed Defendant's two Federal Rule of Civil Procedure 30(b)(6) witnesses designated as having knowledge of the Partner InfoNet contracts); ECF No. 96-1 at 13 (Plaintiffs served on Defendant interrogatories regarding the structure and duties of Defendant's in-house attorneys); ECF Nos. 96 at 6 and 96-1 at 14 (Plaintiffs served on Defendant interrogatories about Defendant's use of outside intellectual property attorneys); ECF Nos. 96 at 6 and 96-1 at 11–17 (Plaintiffs served on Defendant interrogatories about Defendant's knowledge of 17 U.S.C. sections 1202 and 1203); and ECF Nos. 93 at 4 and 93-10 at 3–5 (Plaintiffs deposed Defendant's designated Federal Rule of Civil Procedure 30(b)(6) witness about Defendant's knowledge of 17 U.S.C. sections 1202 and 1203)). The fact that Defendant may have been evasive in answering Plaintiffs' discovery requests is not grounds to depose Defendant's litigation counsel. *See Johnson v. Couturier*, 261 F.R.D. 188, 193 (E.D. Cal. Aug. 21, 2009). If Plaintiffs are unsatisfied with the responses, the solution is to propound additional interrogatories or other written discovery requests or move to compel supplemental responses from Defendant.

Accordingly, the Court finds Plaintiffs satisfied the first prong of *Shelton* with respect to Mr. Tabaddor's personal verification and lack of verification of Defendant's responses to Plaintiffs' interrogatories and the DMCA takedown notices Defendant received and failed to satisfy the first *Shelton* prong with respect to the remaining five deposition topics.

**2.    The Information Sought is Relevant and Nonprivileged**

To move forward with Mr. Tabaddor's deposition, Plaintiffs must next demonstrate that Mr. Tabaddor's knowledge of his personal verification and lack of verification of Defendant's responses to Plaintiffs' interrogatories and of the DMCA takedown notices

that Defendant received is relevant and nonprivileged.[1] The Court finds Plaintiffs met this burden.

First, Plaintiffs have demonstrated the information they seek is relevant as Plaintiffs point out in their moving papers that they have a direct interest in the accuracy and truthfulness of Defendant's interrogatory responses and that Defendant's receipt of copyright infringement takedown notices help form the basis of their case. (*See* ECF No. 96-1 at 19–20.)

Second, Plaintiffs have demonstrated the information they seek is nonprivileged. The Court agrees with Plaintiffs that "Rule 33's requirement that answers be verified would be meaningless if corporations were permitted to have in-house counsel swear to their accuracy and then invoke the attorney-client privilege to avoid backing up their signature." *Langer v. Presbyterian Med. Ctr.*, Civ. A. Nos. 87-4000, 91-1814, and 88-1064, 1995 WL 79520, at *10 (E.D. Pa. Feb. 17, 1995), *vacated on other grounds*, 1995 WL 395937 (E.D. Pa. July 3, 1995). In addition, the Court finds Defendant's reliance on *Bybee Farms* somewhat misplaced. Unlike Mr. McCreedy in *Bybee Farms*, Mr. Tabaddor serves not only as Defendant's counsel but also as its Vice President. Therefore, it cannot be said that the basis of *all* of Mr. Tabaddor's verifications of written discovery responses and his communications regarding the DMCA takedown notices Defendant received must be subject to the attorney-client privilege. *See Bybee Farms,* 2008 WL 820186, at *3.

Accordingly, the Court finds Plaintiffs satisfied the second *Shelton* prong with respect to the deposition topics of Mr. Tabaddor's personal verification and lack of verification of Defendant's responses to Plaintiffs' interrogatories and the DMCA takedown notices Defendant received.

///

///

---

[1] As the three *Shelton* factors are conjunctive in nature, the Court need not consider the remaining *Shelton* factors with respect to the five other deposition topics about which Plaintiffs may obtain information by other means than to depose Mr. Tabaddor.

### 3. The Information is Crucial to the Preparation of the Case

Finally, to move forward with Mr. Tabaddor's deposition, Plaintiffs must demonstrate that the information they seek is crucial to the preparation of their case. The Court finds Plaintiffs met this burden, as the accuracy and truthfulness of Defendant's responses to Plaintiffs' interrogatories and Defendant's receiving notice of its own copyright infringements are crucial to Plaintiffs' case. (*See* ECF No. 96-1 at 19–21.)

In sum, with respect to: (A) Mr. Tabaddor's personal verification and lack of verification of Defendant's responses to Plaintiffs' interrogatories; and (B) Mr. Tabaddor's knowledge of the DMCA takedown notices Defendant received, Plaintiffs have shown (1) no other means exist to obtain the information than to depose Mr. Tabaddor; (2) the information they seek is relevant and nonprivileged; and (3) the information they seek is crucial to the preparation of the case. *See Shelton*, 805 F.2d at 1327. Accordingly, the Court **DENIES** Defendant's Motion with respect to these deposition topics. However, if the deposition of Mr. Tabaddor does go forward, to the extent Defendant believes Plaintiffs' questions during the deposition impinge upon the attorney-client privilege, Defendant may make a proper objection to such questions. *See Younger Mfg. Co. v. Kaenon, Inc.*, 247 F.R.D. 586, 589 (C.D. Cal. 2007). With respect to Plaintiffs' five other deposition topics, the Court **GRANTS** Defendant's Motion on the basis that Plaintiffs failed to satisfy all three *Shelton* factors.

### B. Number of Depositions

In addition to its assertions above, Defendant contends Plaintiffs should not be allowed to depose Mr. Tabaddor because Plaintiffs have already exhausted the ten-deposition limit allowed by Federal Rule of Civil Procedure 30. (ECF No. 93 at 4.) Specifically, Defendant asserts:

> Plaintiffs claim that certain of these depositions should not count towards the ten-deposition limit because they were 30(b)(6) depositions, not individual depositions. . . . The record shows that the Plaintiffs had noticed the 30(b)(6) deponents in their individual capacity, withdrew those notices after CoreLogic designated them as corporate representatives, and then

> proceeded to ask them questions *in an individual capacity* (i.e., outside the scope of the topics on which the witnesses were designated) during their depositions.
>
> . . . .
>
> . . . . By choosing to ask questions well outside of the scope of the designated topics (over the objections of CoreLogic's counsel), the Plaintiffs effectively took fifteen individual depositions.

(ECF No. 93 at 5–6.)

On the other hand, Plaintiffs argue the depositions of all Federal Rule of Civil Procedure 30(b)(6) witnesses count as a single deposition, and therefore the deposition count at the time of Defendant's Motion was seven, and Defendant "has no basis in fact or law to claim that Plaintiffs exceeded the deposition limit of ten." (ECF No. 96 at 7.)

Plaintiffs are correct that there is no legal basis for Defendant's assertion that the asking of questions that exceed the scope of a Federal Rule of Civil Procedure 30(b)(6) notice constitutes a second deposition of a witness. The scope of a deposition as described in a Federal Rule of Civil Procedure 30(b)(6) notice is intended to provide the minimum information about which a witness must be prepared to testify at the deposition, not the maximum. *See Detoy v. City & Cty. of S.F.*, 196 F.R.D. 362, 366 (N.D. Cal. 2000) (citing *King v. Pratt & Whitney*, 161 F.R.D. 475, 476 (S.D. Fla. 1995)). "Once the witness satisfies the minimum standard, the scope of the deposition is determined solely by relevance under Rule 26, that is, that the evidence sought may lead to the discovery of admissible evidence." *Id.* at 376 (citing *Overseas Private Inv. Corp. v. Mandelbaum*, 185 F.R.D. 67, 68 (D.D.C. 1999)). As such, the number of depositions taken are counted not by whether the questioning exceeds the scope of the deposition notice but by the number of depositions completed or commenced. *See Lexington Ins. Co. v. Sentry Select Ins. Co.*, No. 1:08-cv-1539 LJO GSA, 2009 WL 4885173, at *8–10 (E.D. Cal. Dec. 17, 2009).

Accordingly, the Court finds Defendant has not shown good cause to prohibit the deposition of Mr. Tabaddor on the basis that Plaintiffs have exceeded their allowed number of depositions under Federal Rule of Civil Procedure 30. The Court **DENIES** Defendant's

Motion with respect to this claim.

## III. CONCLUSION

In conclusion, Defendant's Motion for Protective Order to prohibit the deposition of Mr. Tabaddor is:

1. **DENIED** with respect to: (A) Mr. Tabaddor's knowledge of his personal verification and lack of verification of Defendant's responses to Plaintiffs' interrogatories; and (B) Mr. Tabaddor's knowledge of the DMCA notices Defendant received;

2. **GRANTED** with respect to Mr. Tabaddor's knowledge of: (A) the Partner InfoNet contracts approved by Defendant's legal department; (B) the structure and duties of Defendant's in-house attorneys; (C) Defendant's use of outside intellectual property attorneys; (D) Defendant's knowledge of 17 U.S.C. sections 1202 and 1203 prior to the receipt of the complaint; and (E) section 1202 issues; and

3. **DENIED** with respect to Defendant's assertion that Plaintiffs have exhausted their allowed number of depositions.

**IT IS SO ORDERED.**

Dated: December 10, 2015

Hon. Jill L. Burkhardt
United States Magistrate Judge