UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT STEVENS and STEVEN VANDEL, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>CORELOGIC, INC.,<br><br>　　　　　　　　　　　　Defendant. | Case No.: 14cv1158 BAS (JLB)<br><br>**ORDER:**<br>**(1) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL DOCUMENTS, SUPPLEMENTAL RESPONSES TO INTERROGATORIES AND COMPLETION OF DEPOSITIONS;**<br><br>**(2) DENYING PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DOCUMENTS, SUPPLEMENTAL RESPONSES TO INTERROGATORIES AND COMPLETION OF DEPOSITIONS; and**<br><br>**(3) DENYING AS MOOT DEFENDANT'S EX PARTE MOTION TO SUPPLEMENT THE RECORD**<br><br>**[ECF Nos. 101; 115; 124]** |

Presently before the Court is Plaintiffs' Motion to Compel Documents, Supplemental Responses to Interrogatories and Completion of Depositions. (ECF No. 101.) Plaintiffs' Motion to Compel is organized into three categories: (1) written discovery related to 17 U.S.C. § 1202 mental state elements; (2) written discovery related to CoreLogic's Partner InfoNet Program; and (3) the depositions of Albert McElmon and Ethan Bailey.

Also before the Court and related to Plaintiffs' Motion to Compel are Plaintiffs' Request for Judicial Notice in Support of Plaintiffs' Motion to Compel Documents, Supplemental Responses to Interrogatories and Completion of Depositions (ECF No. 115); the parties' supplemental briefs regarding the continuation of Mr. McElmon's and Mr. Bailey's depositions (ECF Nos. 122 and 123); Defendant's *Ex Parte* Motion To Supplement the Record (ECF No. 124); and Plaintiffs' Opposition to Defendant's *Ex Parte* Motion To Supplement the Record (ECF No. 125).

The Court held a hearing on January 6, 2016. (ECF No. 127.) Having considered all of the briefing and supporting documents presented and the parties' oral arguments, and for the reasons set forth below, Plaintiffs' Motion to Compel (ECF No. 101) is **GRANTED in part** and **DENIED in part**, Plaintiffs' Request for Judicial Notice (ECF No. 115) is **DENIED**, and Defendants' Motion to Supplement the Record (ECF No. 124) is **DENIED AS MOOT**.

**1.    Written Discovery Related to the 17 U.S.C. § 1202 Mental State Elements**

    **A.    Request for Production No. 2**

In their Motion to Compel, Plaintiffs seek a court order compelling Defendant to supplement its responses to Plaintiffs' Request for Production No. 2. This request for production seeks information regarding "any actual or potential assignment of copyrights in real estate photographs to any MLS at any time from October 28, 1998 . . . to May 7, 2014." (ECF No. 101-1 at 1.) Defendant objected to this Request for Production on the basis that "this request violates the parties agreement . . . regarding discovery as to absent class member photos" and produced only documents that "relate to [the] transfer of

copyright in photographs taken by Robert Stevens or Steven Vandel." (*Id.*)

Plaintiffs argue a supplemental response to this Request for Production should be compelled because Defendant's limiting its response "to copyright assignments 'that relate to transfer of copyright in photographs taken by plaintiffs Robert Stevens and Steven Vandel'" "is too narrow" because "CoreLogic has no basis to assert plaintiffs agreed to forego [sic] discovery regarding CoreLogic's mental state." (ECF No. 113 at 6.)

Defendant, in its Opposition to Plaintiffs' Motion to Compel, argues that the request for production seeks information "in violation of the parties' agreement that Plaintiffs would not seek discovery regarding absent class member photos, in exchange for which CoreLogic agreed not [to] challenge numerosity." (ECF No. 105 at 13, *citing* ECF No. 59-2 at ¶ 7–8; ECF No. 68 at 21–22.)

Plaintiffs, in their Reply to Defendant's Opposition, state that "CoreLogic's claim that assignments only show class 'numerosity' (as opposed to mental state) and Plaintiffs agreed [they] would 'not seek discovery regarding absent class member photos' is wrong on both counts." (ECF No. 108 at 4.)

The Court **DENIES** Plaintiffs' Motion to Compel as to Request for Production No. 2. As detailed below, the Court finds the parties stipulated that Plaintiffs would limit the discovery it would seek with respect to absent class member photographs in exchange for Defendant's forbearance from challenging the numerosity requirement of Plaintiffs' class certification, and Plaintiffs' Motion to Compel fails to persuade the Court otherwise.

On April 5, 2015, Defendant's counsel, Joseph Gratz, sent an e-mail to Plaintiffs' counsel, Darren Quinn, stating,

> As to the numerosity stipulation, CoreLogic would stipulate as follows in exchange for Plaintiffs' agreement not to seek discovery regarding absent class member photos (including items listed in the "Numerosity Stipulation" document): "Without making an admission of any kind, including any admission that there are any persons who meet the class definition contained in Paragraph 87 of the Second Amended Complaint, CoreLogic agrees to forbear from challenging class certification on the ground that the prerequisite

   for class certification contained in Federal Rule of Civil Procedure 23(a)(1) is not met under that class definition."

(ECF No. 59-2 at ¶ 7.) The Court finds that Mr. Gratz's April 5, 2015 e-mail constituted a clear offer of the parties' agreement.

  There are multiple indications that Plaintiffs accepted Defendant's offer. First, on April 7, 2015, in a response to Mr. Gratz's April 5, 2015 e-mail, Mr. Quinn asked, "Do we have an agreement on numerosity on FAC class?" (*Id.* at ¶ 8.) Although Mr. Quinn states he could not locate an e-mail response to his question from Mr. Gratz (*id.*), his asking Mr. Gratz if there is an agreement between the parties indicates that Plaintiffs accepted the terms of the offer Defendant proposed two days prior.

  Second, Defendant's response to Plaintiffs' Request for Production No. 2 explicitly states that an agreement limiting the discovery that Plaintiffs may seek was formed between the parties. Defendant's response states, "CoreLogic objects to this topic as violating the parties' agreement regarding discovery as to absent class member photos." (ECF No. 101-1 at 1.)

  Third, Defendant's opposition to Plaintiffs' Motion for Class Certification makes clear: (1) that there was an agreement between the parties; (2) the terms of the agreement; and (3) that Defendant performed its obligation under the agreement. (*See* ECF No. 68 at 21–22.) Defendant's opposition explicitly states,

> In exchange for Plaintiffs' agreement not to seek discovery regarding absent class member photos, CoreLogic agreed to forbear from challenging class certification on the ground that the prerequisite for class certification contained in Federal Rule of Civil Procedure 23(a)(1) is not met under the class definition set forth in the SAC. In reliance on that agreement, CoreLogic does not challenge certification on that ground.

(ECF No. 68 at 21–22.)

  Plaintiffs argued at the motion hearing on January 6, 2016, that Plaintiffs never understood the stipulation to mean that they would be precluded from propounding discovery regarding any absent member photos but instead believed they would be

agreeing not to pursue the discovery already propounded as of that date. Significantly, Plaintiffs do not argue that they took issue with, or in any way endeavored to modify, the terms of the stipulation offered by Defendant in the April 5, 2015 e-mail. Thus, any acceptance of the stipulation was an acceptance of those terms. The stipulation proposed by Defendant, and accepted by the Plaintiffs, plainly states that Plaintiffs agree "not to seek discovery regarding absent class member photos (including items listed in the 'Numerosity Stipulation' document)." Defendant represented at the hearing, and Plaintiffs did not refute, that the "Numerosity Stipulation" document was a list of Plaintiffs' then-pending discovery requests related to absent class member photos. Thus, by its plain language, the agreement applies to any discovery regarding class member photos and is not limited to discovery already proposed and identified in the "Numerosity Stipulation" document.

Based on the above, the Court finds that an agreement requiring Plaintiffs to limit their discovery requests with respect to absent class member photographs in exchange for Defendant's forbearance from challenging the numerosity requirement of Plaintiffs' class certification was formed by the parties. Defendant has performed its obligation under the agreement (*see* ECF No. 68 at 21–22), and Plaintiffs are required to uphold their obligation under the agreement as well. Accordingly, Plaintiffs' Motion to Compel as to Request for Production No. 2 is **DENIED**.

### B.   Interrogatory Nos. 11–12

Interrogatory Nos. 11–12 seek information regarding the efforts of CoreLogic and others, to the extent that CoreLogic is aware, "to have photographers assign their copyrights in real estate photographs to any MLS at any time from October 28, 1998 . . . to May 7, 2014." (ECF No. 101-1 at 1.) Defendant responded to the interrogatories by directing Plaintiffs to the "expert reports of Kevin McQueen, Gerald Bybee, and Mark Seiden," the "supplementary expert report of Kevin McQueen," "the agreements between MLSs and realtors, brokers, and agents," and "the contracts between CoreLogic and the MLSs that used MLS software developed by CoreLogic." (*Id.* at 1–2.)

///

Plaintiffs argue that supplemental responses should be compelled because Defendant "incorrectly claims that vaguely referring to Defendant's expert reports and unspecified agreements constitutes a 'complete response' even though it does not describe CoreLogic's awareness or efforts." (ECF No. 113 at 7.) Plaintiffs further argue that Defendant's responses to the interrogatories are unverified. (*Id.*)

Defendant argues it should not be required to provide supplemental responses because "the efforts it is aware of are reflected in the agreements between the MLSs and realtors and are further described in Defendant's expert reports." (ECF No. 105 at 11.) Defendant argues further that "[e]ven if the Court were to compel an additional answer [to these] interrogator[ies], CoreLogic does not know what further information it can provide." (*Id.*)

Plaintiffs, in their Reply, again argue that Defendant's responses are evasive and unverified. (ECF No. 108 at 4.)

Plaintiffs' Motion to Compel as to Interrogatory Nos. 11–12 is **GRANTED in part and DENIED in part**. The Court finds Defendant's responses to be vague and Defendant is therefore ordered to identify specifically the documents upon which it is relying in responding to Plaintiffs' Interrogatory Nos. 11–12. In addition, Defendant must provide a verified response that **either**: (1) identifies any assignment efforts of which CoreLogic is aware which are **not** reflected in the identified document; **or** (2) states that the identified documents reflect all of the assignment efforts of which CoreLogic is aware. Defendant shall provide supplemental responses on or before **January 28, 2016**. Plaintiffs' Motion to Compel as to Interrogatory Nos. 11–12 is otherwise **DENIED**.

### C. Request for Production No. 3

Request for Production No. 3 seeks documents relating to "any DMCA notices [CoreLogic] received at any time from October 28, 1998 . . . to May 7, 2014." (ECF No. 101-2 at 1.) In response to this Request for Production, Defendant produced only the "DMCA notices it received between October 28, 1998 to May 7, 2014 relating to MLS property photographs and any follow up communications with the noticing party regarding

the DMCA notice." (*Id.*)

Plaintiffs argue that CoreLogic's production in response to this request is incomplete because "CoreLogic only produced one DMCA notice when previously it represented it had about six such notices." (ECF No. 113 at 8.)

Defendant argues that it produced two DMCA notices, not one, and that the two notices were "the only two DMCA notices CoreLogic was able to find regarding real estate photos." (ECF No. 105 at 12.) Defendant further argues that Plaintiffs' requesting DMCA notices that do not relate to real estate photographs "is overbroad and not reasonably calculated to lead to admissible evidence." (*Id.*)

Plaintiffs do not provide any additional relevant information in their Reply.

Plaintiffs' Motion to Compel as to Request for Production No. 3 is **GRANTED in part and DENIED in part**. In its response to Plaintiffs' Request for Production No. 3, Defendant narrowed the request to DMCA notices related to real estate photographs and represented it has produced all such notices. The Court finds that this narrowing is appropriate and that Plaintiffs have failed to address why DMCA notices related to other subjects would be relevant to this case. However, Defendant also indicated in its response to Request for Production No. 3 that it construed the portion of the request asking for documents related to those DMCA notices as limited to "follow up communications with the noticing party regarding the DMCA Notice." (ECF No. 101-2 at 1.) The Court finds that this is an improperly narrow reading of Plaintiffs' Request for Production No. 3. Accordingly, Defendant shall produce **all** documents related to the DMCA notices received by CoreLogic related to real estate photographs on or before **January 28, 2016**. If any such documents are considered to be privileged, they should be identified on a privilege log to be produced to Plaintiffs by the same date.

**D.    Interrogatory No. 7**

Interrogatory No. 7 seeks information identifying "all software that read any metadata tag/field on digital photographs at any time from October 28, 1998 . . . to May 7, 2014." (ECF No. 101-3 at 1.) On the grounds of several objections, Defendant refused to

respond to the interrogatory. (*Id.*)

Plaintiffs seek to compel a response to this interrogatory on the grounds that "Ethan Bailey testified that CoreLogic created software that read metadata on real estate photographs for the purpose of tracking those photographs" and CoreLogic's refusing to "identify the CoreLogic software testified to by Ethan Bailey suggests that CoreLogic is being evasive and playing games." (ECF No. 113 at 8.)

Defendant argues it should not be compelled to respond to the interrogatory because it "is wildly overbroad and unduly burdensome," as it is "not even limited to *CoreLogic's* software. It demands that CoreLogic list every piece of software *manufactured by any person or company in the world* any time in the last 17 years that is capable of reading metadata on digital photographs." (ECF No. 105 at 10–11.) Defendant further argues that, "[t]o the extent Plaintiffs want CoreLogic to identify the products accused in this case, it has already done so." (*Id.* at 11.)

Plaintiffs, in their Reply, again argue that "CoreLogic's refusal to even identify the CoreLogic software testified to by Ethan Bailey suggests that CoreLogic is being evasive and playing games." (ECF No. 108 at 5.)

Plaintiffs' Motion to Compel as to Interrogatory No. 7 is **GRANTED in part and DENIED in part**. The Court agrees with Defendant that Plaintiffs' Interrogatory No. 7 is overbroad as drafted, but the Court finds the interrogatory can be appropriately narrowed as follows: Defendant is to identify all software "used by the CoreLogic MLS software group" or "created by the CoreLogic MLS software group for licensing out" that read metadata tag/field on digital photographs at any time from October 28, 1998 to May 7, 2014. (ECF No. 113 at 8.) Accordingly, Defendant shall produce a verified supplemental response to this narrowed revision of Plaintiffs' Interrogatory No. 7 on or before **January 28, 2016**. Plaintiffs' Motion to Compel as to Interrogatory No. 7 is otherwise **DENIED**.

### E.  Request for Production No. 4

Plaintiffs' Request for Production No. 4 seeks documents CoreLogic received "from any attorney regarding this lawsuit prior to being served with the complaint on August 28,

2014." (ECF No. 101-4 at 1.) Defendant responded that "[f]ollowing a reasonable search, CoreLogic has located no non-privileged documents responsive to this request." (*Id.*)

Plaintiffs seek to compel Defendant to produce a privilege log that lists the privileged documents responsive to Request for Production No. 4. (ECF No. 113 at 9.) Plaintiffs note in their Motion to Compel that they are seeking a privilege log because "CoreLogic likely knew of plaintiffs' claims in May 2014 when the complaint was filed, but did not take any action to stop the removal of CMI metadata until late 2014 or early 2015," and "[a]t a minimum, plaintiffs can establish liability during this time period." (*Id.*)

Defendant argues that it should not be required to produce a privilege log because Plaintiffs' request for one is improper: "The purpose of a privilege log is to provide enough information to evaluate a claim of privilege" and "a party may not draw an adverse inference from an assertion of privilege." (ECF No. 105 at 14.)

Plaintiffs' Motion to Compel as to Request for Production No. 4 is **GRANTED**. Federal Rule of Civil Procedure 26(b)(5)(A) requires that when

> a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A). Defendant represents in its response to Request for Production No. 4 that it "has located no non-privileged documents responsive to this request." (ECF No. 101-4 at 1.) To the extent Defendant possesses responsive documents that it claims to be privileged, such documents must be identified in a privilege log. That Defendant believes Plaintiffs' intended use of the privilege log is improper is beyond the scope of this Motion to Compel and, in any event, does not present good cause for failing to comply with the Federal Rules of Civil Procedure. Therefore, if Defendant has not already done so, Defendant shall produce to Plaintiffs a privilege log listing all of its privileged documents responsive to Request for Production No. 4 on or before **January 28, 2016**.

### F. Request for Production No. 5

Plaintiffs' Request for Production No. 5 seeks, "in native format, the organizational charts described during the deposition of [CoreLogic's] employee Leticia Ocamp during the time period 2011 to present." (ECF No. 101-5 at 1.) Defendant did not produce documents in response to the request on the basis that the request is "duplicative of [Plaintiffs' prior] Request for Production No. 53, and the parties reached a compromise with respect to production in response to that Request on March 23, 2015." (*Id.*)

Plaintiffs argue Request for Production No. 5 is not duplicative of prior Request for Production No. 53 on the basis that Request for Production No. 5 "seeks specific native files as opposed to a category of documents," which was requested by Request for Production No. 53. (ECF No. 113 at 10–11.) Defendant argues that Request for Production No. 5 is in fact duplicative of Plaintiffs' previously propounded Request for Production No. 53 and Plaintiffs have now briefed the same issue twice. (ECF No. 105 at 12.)

Plaintiffs, in their Reply, argue that "[b]ecause of the 'sufficient to show' language in Request 53, CoreLogic could produce responsive documents different than RFP 5." (ECF No. 108 at 7.)

Plaintiffs' Motion to Compel as to Request for Production No. 5 is **DENIED**. This request seeks a subset of the documents that Plaintiffs previously requested in their prior Request for Production No. 53. Request for Production No. 53 requested

> [o]rganization charts and employee directories from May 7, 2011 to present sufficient to show [CoreLogic's] different groups/departments and personnel involved in the creation, maintenance or marketing of each product/service offered by [CoreLogic] from May 7, 2011 to present that displayed real estate photos that were uploaded at any point in time to any MLS.

(ECF No. 78-6 at 1.) Plaintiffs' current Request for Production No. 5 requests "[i]n native format, the organizational charts described during the deposition of [CoreLogic's] employee Leticia Ocampo during the time period 2011 to present." (ECF No. 101-5 at 1.) The Court finds that the two requests seek identical information. As stated correctly by

1  Defendant, Request for Production No. 53 was the subject of a previous motion to compel
2  brought by Plaintiffs, and this previous motion to compel was denied by the Court.  (ECF
3  No. 111 at 7–8.)  Accordingly, Plaintiffs' Motion to Compel as to Request for Production
4  No. 5 is **DENIED**.

5       **G.**    **Interrogatory Nos. 1–6, 19**

6       Plaintiffs' Interrogatory Nos. 1–6 seek information related to CoreLogic's
7  employment of both current and former in-house counsel, outside law firms, and software
8  engineers.  (ECF No. 101-5 at 1–4.)  On the grounds of several objections, Defendant
9  refused to respond to Interrogatory Nos. 1–6.  (*Id.*)

10      Plaintiffs' Interrogatory No. 19 seeks the name, last known address, and phone
11 number of "all persons no longer employed by [CoreLogic] that [CoreLogic] disclosed in
12 any of [its] responses to interrogatories in this action."  (ECF No. 101-5 at 4.)  In response
13 to Interrogatory No. 19, Defendant stated that "[t]he only individuals that CoreLogic has
14 identified in its responses to interrogatories in this action are those individuals . . .
15 CoreLogic identified in response to Interrogatories 17 and 18" and "[e]ach of the
16 CoreLogic employees identified in responses to Interrogatories 17 and 18 are still
17 employed by CoreLogic at the time of this response."  (*Id.* at 4.)

18      Plaintiffs seek to compel responses to Interrogatory Nos. 1–6 and a supplemental
19 response to Interrogatory No. 19 on the basis that the identities of such individuals are
20 relevant to Plaintiffs' claims and Plaintiffs intend to perform background research on them.
21 (ECF No. 113 at 11–13.)  In addition, Plaintiffs argue that "in the event the Court compels
22 CoreLogic to respond to ROGS 1, 2, 4 or 5, CoreLogic should be compelled to supplement
23 its response to ROG 19 to identify any former employees."  (*Id.* at 12.)

24      Defendant argues it should not be compelled to respond to Interrogatory Nos. 1–6
25 on the grounds that "[d]iscovery is now closed," "Plaintiffs served these interrogatories
26 such that CoreLogic's responses would be due on the very last day of discovery," and
27 "[t]here was therefore no situation in which Plaintiff[s] could use these names to serve
28 deposition notices or subpoenas."  (ECF No. 105 at 8–9.)  Defendant further argues that

the interrogatories require Defendant to name every attorney, law firm, and software engineer hired in the last 17 years and this information is "not reasonably calculated to lead to admissible evidence." (*Id.* at 8.) With respect to Interrogatory No. 19, Defendant argues it should not be compelled to supplement its response because "CoreLogic has not identified any former employees in its interrogatory responses and said so in response to Interrogatory 19. There is no more information CoreLogic can provide." (*Id.* at 11–12.)

Plaintiffs, in their Reply, argue that even if discovery is closed, Plaintiffs can use the information responsive to Interrogatory Nos. 1–6 and 19 to "talk to employees not represented by counsel identified in ROGS 1–6" and "obtain confidential information from them pursuant to the confidentiality order" and "testimony about them from any depositions the court allows." (ECF No. 108 at 7.) Plaintiffs also argue they can use the information responsive to the interrogatories to "obtain declarations or subpoena the witnesses for trial." (*Id.*)

Plaintiffs' Motion to Compel as to Interrogatory Nos. 1–6 and 19 is **GRANTED in part and DENIED in part**. As drafted, Plaintiffs' Interrogatory Nos. 1–6 and 19 are overbroad. Accordingly, the Court compels Defendant to respond only to the following narrowing of Plaintiffs' interrogatories: Defendant shall identify, for 2009 to the present, all current and former: (1) in-house counsel who offered CoreLogic advice on copyright issues; (2) outside law firms paid by CoreLogic who offered CoreLogic advice on copyright issues; and (3) software engineers employed by CoreLogic who worked on matters related to metadata on digital photographs. With respect to all former employees that Defendant identifies in response to these interrogatories, Defendant shall provide Plaintiffs the last known business address of the employee. In addition, if the following employees are no longer employed by CoreLogic, Defendant is to provide their last known business addresses to Plaintiffs: (1) Alex Troy; (2) Kevin Vanderwende; (3) Nick Webb; (4) Derrick Nelson; (5) David Grubbs; and (6) Lucas Pedley. Defendant shall serve the verified supplemental interrogatory responses on Plaintiffs on or before **January 28, 2016**.
///

### 2. Written Discovery Related to CoreLogic's Partner InfoNet Program

Plaintiffs' Request for Production Nos. 1, 6–27, and 29–31 seek to compel from Defendant information related to CoreLogic's Partner InfoNet Program. (ECF No. 101-6 at 1–13.) Specifically, Plaintiffs seek information related to the prospective users of CoreLogic's Partner InfoNet Program (Request for Production Nos. 1, 6–15) and reports and other documents regarding the internal workings, functionality, and financial status of the Partner InfoNet Program (Request for Production Nos. 16–27, 29–31). On the grounds of several objections, Defendant refused to respond to the requests.

Plaintiffs argue that Defendant should be compelled to produce documents responsive to the requests on the grounds that "[a]ll [of the] documents CoreLogic sent to such prospective users of Partner InfoNet related to photo display products likely constitute admissions by CoreLogic relevant to its mental state" (ECF No. 113 at 14), "CoreLogic disingenuously claims the request[s] violate an agreement regarding a prior Request No. 46" (*Id.* at 14–15), and the documents CoreLogic refuses to produce "test the accuracy of the Partner InfoNet related spreadsheet [CoreLogic] created for this litigation." (*Id.* at 15.)

Defendant argues it should not be required to produce documents responsive to Plaintiffs' requests because, among other reasons, the requests are overbroad and "[t]he overwhelming majority of [the responses] will have no relevance to the issues in this case." (ECF No. 105 at 6.) In addition, Defendant argues that the parties agreed previously during a meet and confer that "CoreLogic would produce one sales brochure and one web page for each product" and "CoreLogic has made that production." (*Id.* at 12–13.)

Plaintiffs, in their Reply, argue that Defendant should be compelled to respond to Plaintiffs' requests because "Plaintiffs are requesting relevant, discrete, likely high level documents as opposed to irrelevant underlying data," "the Strategic Business Plan must— or at least should—discuss the risk that CoreLogic does not obtain permission from photographers (copyright owners) to use photos," and "CoreLogic is hiding the revenue numbers that allow plaintiffs the ability to test the amounts in its spreadsheet created for this litigation and hiding the descriptive detail relevant to CoreLogic's mental state." (ECF

No. 108 at 9.)

Plaintiffs' Motion to Compel as to Request for Production Nos. 1, 6–27 and 29–31 is **GRANTED in part and DENIED in part**. As drafted, Plaintiffs' requests are overbroad and unduly burdensome in that they collectively encompass all, or virtually all, of the documents related to Defendant's Partner InfoNet Program. To the extent that Plaintiffs believe that the existence and function of the Partner InfoNet Program itself is evidence of Defendant's knowledge and intent—and therefore that all documents related to the program are relevant—there are considerably more efficient ways to establish how the Partner InfoNet Program works. Furthermore, to the extent that Plaintiffs seek documents that will reflect Defendant's analysis and communications related to rights to display photographs or copyright infringement issues, Plaintiffs' requests are overbroad as drafted.

Accordingly, on or before **January 28, 2016**, Defendant shall produce all documents in CoreLogic's custody and control (including but not limited to those sent to, received from, or related to prospective MLS partners of the Partner InfoNet Program, including prospective users of the products RealQuest Pro, Appraisal Suite, Connect2Data, MLS Data Packages, Bulk Licensing Web Service, MLS Listing-Other, Advisory, Onsite & Onsite Plus, BPO Check, and LSAM) that refer to, relate to, or address issues of rights to display photographs and/or copyright infringement. Plaintiffs' Motion to Compel as to Request for Production Nos. 1, 6–27, and 29–31 is otherwise **DENIED**.

### 3. Depositions of Albert McElmon and Ethan Bailey

Plaintiffs' Motion to Compel also seeks to compel the continuation of the September 2, 2015 deposition of Albert McElmon and the September 4, 2015 deposition of Ethan Bailey. (ECF No. 113 at 15–16.) Presumably due to limitations on the length of the parties' moving papers, the parties did not effectively brief this issue initially and the Court ordered they file supplemental briefing on the matter. (ECF No. 121.) Both Plaintiffs and Defendant filed supplemental briefs on December 31, 2015. (ECF Nos. 122–123.) Without seeking leave of Court, Defendant filed an *Ex Parte* Motion to Supplement the

Record on January 4, 2016 (ECF No. 124), which Plaintiffs opposed on January 5, 2016 (ECF No. 125).

Plaintiffs provide several arguments in their Motion to Compel and supplemental brief as to why they believe the depositions of Mr. McElmon and Mr. Bailey should be continued.  First, Plaintiffs argue that they "are entitled to depose McElmon and Bailey for up to seven (7) hours each" and there are "approximately 4.6 hours . . . remaining to depose Ethan Bailey and 4.3 hours . . . remaining to depose Al McElmon." (ECF No. 123 at 7.)  Second, Plaintiffs argue that CoreLogic produced a significant number of documents reflecting the terms *McElmon* and *Bailey* both during and after the two depositions, and such document productions "mak[e] it a near certainty that Plaintiffs will need at least the full seven hours provided by Rule 30(d)" to fully depose Mr. McElmon and Mr. Bailey. (*Id.*; ECF No. 113 at 16.)

Third, Plaintiffs state in their supplemental brief that all of the deposition notices and amended and supplemental deposition notices they served on Defendant in this case included the language, "In the event any said deposition is not completed on the day of commencement, it will continue from day to day thereafter, excluding Saturdays, Sunday and Holidays, until completed." (*Id.* at 5.)  Plaintiffs argue that Defendant never served objections to this language and then "refused to produce McElmon and Bailey the next day (or any day) after their depositions were commenced but not completed." (*Id.* at 5–6.)

Fourth, Plaintiffs argue that it was the limited availability of Defendant's witnesses that prevented Plaintiffs from completing Mr. McElmon's and Mr. Bailey's depositions.  Plaintiffs argue they could not complete the two depositions because Defendant refused to produce Mr. McElmon on September 3, 2015, the day after his deposition, because Defendant required that day remain idle, and that Mr. Bailey's deposition was required to end at 4:00 PM only because Defendant's counsel had to leave to catch a plane. (*Id.*)

On the other hand, Defendant argues the depositions of Mr. McElmon and Mr. Bailey should not be continued because the continuations would violate the Court's Scheduling Order. (ECF No. 122 at 4, *citing* ECF No. 26.)  Defendant argues that the

Scheduling Order required all discovery to be completed by September 14, 2015, and Plaintiffs did not request the Court order continuances of Mr. McElmon's and Mr. Bailey's depositions until September 24, 2015, ten days after the close of discovery. (*Id.*)  In addition, Defendant argues that Plaintiffs' reasons for moving the Court to compel continuations of the depositions do not present good cause as required by the Court's Scheduling Order. (*Id.* at 4–5.)

Furthermore, Defendant argues that Plaintiffs closed both depositions "voluntarily" and it was therefore no fault of Defendant's that either deposition began and ended when it did. (*Id.* at 5–6.)  With respect to Mr. McElmon's deposition, Defendant argues that it agreed to delay slightly the start of the deposition Plaintiffs scheduled to follow Mr. McElmon's so Plaintiffs could continue to question Mr. McElmon while he remained present and under oath. (*Id.* at 5.)  Defendant asserts that Plaintiffs did not accept this accommodation and instead chose to end Mr. McElmon's deposition.  Defendant rejects Plaintiffs' claim that their inability to conclude the deposition in the time allotted is attributable to the production of documents at the deposition (and later), noting that Plaintiffs stated, at the end of the time allotted for Mr. McElmon's deposition, that they believed they might be able to complete the deposition with ten more minutes. (*Id.* at 6, *citing* ECF No. 122-4 at 4.)

With respect to Mr. Bailey's deposition, Defendant notes that "[a]lthough Plaintiffs complain that scheduling three depositions in one day constrained their time with Mr. Bailey, Plaintiffs' own July deposition notice had already proposed to take Mr. Bailey's deposition . . . on the same day as two other witnesses." (*Id.* at 6, *citing* ECF No. 122-2.) Defendant further states that it informed Plaintiffs on August 17, 2015 that any depositions set for September 4, 2015 would be required to end at 4:00 PM so Defendant's counsel could catch a flight. (*Id.* at 5.)  Defendant argues that with this information in mind, Plaintiffs re-noticed Mr. Bailey's deposition for 2:00 PM on September 4, 2015. (*Id.* at 5–6.)

///

1    Plaintiffs' Motion to Compel as to the continuations of Mr. McElmon's and Mr.
2 Bailey's depositions is **DENIED**.  Before receiving input from Defendant regarding the
3 availability of its witnesses for depositions, Plaintiffs noticed the depositions of Mr.
4 McElmon and Mr. Bailey as half-day depositions set for the same day.  (ECF No. 123 at
5 3; ECF No. 123-4 at 2.)  In addition, Plaintiffs rescheduled Mr. Bailey's deposition for 2:00
6 PM on September 4, 2015 *after* Plaintiffs were made aware of the fact that Defendant's
7 counsel would need to end the deposition at 4:00 PM.  Furthermore, Plaintiffs provide no
8 legal support for their argument that the inclusion of certain language in their deposition
9 notices supersedes the limitation set forth by Federal Rule of Civil Procedure 30 that
10 depositions be limited to a single day unless otherwise stipulated or ordered by the court.
11 Fed. R. Civ. P. 30(d).  There is no indication on the record in this case that the parties
12 stipulated to an exception to Rule 30.  Although Plaintiffs assert that hundreds of
13 documents that contain the names *McElmon* or *Bailey* were belatedly produced by
14 Defendant, Plaintiffs fail to connect those documents to additional areas of inquiry that
15 they would pursue with the witnesses.  In addition, Plaintiffs' suggestion that their inability
16 to conclude these depositions on the dates noticed was caused by Defendant's late
17 production of documents is somewhat undermined by the indication by Plaintiffs' counsel
18 that he possibly had as little as ten minutes of questioning left for Mr. McElmon.

19    Based on the above, the Court finds that it was not wrongful conduct of Defendant,
20 but instead Plaintiffs' own planning and scheduling, that resulted in Plaintiffs' not having
21 the opportunity to take full-day depositions of Mr. McElmon and Mr. Bailey.  Discovery
22 was closed at the time Plaintiffs filed their Motion to Compel, and Plaintiffs' moving
23 papers fail to persuade the Court that Plaintiffs should be provided the opportunity to
24 continue the depositions at this stage in the case.

25    With respect to the parties' additional filings related to the issue of whether Mr.
26 McElmon's and Mr. Bailey's depositions should be continued, the Court **DENIES**
27 Plaintiffs' Request for Judicial Notice filed in Support of Plaintiffs' Motion to Compel.
28 (ECF No. 115.)  The Court's October 5, 2015 Order limited Plaintiffs' filings on this matter

to one motion limited to fourteen pages and one reply brief limited to seven pages. (ECF No. 99 at 1–2.) Plaintiffs may not attempt to circumvent the Court's Order by filing an additional moving paper cloaked in the form of a Request for Judicial Notice.

In addition, the Court **DENIES AS MOOT** Defendant's *Ex Parte* Motion to Supplement the Record. (ECF No. 124.) Defendant's Motion to Supplement the Record asserts that Plaintiffs' statement in their supplemental brief, that "Defendant never served objections to the '[i]n the event any said deposition is not completed on the day of commencement, it will continue from day to day . . . until completed' language in the deposition notices," is wrong. (ECF No. 124-1 at 2, *quoting* ECF No. 123 at 3.) As discussed above, Plaintiffs provided the Court no legal authority supporting a continuation of the depositions on the basis that Plaintiffs included the above-quoted language in their deposition notices. Accordingly, whether Defendant did or did not object to the language in the deposition notices has no bearing on the Court's decision.

**IT IS SO ORDERED.**

Dated: January 14, 2016

Hon. Jill L. Burkhardt
United States Magistrate Judge