1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT
9                         SOUTHERN DISTRICT OF CALIFORNIA
10
11   ROBERT STEVENS and STEVEN           Case No.:  14cv1158 BAS (JLB)
     VANDEL, individually and on behalf of
12   all others similarly situated,        **ORDER GRANTING IN PART AND
13                              Plaintiffs,   DENYING IN PART PLAINTIFFS'
                                              MOTION TO COMPEL RE:
14   v.                                       INSTRUCTIONS NOT TO ANSWER**
15   CORELOGIC, INC.,
16                              Defendant.    **[ECF No. 107]**
17
18
19        Presently before the Court is Plaintiffs' Motion to Compel re: Instructions Not to
20   Answer.  (ECF No. 107.)  Plaintiffs seek to compel the testimony of five witnesses on the
21   basis they were improperly instructed not to answer certain questions during their
22   depositions under claims of the attorney-client privilege and/or attorney work product
23   doctrine.
24        Defendant filed a Response in Opposition to Plaintiffs' Motion (ECF No. 112), and
25   Plaintiffs filed a Reply to Defendant's Opposition (ECF No. 114).  In addition, the Court
26   held a hearing on January 6, 2016.  (ECF No. 127.)  Having considered all of the briefing
27   and supporting documents presented and the parties' oral arguments, for the reasons set
28   forth below, Plaintiffs' Motion is **GRANTED in part** and **DENIED in part**.

## I.       Timing and Propriety of Plaintiffs' Motion

Defendant's Opposition begins by arguing Plaintiffs' Motion is "the latest step in a continuing campaign to push off their day of reckoning" by "attacking routine assertions of privilege" "two weeks after the deadline to complete discovery—and a month after the depositions themselves" instead of during the depositions.  (ECF No. 112 at 2.)  Defendant argues Plaintiffs' Motion is an "end-run around the Court's scheduling order and not a genuine dispute over privilege objections."  (*Id.*)

The Court finds Defendant's argument unavailing.   First, the Court's Civil Chambers Rules do not require counsel to call Chambers when a privilege dispute arises during a deposition.  The parties *may* call Chambers, but they are not required to do so. *See* Magistrate Judge Jill L. Burkhardt's Civil Chambers Rule IV.D.   Second, the transcripts of the depositions at issue in Plaintiffs' Motion were not provided to Plaintiffs until September 23, 2015 (ECF No. 107-7 at 2), and Plaintiffs timely met and conferred with Defendant regarding the privilege issues that arose during the depositions on October 5, 2015 (*id.* at 2–3).  Third, the Court gave Plaintiffs permission to file its present Motion in the Court's October 13, 2015 Order.  (ECF No. 104.)  Accordingly, the Court is not persuaded Plaintiffs' Motion should be denied on the ground it is untimely or disingenuous.

## II.       Instructions Not To Answer Based Upon Attorney-Client Privilege

Plaintiffs' Motion seeks to compel testimony from Ethan Bailey, Chris Bennett, and Derrick Nelson on the basis they were instructed not to answer certain questions during their depositions under Defendant's improper assertions of the attorney-client privilege. (*See* ECF Nos. 107-1 to -4 and 107-6 at 3–9.)

### A.       Legal Standard

"The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, as well as an attorney's advice in response to such disclosures."  *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (quoting *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997)).  The privilege protects only disclosure of communications with attorneys; it does not protect disclosure of the

underlying facts by those who communicated with the attorney. *Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981).

"Issues concerning [the] application of the attorney-client privilege in the adjudication of federal law are governed by federal common law." *Id.* at 608 (quoting *Bauer*, 132 F.3d at 510 n.4). "Because it impedes full and free discovery of the truth," the Ninth Circuit holds the attorney-client privilege is to be "strictly construed." *Id.* at 607 (quoting *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981)). The Ninth Circuit applies an eight-factor test for determining whether information is protected by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Id.* (quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992)). "The party asserting the privilege bears the burden of proving each essential element." *Id.* at 608 (quoting *United States v. Munoz*, 233 F.3d 1117, 1128 (9th Cir. 2000)).

The Ninth Circuit's strict construction of the attorney-client privilege is in direct conflict with the liberal view of the privilege taken by California state law, which presumes the privilege attaches. *Id.* at 608–09. The Ninth Circuit has held that, in the adjudication of federal law, the application of California state law to issues of attorney-client privilege without reference to the Ninth Circuit's eight-factor test constitutes reversible legal error. *See id.*

### B.     Discussion

#### 1.     September 2, 2015 Deposition of Chris Bennett

During Chris Bennett's September 2, 2015 deposition, Plaintiffs asked the witness, "As you sit here today as General Manager of Real Estate Solutions for CoreLogic, does CoreLogic have a position with respect to whether or not metadata for photographs uploaded through its software should be preserved?" (ECF No. 107-1 at 1.) Mr. Bennett

was instructed by Defendant's counsel not to answer on the basis Plaintiffs' question included the words "should" and "position," and "[a]ny such position on whether metadata should be preserved would necessarily be a matter that counsel . . . had communicated to Mr. Bennett." (*Id.*)  After some discussion between counsel, Defendant then stated, "I want to caution the witness with respect to the disclosure of attorney-client communications, but the witness can answer the question with that in mind." (ECF No. 112-4 at 4–6.)  Mr. Bennett then responded, "Other than what I've been told by legal counsel, I have no knowledge." (*Id.* at 6.)

Plaintiffs assert Mr. Bennett should be compelled to answer Plaintiffs' question because "[d]uring meet and confer, CoreLogic's counsel explained that CoreLogic's 'position' with respect to preserving metadata is 'an abstract legal question'" and "[t]hus, it appears that CoreLogic's true objection is legal conclusion instead of attorney-client privilege." (ECF No. 107-6 at 7.)

Defendant, in its Opposition, argues that "Plaintiffs noticed Mr. Bennett for deposition in his individual capacity" and "[a]sking a fact witness for the company's 'position' on a legal issue would be inappropriate." (ECF No. 112 at 9.)  Defendant argues further that "Plaintiffs do not provide any argument or authority to challenge CoreLogic's actual objection on attorney-client privilege grounds," and as a result, "Plaintiffs have waived any such argument." (*Id.*)

In their Reply, Plaintiffs argue their question called only for a "yes," "no," or "I don't know," response, which would "not reveal the content of any attorney-client communication," and even if Mr. Bennett's response was "yes," CoreLogic's policy "does not constitute an attorney-client communication." (ECF No. 114 at 6.)

Plaintiffs' Motion as to this ground is **DENIED**.  Although the Court is not persuaded Defendant met its burden of proving the information Plaintiffs seek is

privileged,[1] Plaintiffs' Motion is denied on the basis it would be improper for Mr. Bennett, who was noticed for deposition in his individual capacity and not as a Rule 30(b)(6) representative of CoreLogic (ECF No. 112-5 at 3), to testify about CoreLogic's position with respect to any matter.

> A Rule 30(b)(6) deponent testifies as to the knowledge of the corporation and the corporations' [sic] subjective beliefs and opinions and interpretation of documents and events. A fact witness, on the other hand, testifies as to his individual knowledge and gives his personal opinions. The 30(b)(6) deponent's testimony must be distinguished from that of a mere corporate employee whose deposition is not considered that of the corporation.

*Hilton Hotels Corp. v. Dunnet*, No. 00-2852-GV, 2002 WL 1482543, at *2 (W.D. Tenn. Mar. 15, 2002) (citations omitted); *see also Sabre v. First Dominion Capital, LLC*, No. 01CIV2145BJSHBP, 2001 WL 1590544, at *1 (S.D.N.Y. Dec. 12, 2001) ("A deposition pursuant to Rule 30(b)(6) is substantially different from a witness's deposition as an individual. A 30(b)(6) witness testifies as a representative of the entity, his answers bind the entity and he is responsible for providing all the relevant information known or reasonably available to the entity."). It may have been proper for Mr. Bennett to answer the questions, "Do *you* believe CoreLogic has a position with respect to whether or not metadata for photographs uploaded through its software should be preserved?" and "What do *you* believe that position is?" but the Court is not presented with that issue as these were not the questions posed to Mr. Bennett during his deposition. Discovery in this case is now closed, and the Court finds no good cause to reopen discovery so Plaintiffs may depose Mr. Bennett a second time regarding information about Defendant that will not be binding on Defendant. Accordingly, Plaintiffs' motion as to this issue is **DENIED**.

---

[1] As the party asserting the attorney-client privilege, Defendant bears the burden of proving the withheld information is privileged. *See Ruehle*, 583 F.3d 608. Defendant's Opposition fails to mention the Ninth Circuit's eight-part test for determining whether information is covered by the attorney-client privilege. *See id.*

## 2.     September 4, 2015 Deposition of Ethan Bailey

During his September 4, 2015 deposition, Defendant instructed Ethan Bailey not to answer five of Plaintiffs' questions based on the attorney-client privilege.  The questions included: (1) "With respect to the compliance aspect of CoreLogic's written policies, are you aware of any compliance with respect to the law, other than Dodd-Frank?"; (2) "Do you know if the written policies of CoreLogic with respect to compliance specifically refer to specific laws?"; (3) "Do you know whether or not there is content in those CoreLogic corporate policies with respect to compliance with the law?"; (4) "What is the content?"; and (5) "What is the content of that corporate policy with respect to compliance with the law?"  (ECF No. 107-2 at 1–3.)

Plaintiffs assert Mr. Bailey should be compelled to respond to Plaintiffs' questions because

> Mr. Bailey provided no foundation that any corporate policy constitutes a privileged attorney-client communication.  Mr. Bailey did not know who wrote CoreLogic's written policies regarding compliance with the law.  Mr. Bailey did not know (or affirmatively consider) whether a written policy with respect to compliance with the law was a communication from CoreLogic's attorneys.  Mr. Bailey testified that CoreLogic policies are kept on a SharePoint server, which "is a Microsoft product for creating, maintaining documentation, schedules."  On this same SharePoint server, CoreLogic also maintains other software development and project management documentation.

(ECF No. 107-6 at 5–6 (citations omitted).)  In addition, Plaintiffs assert that a corporate policy, even if "drafted or revised by a CoreLogic attorney[,] is not privileged."  (*Id.* at 6 (citing *Dewitt v. Walgreen Co.*, No. 4:11-cv-00263-BLW, 2012 WL 3837764, at *3 (D. Idaho Sept. 4, 2012)).)

Defendant argues Plaintiffs' reliance on *Dewitt* is misplaced, as *Dewitt* addressed "a new Immunizer Policy requiring all Walgreens pharmacists to become certified immunizers" and "has no bearing on whether the content of CoreLogic's policies, *that address legal compliance*, are privileged."  (ECF No. 112 at 7 (emphasis in original).)  In

addition, Defendant argues Plaintiffs' questions called for privileged information "because they were broad enough to include communications from counsel (in-house counsel) to a client (the corporation and its employees) that are confidential (shared only within the company) for the purpose of securing legal advice (how CoreLogic's counsel suggests employees act in order to comply with the law)." (*Id.* at 7–8.) Defendant argues further that "[a] legal compliance policy 'describing the application of laws to specific aspects of a company's business' are [sic] privileged." (*Id.* (quoting *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, 1996 WL 5180, at *2 (N.D. Ill. Jan. 3, 1996)).)

Plaintiffs, in their Reply, argue Defendant's reliance on *In re Brand Name Prescription Drugs Antitrust Litigation* is misplaced, as this case did not concern a company "policy" but instead a "***presentation*** prepared by a [company's] attorney and given to seven [company] executives." (ECF No. 114 at 6 (emphasis in original).)

During the January 6, 2016 hearing, Defendant's Vice President, Rouz Tabaddor, stated Defendant's written policies are prepared by Defendant's attorneys and are kept in a number of different forms, including but not limited to policy documents, memoranda, and PowerPoint presentations.

As the party asserting the attorney-client privilege, Defendant bears the burden of proving the privilege applies to the withheld information. *See Ruehle*, 583 F.3d at 608. The Court is not persuaded Defendant met its burden of proving the content of its written legal compliance policies are protected by the attorney-client privilege.

First, the Court is not persuaded the content of Defendant's written legal compliance policies, which CoreLogic asserts were drafted by its in-house counsel (ECF No. 112 at 8), constitutes "legal advice" such that it satisfies the first element of the Ninth Circuit's eight-factor test for determining whether the attorney-client privilege applies. *See Ruehle*, 583 F.3d at 607. "Because in-house counsel may operate in a purely or primarily business capacity in connection with many corporate endeavors," it is not presumed that all communications involving in-house counsel pertain to legal matters and are protected by the attorney-client privilege. *See United States v. ChevronTexaco Corp.*, 241 F.Supp.2d

1065, 1076 (N.D. Cal. 2002); *accord Dewitt*, 2012 WL 3837764, at *3; *see also United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) ("That a person is a lawyer does not, *ipso facto*, make all communications with that person privileged.").  For example, courts have held a corporate legal compliance policy that serves as a reference or instructional guide to corporate employees, even if based on the advice of legal counsel, is primarily a "business" policy rather than a "legal" policy.  *See, e.g.*, *In re Domestic Drywall Antitrust Litig.*, MDL No. 2437, 2014 WL 5090032, at *4 (E.D. Penn. Oct. 9, 2014).  In that case, the conversations between counsel and the corporate client leading up to the adoption of the policy would be privileged, but the policy itself would not be protected by the attorney-client privilege.  *See id.*

Second, the Court is not persuaded the content of Defendant's written legal compliance policies satisfies the "from a professional legal adviser in his capacity as such" and "made in confidence" elements of the Ninth Circuit's eight-factor test.  *See Ruehle*, 583 F.3d at 607.  As stated in Plaintiffs' Motion, Mr. Bailey had no knowledge of who wrote Defendant's policies, which indicates Mr. Bailey was not seeking advice specifically from a "professional legal adviser" when reviewing Defendant's written legal compliance policies.  In addition, Mr. Bailey's statement that he did not know who drafted the policies indicates there was no private or confidential communication between Mr. Bailey (and potentially other CoreLogic employees) and any CoreLogic attorney with respect to the content of the policies.

Third, the Court is not persuaded that *In re Brand Name Prescription Drugs Antitrust Litigation* supports Defendant's argument that "[a] legal compliance policy 'describing the application of laws to specific aspects of a company's business' are [sic] privileged." (ECF No. 112 at 8.)  As Plaintiffs correctly point out in their Reply, that case held the attorney-client privilege protected a presentation prepared by in-house counsel and given to seven company executives that described the application of antitrust laws to specific aspects of the company's business.  *See In re Brand Name Prescription Drugs Antitrust Litig.*, 1996 WL 5180, at *2.  The case did not address whether the privilege

attaches to written legal compliance policies distributed not only to a limited number of a corporation's executives but also to all of the corporation's other employees.

The Court finds *In re Domestic Drywall Antitrust Litigation* informative here.[2]  In that case, the court found the defendant corporation's antitrust compliance policy was not protected by the attorney-client privilege because the policy "is general and does not contain any specific advice," "[i]ts purpose is to help insure that [the corporation's] employees do not violate the antitrust laws," it is "more akin to a reference or instructional guide," and "[n]o court has yet held that a corporate policy of lawfulness is protected from discovery as privileged."  *In re Domestic Drywall Antitrust Litig.*, 2014 WL 5090032, at *4.  In addition, the court found the defendant's argument that the policy was protected by the attorney-client privilege because it had not been distributed outside of the company "undermined by the wide distribution of the policy within the organization."  *Id.*

Similarly, in the present case, the Court is not persuaded Defendant's written legal compliance policies are "confidential" because they are "shared only within the company." (ECF No. 112 at 8.)  It is clear from the parties' moving papers that at least some of Defendant's legal compliance policies have been distributed widely within the corporation. Mr. Bailey testified he was aware that CoreLogic's written policies are maintained on CoreLogic's "Intranet" and "SharePoint" (ECF No. 107-7 at 6), and Defendant, in its Opposition, defined the recipients of its written legal compliance policies as "the corporation and its employees" (ECF No. 112 at 8).  This indicates at least some of CoreLogic's legal compliance policies are written for, and made available to, all CoreLogic employees.  Thus, under *In re Domestic Drywall Antitrust Litigation*, the Court finds Defendant's argument that its written policies are protected by the attorney-client privilege because they are "shared only within the company" unavailing.

---

[2] Although this case was decided in the Third Circuit, the Court finds it reliable as the Third Circuit, like the Ninth Circuit, construes the attorney-client privilege narrowly.  *See In re Domestic Drywall Antitrust Litig.*, 2014 WL 5090032, at *3–4.

However, because Mr. Tabaddor informed the Court during the January 6, 2016 hearing that some of CoreLogic's written policies are maintained in memorandum or PowerPoint presentation form, it is not clear that *all* of Defendant's written legal compliance policies have been distributed as widely within the corporation as those contained on the corporation's Intranet and SharePoint.  And because the Court has not reviewed any of Defendant's written legal compliance policies, it cannot say with certainty that, as in *In re Domestic Drywall Antitrust Litigation*, all of the policies are "general" and "more akin to a reference or instructional guide" than "specific advice."  2014 WL 5090032, at *4.  Therefore, the Court finds it can neither grant nor deny Plaintiffs' Motion with respect to this claim based on the information presently before it.

Defendant is therefore directed that, on or before **February 5, 2016**, it shall lodge with the Court for *in camera* review all of Defendant's written legal compliance policies responsive to the five aforementioned questions to which Defendant's counsel objected during Mr. Bailey's September 4, 2015 deposition.  The lodged documents shall be provided via e-mail at efile_Burkhardt@casd.uscourts.gov, and courtesy copies of the documents shall be delivered directly to chambers.  In the event a written legal compliance policy comprises only a portion of a larger corporate document, the entire document shall be provided and the relevant legal compliance policy shall be highlighted for the Court's attention.

In addition, on or before **February 5, 2016**, Defendant shall file via the CM/ECF system a declaration of Defendant's Vice President, Mr. Tabaddor, verifying the location(s) where each written legal compliance policy is maintained and to whom each policy has been made available.  After reviewing Defendant's written legal compliance policies and Mr. Tabaddor's declaration, the Court shall issue a subsequent order as to whether Mr. Bailey shall be made available to Plaintiffs for further limited questioning with respect to Defendant's written legal compliance policies.

///

///

### 3.       September 4, 2015 Deposition of Derrick Nelson

During Derrick Nelson's September 4, 2015 deposition, Plaintiffs asked the witness, "When was your first discussion with Mr. McElmon regarding preserving metadata?" (ECF No. 107-3 at 1.)  Mr. Nelson responded, "I believe it was early this year."  (*Id.*)  Mr. Nelson was then asked by Plaintiffs, "Anyone else present?"  (*Id.*)  Mr. Nelson replied, "No."  (*Id.*)  Plaintiffs then asked, "What did you and Mr. McElmon talk about?" and Defendant instructed Mr. Nelson not to respond "to the extent that what was discussed was for the purpose of seeking legal advice or disseminating the advice of attorneys to employees within the company."  (*Id.*)  With respect to "anything else in the conversation," Defendant instructed Mr. Nelson to answer.  (*Id.*)  Mr. Nelson responded, "I believe that was privileged information."  (*Id.*)

Plaintiffs assert Mr. Nelson should be compelled to respond to their questions because "[i]n the eleven cases that the Ninth Circuit has cited its well-established eight factor test, the Ninth Circuit has never applied the attorney-client privilege to communications strictly between nonlegal employees of a corporation" but has instead "always applied the attorney-client privilege to direct communications between attorney and client." (ECF No. 107-6 at 8.)  Plaintiffs also assert Defendant should not be permitted to rely on the "liberal California state law" it relied on during the meet and confer in place of the Ninth Circuit's strict eight-factor test for determining whether the attorney-client privilege applies.  (*Id.*)

Defendant argues Plaintiffs' "narrow view" of the attorney-client privilege "is wrong" because "the Ninth Circuit has often recognized that *indirect* communications can be privileged, such as those between a client and an attorney's agent" and "numerous courts, including courts within this District, have acknowledged that communications between corporate employees discussing legal advice are privileged." (ECF No. 112 at 6 (emphasis in original).)

In their Reply, Plaintiffs argue Defendant "misplaces its reliance on district court opinions that do not cite or apply the Ninth Circuit's eight factor test that require[s] a

communication between a client and an attorney." (ECF No. 114 at 5.) Plaintiffs also draw attention to the fact that Mr. Nelson's response stated only that he "believe[d]" the information he was asked to testify about "was privileged information." (*Id.*) Plaintiffs argue the Ninth Circuit "found error where a district court 'applied a "reasonable belief" standard' without ever referencing the well-established eight-part test." (*Id.* at 5–6 (quoting *Ruehle*, 583 F.3d at 608).)

Plaintiffs' Motion as to this ground is **DENIED**. In the case of a corporate client, the attorney-client privilege continues to protect communications between non-attorney employees engaged in discussions to either transmit information to an attorney for the purpose of seeking legal advice or disseminate information from an attorney to corporate employees. It is well established that the attorney-client privilege applies when the client is a corporation, and it may be necessary for a corporate client to collect information relevant to a legal problem from middle management or non-management personnel. *See Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 514 (S.D. Cal. 2003) (citing *Upjohn*, 449 U.S. at 390–91).

District courts in this circuit that recognize the Ninth Circuit's eight-factor test have held the attorney-client privilege is not lost where non-attorney employees engage in communications primarily for the purposes of transmitting information to legal counsel so they may provide legal advice or disseminating information from legal counsel to the employees of the corporation. In *Kintera, Inc. v. Convio, Inc.*, the court held the attorney-client privilege exists when a communication from one non-attorney employee to another "was for the purpose of the second employee transmitting . . . information to counsel for advice." 219 F.R.D. 503, 514 (S.D. Cal. 2003) (quoting *Cuno, Inc. v Pall Corp.*, 121 F.R.D. 198, 203 (E.D.N.Y. 1988)). In addition, in *MGA Entertainment, Inc. v. National Products Ltd.*, the court recognized that "[i]t is well accepted that 'in the case of a corporate client, privileged communications may be shared by non-attorney employees in order to relay information requested by attorneys.'" No. CV 10-07083 JAK (SSx), 2012 WL 3150532, at *4 (C.D. Cal. Aug. 2, 2012) (quoting *SmithKline Beecham Corp. v. Apotex*

*Corp.*, 232 F.R.D. 467, 477 (E.D. Pa. 2005)).  "Moreover, 'documents subject to the privilege may be transmitted between non-attorneys so that the corporation may be properly informed of legal advice and act appropriately.'"  *Id.* (quoting *Santrade Ltd. v. General Elec. Co.*, 150 F.R.D. 539, 545 (E.D.N.C. 1993)).  Based on the above, the Court finds Defendant's instructing Mr. Nelson not to answer was proper, as the instruction was limited to only those communications between Mr. Nelson and Mr. McElmon that were "for the purpose of seeking legal advice or disseminating the advice of attorneys to employees within the company."  (*See* ECF No. 107-3 at 1.)

In addition, the Court is not persuaded that Mr. Nelson's response, that he "believe[d] that was privileged information" (*id.*), suggests Defendant, or the Court here, is applying a "reasonable belief" standard in determining whether Mr. Nelson's conversations with Mr. McElmon were privileged.  Plaintiffs' argument is undermined by the fact that Defendant's counsel defined for Mr. Nelson in his instruction not to answer what constitutes a privileged conversation—discussions "for the purpose of seeking legal advice or disseminating the advice of attorneys to employees within the company"—and, as discussed above, district courts that follow the Ninth Circuit's eight-factor test have held non-attorney employee communications that fall within the definition provided by Defendant's counsel are protected by the attorney-client privilege.  *See, e.g.*, *Kintera*, 219 F.R.D. at 514; *MGA Entm't, Inc.*, 2012 WL 3150532, at *4.

## III.   Instructions Not To Answer Based Upon Attorney Work Product Doctrine

Plaintiffs' Motion also seeks to compel testimony from Ethan Bailey, David Grubbs, and Al McElmon on the basis they were instructed not to answer certain questions during their depositions under Defendant's improper assertions of the work product doctrine. (ECF Nos. 107-2, 107-4, 107-5, and 107-6 at 9–10.)

### A.   Legal Standard

"The work product doctrine, codified in Federal Rule of Civil Procedure 26(b)(3), protects 'from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation.'"  *In re Grand Jury Subpoena*, 357 F.3d 900,

906 (9th Cir. 2004) (quoting *Admiral Ins. Co. v. United States District Court*, 881 F.2d 1486, 1494 (9th Cir. 1989)).  "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."  *United States v. Nobles*, 422 U.S. 225, 238 (1975).  The Third Circuit has held "the selection and compilation of documents by counsel . . . in preparation for pretrial discovery falls within the highly-protected category of opinion work product." *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985) ("In selecting and ordering a few documents out of thousands counsel could not help but reveal important aspects of his understanding of the case." (quoting *James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138, 144 (D. Del. 1982))).

## B.     Discussion

During the September 2, 2015 deposition of Al McElmon and the September 4, 2015 depositions of Ethan Bailey and David Grubbs, Defendant instructed each witness not to answer certain questions on the basis the attorney work product doctrine applied to their responses.  Specifically, Mr. McElmon and Mr. Bailey were instructed not to answer when asked what documents they reviewed in preparation for their depositions (ECF Nos. 107-2 at 1 and 107-4 at 1),[3] and Mr. Grubbs was instructed not to answer when asked what documents and source code he reviewed in preparation for his deposition (ECF No. 107-5 at 1).

Plaintiffs assert the witnesses should be compelled to answer Plaintiffs' questions because Defendant, during the meet and confer, cited *Sporck v. Peil* to justify its assertion of the work product doctrine, and the "Ninth Circuit has not cited *Sporck* and many courts have followed the *Sporck* dissent or otherwise distinguished *Sporck*."  (ECF No. 107-6 at 9) (citing *U.S. Ethernet Innovations LLC v. Acer Inc.*, No. C 10-03724 CW (LB), 2013 WL

---

[3] With respect to the September 2, 2015 deposition of Mr. McElmon, Defendant instructed Mr. McElmon not to answer Plaintiffs' question on the bases of both the attorney-client privilege and work product doctrine.  (ECF No. 107-4 at 1.)  However, as neither Plaintiffs nor Defendant address in their moving papers Defendant's attorney-client privilege objection to this question, the Court considers this objection abandoned and finds no cause to address it here.

5370989, at *3 (N.D. Cal. Sept. 25, 2013); *Central Valley Chrysler-Jeep v. Witherspoon*, No. CVF046663AWILJO, 2006 WL 2600149, at *3 (E.D. Cal. Sept. 11, 2006); *In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, No. 3:12-md-02385-DRH-SCW, 2013 WL 1776433, at *2 (S.D. Ill. Apr. 25, 2013)).)

Defendant argues the work product doctrine applies because Defendant's counsel "sifted through thousands of pages, selecting a handful to review with the client[s]" in preparation for their depositions and "[c]ourts have long held that 'the selection and compilation of documents is often more crucial than legal research' and is therefore protected as attorney work product." (ECF No. 112 at 4–5 (citing *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1329 (8th Cir. 1986); *Sporck*, 759 F.2d at 315–16; *In re Allen*, 106 F.3d 582, 608 (4th Cir. 1997); *U.S. ex rel Bagley v. TRW Inc.*, 212 F.R.D. 554, 563–65 (C.D. Cal. 2003)).) Defendant further argues that, during each deposition, "it [wa]s clear that Plaintiffs were asking the witnesses which documents they reviewed *with counsel*." (*Id.* (emphasis in original).)

Plaintiffs, in their Reply, assert "CoreLogic incorrectly argues: 'Plaintiffs were asking the witnesses which documents they reviewed ***with counsel***.' . . . ***None*** of the questions at issue on this motion contained any '***with counsel***' qualifier or other similar language." (ECF No. 114 at 4 (emphasis in original) (citations omitted).)

During the January 6, 2016 hearing, Defendant's counsel could not confirm whether the three witnesses prepared for their depositions by reviewing *only* those documents selected for them by Defendant's counsel.

Plaintiffs' Motion as to this ground is **GRANTED in part and DENIED in part**. Plaintiffs fail to persuade the Court it should not rely on *Sporck* here. *See Sporck*, 759 F.2d at 316 (holding "the selection and compilation of documents by counsel . . . in preparation for pretrial discovery falls within the highly-protected category of opinion work product"). Although it is true the Ninth Circuit has never cited *Sporck* in a published opinion, this means it is also true the Ninth Circuit has never explicitly disagreed with the case or declined to follow it in a published opinion. In addition, the Court finds the district court

15

cases upon which Plaintiffs rely do not support Plaintiffs' argument that *Sporck* should not apply here. Contrary to Plaintiffs' assertion, courts in this Circuit have viewed *Sporck* favorably. For example, in *U.S. Ethernet Innovations*, the district court agreed that, under *Sporck*, "[c]ulled documents can be work product." *U.S. Ethernet Innovations*, 2013 WL 5370989, at *3. And in *Central Valley Chrysler-Jeep*, the court agreed with the holding in *Sporck* but did not apply it because the case involved a broad written discovery request seeking "*all* documents relating to" certain claims in the plaintiff's complaint, and the court found the request did "not appear calculated, nor likely, to reveal which documents Plaintiffs intend to use at trial, which documents support or undermine their position, or what inferences counsel has drawn from them." *See Central Valley Chrysler-Jeep*, 2006 WL 2600149, at *3 (emphasis added).

In addition, the Court declines to follow the Southern District of Illinois's holding in *In re Pradaxa*. In that case, the court agreed with the holding in *Sporck* that an attorney's compilation of documents for a witness's review is subject to work product protection, but only when counsel does not "gratuitously disclos[e] that the . . . documents have been or will be selected by counsel." *In re Pradaxa*, 2013 WL 1776433, at *1–2. Instead, the court suggests, "[o]pposing counsel . . . should not be permitted to inquire as to which, if any, of the documents a witness reviewed were selected by his or her counsel," and "if defense counsel [does] not gratuitously reveal[]" that he selected the documents, the documents can be disclosed "without any risk of revealing attorney-work product." *Id.* at *3. "To the extent that [counsel]'s voluntary disclosure regarding the selection of documents reveals attorney-client work product—they brought such a consequence on themselves." *Id.*

The Court does not agree attorney work product protection should not apply to an attorney's selection of documents when the attorney "gratuitously disclosed" the documents a deponent reviewed were selected by counsel. It is well known by attorneys that it is common practice for counsel to prepare their clients and their clients' witnesses for depositions. Such attorney preparation necessarily includes hand-selecting documents

relevant to a case to review with the witnesses.  As such, there is an implicit presumption that some, if not all, of the documents reviewed by a deponent were selected for review by his counsel, and therefore the Court does not agree that there would not be "any risk of revealing attorney-work product" if opposing counsel is prohibited from asking, and defending counsel is prohibited from offering, who selected the documents reviewed by the deponent.  Accordingly, the Court is not persuaded under *In re Praxada* that the *Sporck* standard should not apply here because Defendant's counsel "gratuitously disclosed" during the depositions that the documents reviewed by Mr. Bailey, Mr. Grubbs, and Mr. McElmon were protected by the work product doctrine.

Based on the above, the Court is not persuaded the work product doctrine does not protect the "handful" of documents Defendant's counsel specifically selected from "thousands of pages" to review with the witnesses before their depositions.  (*See* ECF No. 112 at 5.)  Therefore, to the extent Plaintiffs' questioning sought information about, and disclosure of, these counsel-selected documents, Plaintiffs' Motion is **DENIED**.

On the other hand, the Court recognizes Plaintiffs' questions at issue seek not only the disclosure of documents that Defendant's counsel selected for the witnesses to review but also the disclosure of documents the witnesses may have chosen to review on their own, outside the presence of counsel.  Defendant asserts in its Opposition that "it is clear that Plaintiffs were asking the witnesses which documents they reviewed *with counsel*" (ECF No. 112 at 4 (emphasis in original)), but the Court finds this is not the case.  Mr. Gratz's declaration makes clear that *he* "chose a selection of documents to discuss with each witness from among the many documents produced or made available in this case" (ECF No. 112-1 at 3), but it is not clear from the parties' moving papers that these counsel-selected documents were the *only* documents each witness reviewed.  The work product doctrine does not protect documents selected and reviewed by fact witnesses outside the presence of counsel, as no attorney mental impressions, conclusions, or opinions attach to the selection.  *See U.S. Ethernet Innovations*, 2013 WL 5370989, at *3 (concluding "a fact witness's view about relevant documents is closer to fact information than work product").

17

1   Therefore, to the extent Plaintiffs' questions sought the disclosure of documents that each
2   witness selected and reviewed *on his own*, outside the presence of counsel, in preparation
3   for his deposition, Plaintiffs' Motion is **GRANTED**.

4            Accordingly, Defendant is directed that, on or before <u>**February 8, 2016**</u>, it shall
5   provide Plaintiffs written declarations of Mr. Bailey, Mr. Grubbs, and Mr. McElmon
6   verifying whether or not the only documents, including any source code, each witness
7   personally reviewed in preparation for his deposition were the documents selected for his
8   review by Defendant's counsel.  In the event any witness asserts in his declaration that he
9   reviewed documents in preparation for his deposition that were not selected by counsel,
10  the identity of those documents is discoverable by Plaintiffs.  However, considering the
11  limited value of that discovery and the relative expense and inconvenience to everyone
12  involved of reconvening a live deposition, the Court finds the more appropriate remedy is
13  for Plaintiffs to be allowed to proceed by deposition by written questions pursuant to
14  Federal Rule of Civil Procedure 31.  Therefore, as to each witness who indicates in his
15  declaration that he reviewed documents not selected by counsel in preparation for his
16  deposition, Plaintiffs may, on or before <u>**February 12, 2016**</u>, proceed by deposition by
17  written questions as to the identification of the documents the witness reviewed that were
18  not selected by counsel.  Any responses to Plaintiffs' deposition(s) by written questions
19  shall be provided to Plaintiffs on or before <u>**February 19, 2016**</u>.
20  **IT IS SO ORDERED.**

21
22  Dated:  February 1, 2016

23                                                    Hon. Jill L. Burkhardt
24                                                    United States Magistrate Judge

18

14cv1158 BAS (JLB)