1  HULETT HARPER STEWART LLP
2  KIRK B. HULETT, SBN: 110726
   550 West C Street, Suite 1500
3  San Diego, CA 92101
4  Telephone:  (619) 338-1133
   Facsimile:  (619) 338-1139
5
6  LAW OFFICES OF DARREN J. QUINN
   DARREN J. QUINN, SBN: 149679
7  12702 Via Cortina, Suite 105
8  Del Mar, CA 92014
   Telephone:  (858) 509-9401
9  Email: dq@dqlaw.com
10
   Attorneys for Plaintiffs and the Class
11 [Additional Counsel on Signature Page]
12
                 **IN THE UNITED STATES DISTRICT COURT**
13
                   **SOUTHERN DISTRICT OF CALIFORNIA**
14

15 | IN RE: MULTIPLE LISTING | CASE NO. 3:14-cv-1158 BAS (JLB) |
16 | SERVICE REAL ESTATE PHOTO | |
   | LITIGATION | **DECLARATION OF KIRK B.** |
17 | | **HULETT IN SUPPORT OF** |
   | | **PLAINTIFFS' MOTION TO STRIKE** |
18 | | **EXPERT OPINIONS OF KEVIN** |
19 | | **MCQUEEN AND DOUGLAS G.** |
   | | **KIDDER** |
20

21                                    DATE:      April 4, 2016
                                      JUDGE:     Honorable Cynthia Bashant
22                                    CTRM:      4B (4th Floor - Schwartz)
23
                                      **NO ORAL ARGUMENT UNLESS**
24                                    **REQUESTED BY THE COURT**
25
                                      PUBLIC VERSION
26
27
28

1    I, KIRK B. HULETT, declare:

2    1.    I am counsel for Plaintiffs and the Class.  I am an attorney with the

3  law firm of Hulett Harper Stewart LLP.  I am a member of the California Bar and in

4  good standing.  I have personal knowledge of the facts set forth herein and if called

5  as a witness, could and would testify to such facts under oath.

6    2.    Attached hereto as Exhibit A is a true and correct copy of The Expert

7  Report of Kevin McQueen. **[FILED UNDER SEAL]**

8    3.    Attached hereto as Exhibit B is a true and correct copy of The Expert

9  Report of Douglas G. Kidder.

10    I declare under penalty of perjury under the laws of the United States of

11  America that the foregoing is true and correct.  Executed this 29th day of February,

12  2016, at San Diego, California.

13

14    _/s/ Kirk B. Hulett_
     KIRK B. HULETT
15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

**DOCUMENT FILED UNDER SEAL**

# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

IN RE: MULTIPLE LISTING SERVICE REAL
ESTATE PHOTO LITIGATION

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Case No. 14CV1158 BAS (JLB)

**EXPERT REPORT OF**
**DOUGLAS G. KIDDER**
*August 14, 2015*

# Table of Contents

**Section**                                                              **Page**

1.  **Scope of Work**..................................................................................1
2.  **Qualifications**..................................................................................1
3.  **Background**....................................................................................2
4.  **Summary of Conclusions**.................................................................3
5.  **Overview of the Holstrom Reports**....................................................3
6.  **Actual Damages**.............................................................................5
7.  **Sales/Profits**..................................................................................10
8.  **Statutory Damages**.........................................................................12
9.  **Signature Page**...............................................................................13

**1. SCOPE OF WORK**

1.       I have been retained by CoreLogic, Inc. ("CoreLogic") to review the Preliminary Expert Report and Disclosure of Richard Holstrom submitted July 14, 2015 ("Preliminary Holstrom Report") as well as the Supplement to Preliminary Expert Report and Disclosure of Richard Holstrom Dated July 14, 2015 Submitted August 12, 2015 ("Supplemental Holstrom Report").

2.       This report contains my conclusions and analyses as of the date of filing.  I reserve the right to update my opinions and analyses for any new information prior to the date of trial.

**2. QUALIFICATIONS**

3.       My name is Douglas Kidder.  I am a Managing Partner with OSKR, LLC, a firm that provides expert services primarily in the areas of intellectual property and antitrust.  I am also a member of the Licensing Executives Society, a former Director of i-cap Partners – a venture capital fund investing in technology companies – and a former member of the Trade New Zealand advisory board – a group formed to review New Zealand-based startups for support entering the U.S. market.

4.       I am also an Adjunct Professor in the Golden Gate University School of Accounting where I teach a graduate-level course on Damages.

5.       I hold a B.A. in Mathematics and English with Honors from Amherst College (1983) and a Masters in Science from the University of California at Berkeley (1986).  While at Berkeley, I was a lecturer in the Computer Science department.

6.       I have been performing business analyses and valuations for over twenty-five years, as a consultant, business owner, board member and manager.  I have been retained by companies to render expert opinions in the context of litigation, to assist in licensing and evaluation of intellectual property that is not subject to litigation and to develop and refine business strategies.  I have published and spoken on business and

valuation issues mostly related to intellectual property. I have co-authored six published articles relating to intellectual property damages.

7. A copy of my resume is attached as **Exhibit 1**. A list of documents reviewed in connection with this Report is attached as **Exhibit 2**. I am being compensated at an hourly rate of $510 per hour, plus reimbursement of expenses. I have been assisted in this matter by OSKR staff, working under my supervision and control. I have no financial interest in the outcome of this matter.

## 3. BACKGROUND

8. This case is a class action brought with two professional photographers as the named plaintiffs – Robert Stevens (and his company Affordable Aerial Photography) and Steven Vandel (who does business as Square Foot Studios) – against CoreLogic for alleged removal of copyright information from real estate photographs posted to Multiple Listing Services ("MLS").[1] The complaint alleges that three CoreLogic software products – Fusion™, Innovia™ and Matrix™ – used to upload real estate photographs to MLS services remove copyright information that might have otherwise been available in the metadata attached to the photograph.[2] The complaint alleges that removing copyright information violates 17 U.S.C. §1202.[3] Thus, the case is brought on behalf of a class defined as:

> …all persons or entities that hold the copyright in one or more images stored in a digital file with metadata containing copyright management information that was uploaded to a multiple listing service and copyright management information metadata was removed, altered or falsified by CoreLogic or a CoreLogic product. Excluded from the Class are (a) defendant and any entity in which any defendant has a controlling interest; (b) the employees, officers and directors of those identified in subparagraph

---

[1] Second Amended Class Action Complaint.
[2] Second Amended Class Action Complaint.
[3] Second Amended Class Action Complaint.

(a); (c) the heirs, successors, assigns and legal representatives of the persons identified in subparagraph (b) above; and (d) a multiple listing service.[4]

9.      It is my understanding that there is no claim for copyright infringement in this case; only a claim that the removal of the metadata was unlawful.

## 4.  SUMMARY OF CONCLUSIONS

10.      Neither of Mr. Holstrom's reports provide any information that is useful in determining damages from the allegedly-wrongful acts described in the complaint.  Mr. Holstrom misunderstands the allegedly-wrongful acts; describing the wrongful act as the display of the photographs by CoreLogic instead of the removal of the metadata. He also doesn't provide any estimates of damages nor even any methodologies to estimate either actual harm to the plaintiffs or the revenues and profits attributable to CoreLogic from the allegedly-wrongful acts.

## 5.  OVERVIEW OF THE HOLSTROM REPORTS

11.      The Preliminary Holstrom Report is largely a recitation of legal positions taken by the plaintiffs; the only actual numbers are CoreLogic's sales figures pulled from its 10-Ks.  Mr. Holstrom characterizes the Preliminary Holstrom Report as "…lay[ing] out the basis for doing a calculation"[5] but does not present any actual damages calculations.

12.      The Preliminary Holstrom Report contains two main sections:

- A synopsis of the complaint in this matter[6]

- A description of the forms of damages he understands are available[7]

     o  Actual damages[8]

---

[4]    Second Amended Class Action Complaint.

[5]    Deposition of Richard Holstrom, August 13, 2015 (rough) p. 20.

[6]    Preliminary Holstrom Report, pp. 1-4.

[7]    Preliminary Holstrom Report, pp. 4-5.

[8]    Preliminary Holstrom Report, p. 5.

- Sales/Profits[9]

- Statutory Damages[10]

13. His conclusions for each of the three categories of damages are:

- <u>Actual Damages:</u> Calculations require additional information.[11]

- <u>Sales/Profits</u>: CoreLogic's sales amount to over $1 billion per year.[12]

- <u>Statutory Damages:</u> Would be calculated by counting the number of violations and multiplying that number by the statutory damages amount.[13]

14. The Supplemental Holstrom Report is a summary of CoreLogic financial data as provided by Mr. Naveed Hakim in his deposition and an understanding given to Mr. Holstrom about deposition testimony provided by CoreLogic employee Jonathan Green.[14] As such, it is a refinement of Mr. Holstrom's opinion on Sales/Profits in the Preliminary Holstrom Report.

15. All of Mr. Holstrom's opinions are based on a misunderstanding of the allegations in this case. Mr. Holstrom's deposition testimony makes it clear that he's basing all of his opinions on the understanding that CoreLogic was not permitted to display plaintiff's photographs.[15] It is my understanding that plaintiffs are not alleging

---

[9] Preliminary Holstrom Report, pp. 5-6.

[10] Preliminary Holstrom Report, p. 7.

[11] Preliminary Holstrom Report, p. 5.

[12] Preliminary Holstrom Report, p. 6.

[13] Preliminary Holstrom Report, p. 7.

[14] Supplemental Holstrom Report, p. 2.

[15] See, e.g., Deposition of Richard Holstrom (rough) August 13, 2015:
p. 34. "Q. Okay. And so what you would be trying to assess is any profits that CoreLogic made that are attributable to the display of the plaintiff's photographs; is that correct?
A. Correct.
Q. On the theory that that display was unauthorized?
A. Correct.

p. 30. "Q. Setting aside for a moment the fact specifically to the named plaintiffs, do you in general have any opinion as to the monetary value of metadata that is associated with a photograph?
A. No, I don't."

that CoreLogic copied or displayed any photographs "outside of their original licenses"[16] but rather that CoreLogic inappropriately removed the metadata from some photographs and thereafter distributed those photographs knowing that metadata had been removed. So, to the extent that Mr. Holstrom opines on even the appropriate methodologies to calculate damages, his opinions are irrelevant for the purposes of estimating damages in this case. Damages must flow from the allegedly-wrongful act, which in this case is the removal of the metadata containing the copyright information or the distribution of those photographs knowing that metadata had been removed.

16. In the following sections I describe additional issues with Mr. Holstrom's opinions.

## 6. ACTUAL DAMAGES

17. Mr. Holstrom describes actual damages as:

> Plaintiffs were actually damaged to the extent they were not paid licensing revenue regarding Plaintiffs' real estate photographs used outside of their original licenses that provided for upload of real estate photographs to an MLS.[17]

18. Actual harm is most commonly quantified by examining the difference between the plaintiffs' profits in the actual world and a "but-for" world in which the allegedly-wrongful act didn't happen.[18] In this respect, it is different from statutory damages, which I understand are concerned not with the amount by which a plaintiff is worse off from a defendant's violative acts taken together, but instead with the number of violative acts undertaken by a defendant. In this case, the but-for world is one in

---

pp. 28-29. "Q. Do you have any understanding of the licenses that were permitted under the license agreements that the plaintiffs -- the individual plaintiffs entered into?
A. Not enough to articulate just simply they were licensed for use in a particular situation and then that's what led to where we are today."

[16] Preliminary Holstrom Report, p. 5.

[17] Preliminary Holstrom Report, p. 5.

[18] See, e.g. Weil, R., Lentz, D., Hoffman, D., *Litigation Services Handbook: The Role of the Financial Expert*, 5th Ed., John Wiley & Sons, 2012. §18.13(d) Calculating Sales in the But-For World, General Damages Measurement Issues, Economic Analysis of NonPatent Intellectual Property Rights.

which the metadata was unaltered when the photograph was posted to the MLS.  Actual

damages to the copyright holder would arise from any additional licensing revenues the

class members would have received in a but-for world in which the metadata was

intact.  Note that, in the but-for world, there is still the possibility that a photograph

would be used by an unlicensed party without paying a license fee to the photographer.

The inclusion of the metadata would not necessarily stop any unlicensed use, though it

might hypothetically reduce the amount of unlicensed use.  Discerning the difference in

licensing fees between the but-for and actual worlds would be the proper subject of a

damages report.  Yet Mr. Holstrom has no knowledge of any differences in such license

fees.[19]  I also recognize that the inclusion of metadata might hypothetically reduce the

costs of enforcing copyrights by making infringement less costly to detect.  But, again,

Mr. Holstrom offers no opinion on that topic, and Plaintiffs have testified that metadata

does not play any role in their efforts to detect infringement and that they detect

infringement through visually inspecting photographs or looking for visible watermarks

on the photographs.[20]

19.     The one example of unlicensed use in the complaint does not quantify or

even estimate any actual harm.  The example is of an aerial photograph of a

condominium complex that Mr. Stevens licensed to Dermot C. O'Brien for use on the

---

[19]   Deposition of Richard Holstrom (rough), August 13, 2015, pp. 29 – 30.
      "…Do you know whether the named plaintiffs in this case have licensed any of their photographs with
      license provisions that permit the metadata to be removed?
      A.  I don't know.
      Q.  Do you know whether plaintiffs have licensed any of their photographs without metadata?
      A.  I don't know.
      Q.  Do you know whether the plaintiffs licensing practices distinguish in any way between the rates
      that are charged for photographs with or without metadata?
      A.  I don't.
      Q.  Setting aside for a moment the fact specifically to the named plaintiffs, do you in general have any
      opinion as to the monetary value of metadata that is associated with a photograph?
      A.  No, I don't."

[20]   See, *e.g.,* Deposition of Robert Stevens, July 30, 2015, 35:24-40:2,
      Deposition of Steven Vandel, July 22, 2015 20:11-20, 34:14-21, 37:5-9.

Realtors Association of the Palm Beaches, a South Florida MLS.[21]  The complaint alleges that Mr. O'Brien uploaded the photograph with the metadata intact to the MLS and that the metadata was subsequently removed by CoreLogic.  The complaint further alleges that this image was used by another realtor to promote the sale of a different unit in the same condominium complex.  As far as actual damages are concerned, what this example is missing is evidence that the alleged removal of the metadata affected Mr. Stevens' license fees.  Neither the complaint nor the Preliminary or Supplemental Holstrom Reports provide any evidence that the lack of copyright metadata encouraged the second real-estate agent to use the photograph without licensing or prevented the detection of that use.[22]  Any actual harm must have some nexus with the allegedly-wrongful behavior;[23] the Preliminary Holstrom Report fails to provide that crucial nexus.

20.  Mr. Holstrom testified at his deposition that any attempt to quantify the actual damages to plaintiffs must start from some basis of understanding how many photographs were the subject of the allegedly wrongful action.[24]  Yet that information has never been provided by the plaintiffs.

---

[21]  Second Amended Complaint, p. 19.

[22]  It's also unclear from the complaint when the metadata is alleged to have been removed and whether it affected the allegedly infringing use.  The complaint states that Mr. O'Brien uploaded the photograph with the metadata intact to the MLS.  Then the complaint notes that the RealQuest listing of the same property does not contain the metadata.  But the complaint also alleges that the "…the infringer obtained Stevens' copyrighted image stripped of Stevens' metadata from the multiple listing service that both the infringer and O'Brien belong to…"  On its face, this appears to state that the second realtor obtained the photograph from the MLS listing (as opposed to from RealQuest). To the extent this is true, then the lack of copyright metadata on RealQuest seems unrelated to the unlicensed use.

[23]  See, e.g. Weil, R., Lentz, D., Hoffman, D., *Litigation Services Handbook:  The Role of the Financial Expert*, 5th Ed., John Wiley & Sons, 2012.  §3.1 "Proof that a defendant's wrongful conduct caused a plaintiff to suffer damages is a key concept in the determination of culpability in civil litigation…Causation is a simple concept: Did the defendant's wrongful conduct produce the damage suffered by the plaintiff? … Courts similarly refuse to find causation when an expert neglects to consider other factors that could have caused – or at least contributed to – the plaintiff's damages, even when the defendant has indisputably engaged in legally actionable misconduct."

[24]  Deposition of Richard Holstrom (rough), August 13, 2015, pp. 14-15.
"Q.  In calculating actual damages with respect to the named plaintiffs, would it be important for you to know how many of their photographs were at issue in this case?
A.  Yes."

21.    It's clear from the deposition testimony that – even if all of the plaintiffs'
photographs 1) contained metadata when provided to the realtors; and 2) had that
metadata removed through the allegedly wrongful acts – most of the uploaded
photographs were of no commercial interest beyond the scope of the original license as
described by Mr. Stevens in his deposition:

> Q. And for the photos you were licensing directly, not through the website,
> those were the ones where you were picking and choosing sort of which
> ones you felt a watermark was sort of worth the effort on and which ones -
> -
>
> A. And those were in the early years. And the pictures that we are talking
> about are pictures that, in my opinion, weren't going to be readily stolen by
> people. I mean, the only person that would really want somebody's
> bathroom, for example, would be maybe another agent that picked up the
> listing. But the majority of the people, if they are going to steal one of my
> pictures, it's going to be an aerial shot of the community, or something like
> that. And those pictures I would take the time to protect them. When we get
> into percentages, that's probably I misspoke on that, because I take, like I
> said, the majority of my pictures are, quite frankly, boring. You know, if I
> took a picture of this room, people aren't running to their computers to steal
> it. But if I took a picture of this building with downtown Fort Lauderdale,
> maybe. And I protect those. Not all of them, but the majority.[25]

22.    Establishing the quantum of actual damages requires establishing at least
the following parameters:

- Segregating works owned by the photographer or photographers at
  issue from other works.

- Determining what portion of works of the photographer or
  photographers at issue might have a secondary use.

- Determining what portion of works of the photographer or
  photographers at issue with a secondary use were marked by the
  photographers with copyright metadata.

- Determining where in the chain from the photographer or
  photographers at issue to public display the copyright metadata was
  removed with respect to the particular photograph at issue.

- Determining the extent of any subsequent infringing use of the
  works.

---

[25]    Deposition of Robert Stevens, July 30, 2015, pp. 116 – 118.

- Determining whether the lack of metadata affected any subsequent infringing use of the works.

- The but-for license fee for any subsequent infringing use recognizing that only some of the photographs were taken by professional photographers.

23.     The Preliminary Holstrom Report does not address a single one of these parameters.  Mr. Holstrom states that:

> It is also my understanding that CoreLogic was noticed to provide testimony regarding its products/services that distribute or display Plaintiffs' real estate photographs and plaintiffs have requested court assistance to require CoreLogic to provide witnesses to testify to such products/services.

> I intend to supplement my report once I have received further information.[26]

24.     Yet none of the parameters listed above would be ascertainable from data kept by CoreLogic.  The only data that could conceivably be available from CoreLogic might be a count of the number of photographs displayed during the damages period. CoreLogic would not even be able to provide counts of photographs at issue because CoreLogic would have no way of identifying which photographs originated with the photographer or photographers at issue, how many of those were ever marked with copyright metadata, where in the chain metadata was removed, etc.  Even if I assume, *arguendo*, that all of the data necessary to count the number of unlicensed uses of photographs of the photographer or photographers at issue that occurred as a direct result of the alleged removal of the copyright metadata was available from CoreLogic, the damages analysis would be incomplete without the critical parameter regarding but-for license fees—a parameter that is inarguably only available from plaintiffs.[27]

25.     In summary, the Preliminary Holstrom Report offers no guidance to the court as to a quantum of actual damages or even a proposed methodology that might be

---

[26]     Preliminary Holstrom Report, p. 5.

[27]     Mr. Holstrom also testified that he hadn't requested such information.  Deposition of Richard Holstrom (rough), August 13, 2015, pp. 24-25.
   "Q.   Did you ask to be provided with information regarding the prices at which any of the photographs had been sold?
   A.   No."

used to determine actual damages that might have been suffered by class members. Mr. Holstrom ascribes his inability to quantify actual damages to a lack of data from CoreLogic, but this is disingenuous since the data he would require to calculate actual damages is available from plaintiffs, and is not available from CoreLogic.

7. **SALES/PROFITS**

26. The Preliminary Holstrom Report starts by stating the basis of his understanding for the relevance of "Sales/Profits:"

> Section 1203(c)(2) also provides for "any profits of the violator that are attributable to the violation and are not taken into account in computing the actual damages." At least one case has held plaintiffs' burden under §1203 is only to show proof of defendants' revenues. Interplan Architects, Inc. v. C.L. Thomas, Inc., 2010 U.S. Dist. LEXIS 114306, 133-135 (S.D. Tex. Oct. 27, 2010).[28]

27. The recitation of all of CoreLogic's revenues without even any speculation as to how those revenues might be "attributable to the violation" seems inappropriate. The link proposed by Mr. Holstrom rests on a legal interpretation of the ruling in a case in the Southern District of Texas, an interpretation that I don't believe Mr. Holstrom is qualified to provide.

28. In fact there is no plausible link between the alleged "violation" in this case (the removal of the copyright metadata) and any sales or profits at CoreLogic. There's no allegation that CoreLogic didn't have the right to copy and display class-members' photographs. There's no evidence that CoreLogic either made additional sales or saved money from not displaying the metadata. In fact the complaint specifically notes that the removal of the metadata does not affect CoreLogic's costs in any material way.[29] Thus, the only possible profits to CoreLogic attributable to the

---

[28] Preliminary Holstrom Report, p. 5.

[29] "The copyright management information removed from the digital images does not materially reduce the file size of the digital images or materially reduce storage costs for the digital images. The removal of copyright management information from the digital images does not materially slow down loading of the digital images." Second Amended Complaint, pp. 15-16.

10

violation would have to arise from additional sales by CoreLogic that result from the absence of metadata.

29. Plaintiffs' requests for general sales and profits from various CoreLogic products would not allow Mr. Holstrom to determine "profits of the violator that are attributable to the violation" because there is absolutely no evidence that CoreLogic's revenues were affected in any way by the alleged violation. The Supplemental Holstrom Report lists a summary of product-specific revenues without any attempt to explain how those revenues were enhanced or affected in any way by the allegedly-wrongful acts. He states in his deposition that he has not attempted to determine what percentage of CoreLogic's profits are attributable to the photographs at issue in this case.[30] Plaintiffs have at best speculated that if CoreLogic had included the copyright metadata its products would have been less appealing to CoreLogic's users.[31] Plaintiffs have provided no evidence to back up this speculation. Mr. Holstrom provides no survey of CoreLogic users or comparison of any segment of CoreLogic's revenues or profits with and without the copyright metadata.

30. Mr. Holstrom states that he has been provided "no detailed documentation" regarding CoreLogic's claimed expenses.[32] He does not, however, identify any reason to believe the expense figures are not accurate, or express the opinion that they are not accurate. Having reviewed the figures and the deposition of Mr. Hakim, I have no reason to believe that they are not accurate and complete, and they are consistent with evidence that I have encountered in past cases relating to the development of computer software and the provision of related services. Mr. Holstrom also states that he does not believe that taxes paid are appropriately deducted in

---

[30] Deposition of Richard Holstrom (rough), August 13, 2015, p. 40.
"Q. So you have not undertaken to determine the percentage of CoreLogic's profit that is attributable to the photographs at issue in this case?
A. Correct."

[31] Second Amended Complaint, p. 17.

[32] Supplemental Holstrom Report, pp. 3-4.

calculating profits. However, I understand that the question of whether taxes may be deducted in calculating profits in a particular situation is a legal question.

31. I understand that CoreLogic changed the source code for the MLS platform products at issue (Matrix, InnoVia, and so on) so that they preserved the metadata in December 2014 and January 2015.[33] Thus, Mr. Holstrom had the ability to investigate whether the inclusion of the metadata in all photographs correlated with any change in CoreLogic's sales or profits for those products. Any such correlation would not establish a causal link between the allegedly-wrongful act and any sales or profits attributable to the allegedly-wrongful act,[34] but the lack of a correlation would be evidence that there was no causal link. Having reviewed Mr. Hakim's deposition and the exhibits thereto, I can discern no correlation.

## 8. STATUTORY DAMAGES

32. The Preliminary Holstrom Report notes that:

Once the number of violations is determined, the calculation of statutory damages will be the simple calculation of: number of violations X (times) statutory damage amount.[35]

33. I agree with Mr. Holstrom's conclusion as to the basic methodology.

34. However, it is worth pointing out that the Preliminary Holstrom Report doesn't provide a figure for the number of alleged violations so there isn't even a starting point for this calculation.

---

[33] Preliminary Expert Report and Disclosure of Chuck Hedrick, July 14, 2015, paras. 18, 22, 27.

[34] As noted in Weil, R., Lentz, D., Hoffman, D., *Litigation Services Handbook: The Role of the Financial Expert*, 5th Ed., John Wiley & Sons, 2012. §3.1: "The law follows logic. It requires that the plaintiff prove more than correlation to establish causation."

[35] Preliminary Holstrom Report, p. 7.

# 9. SIGNATURE PAGE

35.   I certify that, to the best of my knowledge and belief:

- The statements of fact in this report are true and correct.
- The reported analyses, opinions and conclusions are limited only by the reported assumptions and are my personal, unbiased and professional analyses, opinions and conclusions.
- I have no personal interest or bias with respect to the parties involved.
- My compensation is not contingent on an action or event resulting from the analyses, conclusions or opinions of this report.


_____

Douglas G. Kidder                                    August 14, 2015

Exhibit 1

# Douglas G. Kidder

510.899.7183 (office)
(510) 610-0325 (cell)
dkidder@oskr.com

---

**CURRENT EMPLOYMENT**

| | | | |
|---|---|---|---|
| 2008 - Present | **Managing Partner** | **OSKR, LLC** | **Emeryville, CA** |

Patent valuation and business strategy expert with over 25 years of experience analyzing patents, business opportunities and risks. Consult for clients on complex damages and licensing issues with a particular focus on technology companies. www.oskr.com

| | | | |
|---|---|---|---|
| 2014 – Present | **Adjunct Professor** | **Golden Gate University** | **San Francisco, CA** |

Teaching a graduate-level course in the School of Accounting on damages.

**PRIOR EXPERIENCE**

| | | | |
|---|---|---|---|
| 2001 – 2007 | **Principal** | **LECG, LLC** | **Emeryville, CA** |
| 1997 – 1999 | | | |

Primarily consulted for companies on damages issues arising from allegations of antitrust and intellectual property infringement.

| | |
|---|---|
| 2005 | **Office Director** |

Responsible for the operations of a 90-person office including reviews, hiring, firing, promotions, morale and general administration.

| | |
|---|---|
| 2001 - 2005 | **Special Assistant to the Chairman, Strategy** |

Advised the Chairman on corporate acquisitions and general strategic direction.

| | | | |
|---|---|---|---|
| 2000 - 2001 | **Managing Director** | **SCIENT** | **San Francisco, CA** |

Joined corporate strategy group to help design and implement a turn-around for this Internet consulting firm. Responsible for company organizational transition.

| | | | |
|---|---|---|---|
| 1999 - 2000 | **VP Operations** | **KENAMEA** | **San Francisco, CA** |

Helped develop strategy and business plan for an Internet software startup. Managed the operations of the company as we grew from 4 to 25 people.

| | | | |
|---|---|---|---|
| 1996 - 1997 | **Principal** | **MANAGEMENT RESOURCES** | **Berkeley, CA** |

Independent consultant performing due diligence and analyses of startup high-tech business opportunities.

| | | | |
|---|---|---|---|
| 1995 – 1996 | **Vice President Business Development** | **WALT DISNEY IMAGINEERING** | **Glendale, CA** |

Evaluated new business ideas for WDI including creative concepts and technology initiatives.

| | | | |
|---|---|---|---|
| 1993 - 1995 | **Director** | **VALSPAR** | **Chicago, IL** |

Managed the production planning, distribution and I/T functions for the $200 million Consumer Paint Division.

| | | | |
|---|---|---|---|
| 1992-1993 | **Senior Associate** | **BOOZ, ALLEN** | **San Francisco, CA** |
| 1990-1991 | **Associate** | | |
| 1987-1989 | **Analyst** | | |

Performed general business strategy and organization assignments across a wide range of industries. Exceptional (second in the history of the firm) promotion granted from Analyst to Associate waiving the usual requirement for an MBA.

Exhibit 1

| 1984 - 1986 | **Lecturer** | **UC BERKELEY** | **Berkeley, CA** |
|---|---|---|---|

Taught an introductory computer science class.

| 1986 | **Chief Engineer** | **WINDWARD YACHTS** | **Oakland, CA** |
|---|---|---|---|

Responsible for the detailed design of custom yachts.

**OTHER BUSINESS EXPERIENCE**

| 2013 – Present | **Naval Architect** | | **Berkeley, CA** |
|---|---|---|---|

Design custom rowing shells for open water.

| 2001 - 2013 | **President** | **MAAS BOAT COMPANY** | **Richmond, CA** |
|---|---|---|---|

Purchased, managed and sold a company that manufactures and sells open water rowing shells in the U.S. and around the world. Primary responsibilities were design, management, marketing, finance, and license negotiation.

| 2008 – 2012 | **President** | **NAOWRC, Inc.** | **Richmond, CA** |
|---|---|---|---|

Created a national championship for open water rowing that brought together rowers from around the U.S. and the world.

| 2004 – 2011 | **President** | **KIDDER RACING** | **Richmond, CA** |
|---|---|---|---|

Developed design brief for an innovative one-person sailing skiff. Founded company and was responsible for final design, strategy, marketing and finance.

**Board Positions**

Skyflow Inc. (former), NextWindow (former), Hero Arts (Advisory Board, former),Trade New Zealand (Advisory Board, former), Berkeley Rowing Club

**Other**

Member of the Licensing Executives Society

Booz, Allen & Hamilton Professional Excellence Award

Outstanding Graduate Student Instructor Award

Significant experience evaluating new businesses.

**EDUCATION**

| 1986 | M.Sc., University of California at Berkeley |
|---|---|
| 1983 | B.A. with Honors, Amherst College |

Elected to Sigma Xi, National Scientific Honor Society

**PUBLICATIONS & PRESENTATIONS**

"Are Patents Really Options?", *les Nouvelles Journal of the Licensing Executives Society*, V. 38(4), December 2003.

"Most Favored Licensee Clauses: Draining the Swamp" presentation at *Advanced Topics in IP Valuation* to the Intellectual Property Society, July 2004.

"Reasonable Royalties by the New Rules", *Dunn on Damages*, Summer 2011.

"Infringer's Profits Should Not Be the Focus of Patent Damages Cases", *Dunn on Damages*, Fall 2011.

"Simply Wrong: The 25% Rule Examined", *les Nouvelles Journal of the Licensing Executives Society*, December, 2011.

## Exhibit 1

"For Want of Damages the Case was Tossed:  Judge Posner's Ruling in Apple v. Motorola", *Dunn on Damages*, Fall 2012.

"Nash Bargaining and Patent Damages", *les Nouvelles Journal of the Licensing Executives Society*, March 2014.

"Lump Sums, Running Royalties and Real Options", *les Nouvelles Journal of the Licensing Executives Society*, (forthcoming).

Exhibit 1

**Litigation Experience**

Ossur Holdings Inc. and Generation II USA, Inc., v. Bellacure, Inc., Shane Sterling and Maurice Cannon. Before United States District Court, Western District of Washington at Seattle. Civil Action No: 05-CV-01552-CMP. Retained by counsel for plaintiffs, re: lost profits and unjust enrichment due to alleged theft of trade secrets in the medical device industry (osteoarthritis knee braces).

Google, Inc. v. American Blind & Wallpaper Factory, Inc. Before United States District Court, Northern District of California. Case No. C 03-5340 JF EAI. Retained by counsel for plaintiffs re: damages arising from Google's alleged infringement of American Blind & Wallpaper's trademarks.

Comcast Cable Communications Corporation, LLC v. Finisar Corporation. Before United States District Court for the Northern District of California. Case No. C 06-04206 WHA. Retained by counsel for plaintiffs re: damages arising from Comcast's alleged infringement of Finisar patent number 5,404,505.

Carter Bryant, an individual v. Mattel Inc. and Consolidated Actions. Before United States District Court for the Central District of California, Eastern Division. Case No. CV 04-9049 SGL (RNBx) Consolidated with Case No. CV 04-09059 Case No. CV OS02727. Retained by counsel for plaintiff re: damages arising from Mr. Bryant's alleged theft of copyrighted materials, breach of fiduciary duty and theft of trade secrets.

American Airlines, Inc. v. Google, Inc. Before United States District Court for the Northern District of Texas, Fort Worth Division. Case No. 4-07CV-487-A. Retained by counsel for defendant re: damages arising from Google's alleged infringement of American Airline's trademarks.

H. Richard Dallas, Shareholder Representative for dMarc v. Google Inc. Before JAMS, reference #1100054656. Retained by counsel for defendant re: damages arising from a breach of contract claim arising from Google's acquisition of dMarc.

Flashseats, LLC. v. Paciolan Inc. Before United States District Court, District of Delaware. Case No. CA 07-575 (JJF). Retained by counsel for defendant re: damages arising from Paciolan's alleged infringement of Flashseats' patent number 6,496,809.

Charlotte Russe Holding, Inc. v. Versatile Entertainment, Inc. and People's Liberation, Inc. Before Superior Court of the State of California, County of Los Angeles, Central District. Case No. BC424734. Retained by counsel for plaintiff re: damages arising from alleged breach of contract.

M&H Realty Partners V L.P. v. Aerojet-General Corporation, Boeing Realty Corporation, The Boeing Company, McDonnell Douglas Corporation. Before Superior

Exhibit 1

Court for the State of California, County of Orange.  Case No. 30-2008-00080378-CUTT-CXC.  Retained by counsel for plaintiff re: damages arising from environmental contamination at a property redevelopment.

Firefly Digital, Inc. v. Google Inc.  Before United States District Court, Western District of Louisiana, Lafayette Division.  Case number 6:10cv00133-TLM-PJH.  Retained by counsel for defendant re: damages arising from alleged trademark infringement.

American Technology, Inc., v. FrozenCPU.com, Inc.  Before the United States District Court, Middle District of Florida, Orlando Division.  Case Number 6:11-CV-110-ORLACC-GJK.  Retained by counsel for defendant re:  damages arising from alleged patent infringement.

C&C Jewelry Mfg., Inc. v. Trent West.  Before United States District Court, Northern District of California, San Jose Division, Case No. 5:09-cv-01303-JF-HRL.  Retained by counsel for plaintiff re:  reasonable royalty damages arising from alleged patent infringement.

Pixart Imaging, Inc. v. Avago Technologies General IP (Singapore) PTE. LTD.  Before United States District Court Northern District of California, San Jose Division.  Case No. C 10-00544 JW.  Retained by counsel for plaintiff re: additional royalties due from alleged breach of a patent license agreement.

EasyWeb Innovations, LLC. v. Twitter, Inc.  Before United States District Court, Eastern District of New York.  Case No. 2:11-cv-04550-JFB-WDW.  Retained by counsel for defendant re: reasonable royalty damages arising from alleged patent infringement.

Oncology Tech, LLC v. Elekta AB and Elekta, Inc.  Before United States District Court, Western District of Texas, San Antonio Division.  Case No: 5:12-CV-00314-HLH.  Retained by counsel for defendants re: damages arising from alleged breach of contract.

American Medical Response, Inc. v. Paramedics Plus, LLC.  Before Superior Court of the State of California, County of Alameda.  Case No:  RG10541623.  Retained by counsel for defendant re: damages arising from alleged low-cost bid for emergency medical services.

AMC Technology, L.L.C., v. Cisco Systems, Inc.  Before United States District Court, Northern District of California, San Jose Division.  Case No: C-11-03403 (PSG).  Retained by counsel for plaintiff re: damages arising from alleged breach of contract.

Neustar, Inc. v. F5 Networks, Inc.  Before United States District Court, Northern District of California, San Jose Division. Case No:  CV12-02574.  Retained by counsel for plaintiff re: damages arising from alleged breach of contract.

Exhibit 1

Qiang Wang v. Palo Alto Networks, Inc. Before United States District Court, Northern District of California, San Francisco Division. Case No: C 12-05579 WHA. Retained by counsel for defendant re: damages arising from alleged misappropriation of trade secrets and alleged patent infringement.

Affymetrix, Inc. v. Enzo Biochem Inc. Before United States District Court, Southern District of New York, Case No. 1:04-cv-01555-RJS. Retained by counsel for Plaintiffs re: damages arising from an alleged breach of contract.

Enzo BioChem, Inc. v. Affymetrix, Inc. Before United States District Court, Southern District of New York, Case No. 1:03-cv-08907-RJS. Retained by counsel for Defendants re: damages arising from an alleged breach of contract.

Wyde Voice, LLC and Free Conferencing Corporation v. Global IP Solutions, Inc. and Google Inc. Before Superior Court of the State of California, County of San Francisco, Case No. CGC-12-522868. Retained by counsel for defendants re: damages arising from an alleged breach of contract.

Alexander Stross v. ZipRealty, Inc. Before United States District Court, Western District of Texas, Austin Division. Civil Action No. A-13-CV-419-SS. Retained by counsel for defendants re: damages arising from alleged copyright infringement.

Collarity, Inc. v. Google, Inc. Before United States District Court, District of Delaware. Case No. 11-1103 MPT. Retained by counsel for defendants re: damages arising from alleged patent infringement.

TomTom International, B.V. v. Broadcom Corporation. Before United States District Court, Central District of California. Case No. 8:14-cv-00475 PA (DFMx). Retained by counsel for defendants re: damages arising from alleged breach of warranty.

In Re Google Inc. Privacy Policy Litigation. Before United States District Court, Northern District of California, San Jose Division. Case No. 12-CV-01382 PSG. Retained by counsel for Google re: damages arising from alleged breach of privacy policy.

Sarvint Technologies, Inc. v. Athos Works, Inc., and Mad Apparel, Inc. (and related cases filed by Sarvint against OMSignal, Ralph Lauren, Victoria's Secret, Textronics and adidas, and Sensoria). Before United States District Court, Northern District of Georgia, Atlanta Division. Civil Action No. 1:15-CV-00068-TCB. Retained by counsel for defendants re: irreparable harm arising from alleged patent infringement.

California Expanded Metal Products Co., v. ClarkWesternDietrich Building Systems LLC, James Klein and BlazeFrame Industries, Ltd. Before United States District Court, Central District of California, Case No. 2:12-cv-10791-DDP-MRWx. Retained by counsel for defendants re: damages arising from alleged breach of contract and patent infringement.

**Documents Considered**

2nd Amended Complaint dated April 10, 2015.

Preliminary Expert Report and Disclosure of Chuck Hedrick, July 15, 2015

Corrected Expert Report of Gerald Bybee, July 23, 2015

Exhibit 34

Exhibit 44

Exhibit 45

Deposition of Naveed Hakim, August 6, 2015

Preliminary Expert Report and Disclosure of Richard Holstrom, July 14, 2015

Supplement to Preliminary Expert Report and Disclosure of Richard Holstrom, August 12, 2015

Deposition of Richard Holstrom (rough transcript) August 13, 2015

Deposition of Robert Stevens, July 30, 2015

Deposition of Steven Vandel, July 22, 2015

**PROOF OF SERVICE**

I am a citizen of the United States and resident of the State of California. I am employed in San Francisco County, State of California, in the office of a member of the bar of this Court, at whose direction the service was made. I am over the age of eighteen years, and not a party to the within action. My business address is 217 Leidesdorff Street, San Francisco, CA 94111.

On August 14, 2015, I served the following documents in the manner described below:

**EXPERT REPORT OF DOUGLAS G. KIDDER**

☐ (BY U.S. MAIL) I am personally and readily familiar with the business practice of Durie Tangri LLP for collection and processing of correspondence for mailing with the United States Postal Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at San Francisco, California.

☐ (BY MESSENGER SERVICE) by consigning the document(s) to an authorized courier and/or process server for hand delivery on this date.

☐ (BY FACSIMILE) I am personally and readily familiar with the business practice of Durie Tangri LLP for collection and processing of document(s) to be transmitted by facsimile and I caused such document(s) on this date to be transmitted by facsimile to the offices of addressee(s) at the numbers listed below.

☐ (BY OVERNIGHT MAIL) I am personally and readily familiar with the business practice of Durie Tangri LLP for collection and processing of correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by Federal Express for overnight delivery.

☒ BY ELECTRONIC SERVICE: By electronically mailing a true and correct copy through Durie Tangri's electronic mail system from mafranz@durietangri.com to the email addresses set forth below.

☐ (BY PERSONAL DELIVERY) I caused such envelope to be delivered by hand to the offices of each addressee below.

On the following part(ies) in this action:

Darren James Quinn
Law Offices of Darren J. Quinn
12702 Via Cortina
Suite 105
Del Mar, CA 92014
Telephone: (858)509-9401
Facsimile: (858)509-9411
Email: dq@dqlaw.com

Attorneys for Plaintiffs

Joel B. Rothman
Schneider Rothman Intellectual
Property Law Group PLLC
4651 North Federal Highway
Boca Raton, FL 33431
(561) 404-4335
Fax: (561) 404-4353
Email: joel.rothman@sriplaw.com

Attorneys for Plaintiffs

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 14, 2015, at San Francisco, California.

MARGARET ANN FRANZ