DURIE TANGRI LLP
DARALYN J. DURIE (SBN 169825)
ddurie@durietangri.com
JOSEPH C. GRATZ (SBN 240676)
jgratz@durietangri.com
MICHAEL A. FELDMAN (SBN 295780)
mfeldman@durietangri.com
217 Leidesdorff Street
San Francisco, CA 94111
Telephone:415-362-6666
Facsimile: 415-236-6300

Attorneys for Defendant
CORELOGIC, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: MULTIPLE LISTING SERVICE REAL ESTATE PHOTO LITIGATION | Case No. 3:14-cv-01158-BAS-JLB |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT CORELOGIC, INC.'S MOTION FOR SUMMARY JUDGMENT** |
| | Date:  April 11, 2016<br>Ctrm:  4B (4th Floor - Schwartz)<br>Judge: Honorable Cynthia Bashant |
| | **NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |
| | PUBLIC VERSION |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................. 1

II.  SUMMARY OF UNDISPUTED FACTS .......................... 3

    A.  CoreLogic's MLS Platform Software ......................... 3

    B.  Plaintiffs' Photos and Photo Licenses ...................... 4

    C.  Photo Metadata ........................................................ 6

III.  LEGAL STANDARD ......................................................... 8

IV.  NEITHER PLAINTIFFS NOR ANY PUTATIVE CLASS CAN SUSTAIN A CLAIM AGAINST CORELOGIC ........................................ 9

    A.  17 U.S.C. § 1202(b)(1) Does Not Apply to CoreLogic Because CoreLogic Merely Provides Software ........................ 9

    B.  The Two Separate Mental State Requirements of § 1202(b) Are Not Met ......................................................... 11

        1.  CoreLogic Had No Reason to Know Of Any Inducement, Enablement, Facilitation, or Concealment Of Copyright Infringement. ......................................................... 12

        2.  CoreLogic Did Not Intend to Remove Any Copyright Management Information or Know That Any Copyright Management Information Was Removed .................. 16

    C.  There Is No Evidence Photographs Contained CMI When Uploaded to CoreLogic's Software ............................ 18

        1.  Plaintiffs bear the burden of showing that images contained CMI metadata in the first place. ............. 19

        2.  Plaintiffs bear the burden of showing that metadata was not removed by a party that had custody of the photo before it was uploaded. ........................................................ 20

        3.  Potential modification by an intervening third party bars a claim under § 1202 ..................................................... 20

    D.  Plaintiffs Cannot Meet Their Burden to Show That CoreLogic Acted "Without the Authority of the Copyright Owner" ........ 21

        1.  Plaintiffs Cannot Show that CoreLogic Acted Without the Express Authority of the Copyright Owner ................. 21

        2.  CoreLogic has an implied license to modify real estate images, which includes removal of CMI. ....................... 23

E.      Plaintiffs Have Provided No Evidence of Any Element of a Claim Under § 1202(a) ............................................................................ 24

V.      CONCLUSION .................................................................................... 25

MEM. OF P. & A. IN SUPP. OF CORELOGIC'S MOTION FOR SUMM. J.
14CV01158-BAS-JLB

# TABLE OF AUTHORITIES

**Page(s)**

**<u>Cases</u>**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)........................................................................................ 9

*Asset Mktg. Sys., Inc. v. Gagnon*,
542 F.3d 748 (9th Cir. 2008) ......................................................................... 24

*Celotex v. Catrett*,
477 U.S. 317 (1986)........................................................................................ 9

*Drauglis v. Kappa Map Grp., LLC*,
No. CV 14-1043, 2015 WL 4932305 (D.D.C. Aug. 8, 2015) ....................... 25

*Frost-Tsuji Architects v. Highway Inn, Inc.*,
No. CIV. 13-00496 SOM, 2014 WL 5798282 (D. Haw. Nov. 7, 2014) ....... 14

*Frost-Tsuji Architects v. Highway Inn, Inc.*,
No. CIV. 13-00496 SOM, 2015 WL 5601853 (D. Haw. Sep. 23, 2015),
*appeal docketed*, No. 15-15802 (9th Cir. 2015) .......................................... 15

*Frost-Tsuji Architects v. Highway Inn, Inc.*,
No. CIV. 13-00496 SOM/BM, 2014 WL 4237285 (D. Haw. Aug. 26,
2014) .............................................................................................................. 24

*Gordon v. Nextel Communications*,
345 F.3d 922 (6th Cir. 2003) .............................................................. 14, 15, 16

*In re Barboza*,
545 F.3d 702 (9th Cir. 2008) ........................................................................... 9

*Johnston v. Pierce Packing Co.*,
550 F.2d 474 (9th Cir. 1977) ......................................................................... 21

*Kelly v. Arriba Soft Corp.*,
77 F. Supp. 2d 1116 (C.D. Cal. 1999),
*aff'd in part, rev'd in part*, 280 F.3d 934 (9th Cir. 2002),
*opinion withdrawn and superseded on denial of reh'g*, 336 F.3d 811 (9th
Cir. 2003) *and aff'd in part, rev'd in part*, 336 F.3d 811 (9th Cir. 2003) ... 17

*Kennedy v. Gish, Sherwood & Friends, Inc.*,
No. 4:13-CV-2236 JAR, 2015 WL 6750814 (E.D. Mo. Nov. 5, 2015) ....... 24

*Keogh v. Big Lots Corp.*,
No. 3:04-00738, 2006 WL 1129375 (M.D. Tenn. Apr. 27, 2006) ............... 16

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
387 F.3d 522 (6th Cir. 2004) ......................................................................... 10

*Lusa Lighting, Int'l, Inc. v. Am. Elex, Inc.*,
No. SACV 07-674-DOC, 2008 WL 4350741 (C.D. Cal. Sept. 22, 2008) ..... 9, 17

*Merideth v. Chicago Tribune Co., LLC*,
 No. 12 C 7961, 2014 WL 87518 (N.D. Ill. Jan. 9, 2014) ............................................ 16

*Murphy v. Millennium Radio Grp. LLC*,
 650 F.3d 295 (3d Cir. 2011) ...................................................................................... 9, 10

*Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*,
 975 F. Supp. 2d 920 (N.D. Ill. 2013) ............................................................................ 25

*Photographic Illustrators Corp. v. Orgill, Inc.*,
 No. CV 14-11818-PBS, 2015 WL 4572296 (D. Mass. July 29, 2015) ........................ 21

*Rebel Oil Co., Inc. v. Atl. Richfield Co.*,
 51 F.3d 1421 (9th Cir. 1995) ........................................................................................... 9

*Rosenthal v. MPC Computers, LLC*,
 493 F. Supp. 2d 182 (D. Mass. 2007) ............................................................................ 11

*S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co.*,
 690 F.2d 1235 (9th Cir. 1982) ................................................................................... 9, 17

*Textile Secrets Int'l, Inc. v. Ya-Ya Brand Inc.*,
 524 F. Supp. 2d 1184 (C.D. Cal. 2007) .................................................................. 10, 11

*Tomelleri v. Zazzle, Inc.*,
 No. 13-CV-02576-EFM-TJJ, 2015 WL 8375083 (D. Kan. Dec. 9, 2015) ............. 19, 25

*Ward v. Nat'l Geographic Soc.*,
 208 F. Supp. 2d 429 (S.D.N.Y. 2002) ........................................................................... 25

**Statutes**

17 U.S.C. § 1201 .................................................................................................................. 11

17 U.S.C. § 1201(a) ............................................................................................................. 11

17 U.S.C. § 1202 ........................................................................................................... passim

17 U.S.C. § 1202(a) .......................................................................................................... 3, 24

17 U.S.C. § 1202(b) ...................................................................................................... passim

17 U.S.C. § 1202(c) ............................................................................................................. 18

17 U.S.C. § 501 .................................................................................................................... 21

**Other Authorities**

H.R. REP. 105-551, 22 (1998) ............................................................................................ 10

S. REP. 105-190, 34 (1998) ................................................................................................ 10

**Rules**

Fed. R. Civ. P. 56(a) .............................................................................................................. 9

# I.   INTRODUCTION

The named Plaintiffs are professional photographers who took photographs of houses that were for sale and licensed those photographs to real estate agents so that the real estate agents could upload those photographs to Multiple Listing Services ("MLSs"). Plaintiffs complain that those uploads to the MLSs included their images but not the digital metadata associated with them.  Plaintiffs bring a claim under 17 U.S.C. § 1202(b), which makes it unlawful to "***intentionally remove or alter*** any copyright management information [("CMI")]" "***having reasonable grounds to know***[] that ***it will induce, enable, facilitate, or conceal an infringement of [copyright]***."  17 U.S.C. § 1202(b) (emphasis added).  Notably, until they were contacted by their lawyers in this case, the named Plaintiffs had never used any digital metadata associated with their photographs to identify an instance of copyright infringement and indeed did not even know whether any digital metadata was retained after their photographs were uploaded to MLSs.  Plaintiffs' claim fails as a matter of law on multiple levels.

First, CoreLogic cannot be liable under § 1202(b) because that section does not apply to entities providing an instrumentality that can be used by third parties to remove or alter copyright management information—conduct that might or might not violate § 1202(b).  Real estate agents obtain licenses to photographs for the purpose of uploading them to MLSs.  CoreLogic has no ability to determine whether the photographs include digital metadata, whether any of that digital metadata might include copyright management information, whether the individual rights holder provided the necessary permissions to the real estate agent, or whether there is any reason to believe that copyright infringement is likely to be induced, enabled, facilitated or concealed by the uploading of a particular photograph without any copyright management information that might be present.  The real estate agents, not CoreLogic, control that information and are thus the relevant actors for purposes of assessing liability under § 1202(b).  Indeed, the legislative history is unambiguous that Congress did not intend § 1202(b) to apply to entities such as CoreLogic, and CoreLogic is not aware of any case in which a court has

1

1  held that a provider of software can be liable under § 1202(b).

2        Second, Plaintiffs offer no evidence that CoreLogic had reasonable grounds to

3  know that the removal of metadata from any real estate photograph would induce, enable,

4  facilitate or conceal an instance of copyright infringement.  Literally all the evidence is to

5  the contrary.  Plaintiffs have provided no evidence that the operation of CoreLogic's

6  software has led to even a single instance of copyright infringement.  While there is

7  limited evidence of unauthorized copying of real estate photographs in general, there is no

8  evidence that the presence or absence of metadata has any impact on that infringement.

9  Indeed, there is no evidence that real estate photographers rely on metadata to manage

10  their copyrights at all.  Neither of the named Plaintiffs ever did so.  Instead, real estate

11  photographers use techniques such as visible watermarks to manage their copyrights—

12  information that has always been preserved when using CoreLogic's software.

13        Third, Plaintiffs offer no evidence that CoreLogic intended that its software would

14  be used to remove copyright management information, in part because there is no

15  evidence that CoreLogic knew that some photographers were embedding copyright-

16  related information in the metadata in their photographs.  Because CoreLogic did not

17  know that some photographers were embedding copyright management information in

18  metadata, CoreLogic could not have intentionally removed copyright management

19  information that it did not know existed.  There is simply no evidence from which a

20  reasonable jury could conclude that CoreLogic intentionally removed copyright

21  management information.

22        Fourth, Plaintiffs must prove that CoreLogic acted without the authority of the

23  copyright holder.  The putative class includes both professional photographers who

24  license their photographs to real estate agents and real estate agents who snapped the

25  photographs themselves.  There is no factual dispute that CoreLogic received the

26  necessary permissions from the MLSs, and that the MLSs received the necessary

27  permissions from their member real estate agents.  As a result, real estate agents can have

28  no claim because they explicitly licensed their photographs for upload using CoreLogic

2

software.  The only question is whether the individual real estate agents who did not take the photographs themselves received the necessary permissions from the photographers who took the pictures—something over which CoreLogic has no control.  Here, the individual Plaintiffs admit they authorized real estate agents to upload their photographs to MLSs and to modify their photographs and reproduce their photographs in forms that would not include any metadata at all, such as hard-copy posters and brochures.  Plaintiffs have not produced *any* license agreement that precluded the real estate agents from using CoreLogic's software to copy the images without copying the metadata.  Plaintiffs' claims thus fail in their entirety as a matter of both express and implied license.

Fifth, Plaintiffs have failed to adduce evidence of a violation of the statute as to a single individual photograph because Plaintiffs have failed to identify any photograph that included copyright management information in its metadata at the point in time when a real estate agent uploaded that photograph to CoreLogic's software platform.  Other courts have rejected claims under § 1202(b) for this same reason.

Finally, Plaintiffs also contend that CoreLogic violated § 1202(a), which makes it a violation "knowingly and with the intent to induce, enable, facilitate, or conceal infringement" to "provide copyright management information that is false" or "distribute or import for distribution copyright management information that is false."  Plaintiffs contend that CoreLogic violated this provision when it included a general copyright notice at the bottom of a real estate listing page that also included photographs and when it distributed reports which contained such general copyright notices.  This claim also fails as a matter of law.  Courts routinely reject the position that a copyright notice on a page that includes other copyrighted material constitutes false CMI.

## II.  SUMMARY OF UNDISPUTED FACTS

### A.  CoreLogic's MLS Platform Software

CoreLogic develops and provides software and services to real estate Multiple Listing Services.  An MLS is a service that aggregates real estate listings, publishes them in order publicize the listings and is typically run by an association of real-estate agents.

MEM. OF P. & A. IN SUPP. OF CORELOGIC'S MOTION FOR SUMM. J.
14CV01158-BAS-JLB

Real-estate agents join MLSs and use CoreLogic's software platform to upload their real-estate listings, including property descriptions and photographs. *See* Second Am. Compl. ¶ 21, ECF No. 34. Real-estate agents typically have the right to upload photographs either because they snapped the photographs themselves or because they licensed them from a professional real-estate photographer for use in a real-estate listing. Declaration of Kevin McQueen ("McQueen Decl.") Ex. A at 4 ¶ 11; Declaration of Gerald Bybee ("Bybee Decl.") Ex. 1 at 10-11 ¶ 37. In some cases, a photographer may upload the photographs to the MLS on the agent's behalf. Declaration of Michael Feldman ("Feldman Decl.") Ex. A (Vandel Dep. Tr.) at 6, 11:18-20.

CoreLogic does not develop each piece of the functionality for its MLS software from scratch. As is typical in software development, CoreLogic sometimes uses pre-built modules of source code already developed by third parties in order to implement certain common functionality. *See* Declaration of Alex Troy ("Troy Decl.") ¶ 3; Declaration of Al McElmon ("McElmon Decl.") ¶ 3; Declaration of Nick Webb ("Webb Decl.") ¶ 3. CoreLogic did not develop the image processing code for any of the accused MLS platforms. *See* Troy Decl. ¶ 3; McElmon Decl. ¶ 3; Webb Decl. ¶ 3. Rather, the code for image processing within the InnoVia platform comes from ██████████████████ ████████████ McElmon Decl. ¶ 3. The code for image processing within the remaining platforms comes from ████████████████████████████████. Troy Decl. ¶ 3; Webb Decl. ¶ 3. It is common practice for software developers to use these libraries for this type of functionality. See Hedrick Rebuttal Report ¶ 8 ("The use of the default set of options in a library may be common among programmers . . ."); Declaration of Mark Seiden ("Seiden Decl.") Ex. 1 at 3 ¶ 12(b).

**B.   Plaintiffs' Photos and Photo Licenses**

Plaintiffs Vandel and Stevens are professional real estate photographers. Vandel is typically hired by real-estate agents and testified that his dealings with the agents were and are oral, he understood that his photos were being licensed for the purpose of being uploaded to an MLS, and he did not recall ever orally conveying any limitation on the

4

1   scope of the license being granted, including any instruction that his photos could not be

2   modified when they were uploaded.  Feldman Decl. Ex. A (Vandel Dep. Tr.) at 32-33,

3   91:14-92:11.  Shortly before the filing of this lawsuit, Vandel added licensing terms to his

4   website, but never directed any of his customers to review these terms, and continued to

5   do business entirely by means of oral communications.  *Id*. at 37, 98:18-24; *see also*

6   Feldman Decl. Ex. B (Vandel Invoices) at 43, 45.

7        Stevens testified that all copyrights in his photographs are owned by his company,

8   Affordable Aerial Photography, which is also a Plaintiff in this action.  Feldman Decl. Ex.

9   C (Stevens Dep. Tr.) at 73, 74-75, 184:24-4, 195:25-196:4; *see also id.* Ex. D at 85-86

10   (Copyright Transfer Agreement).  Stevens testified both in his individual capacity and

11   Affordable Aerial Photography's corporate designee.  While Stevens's invoices include a

12   "NOTICE OF COPYRIGHT," he testified that the actual terms governing his licenses are

13   delivered orally.  Feldman Decl. Ex. C (Stevens Dep. Tr.) at 67, 70, 161:5-12; 165:11-17.

14   Stevens testified that, with respect to images licensed directly from Affordable Aerial

15   Photography by real-estate agents, the agents may do as they wish with the photos, so

16   long as the photos are used only in connection with a particular property listing.  *Id*. at 69,

17   70, 164:10-165:4.  And while images purchased through AAP's website,

18   StockImageDepot.com, are purportedly subject to a restrictive, 1,474-word "Purchase

19   Agreement," Feldman Decl. Ex. E at 87-88, Stevens testified that in fact he has not

20   carefully reviewed that agreement (which came with his website's software), and that

21   notwithstanding its terms, a licensee of photos on StockImageDepot.com may do as he

22   wishes with the photos, *including* using them in connection with multiple different

23   property listings.  Feldman Decl. Ex. C (Stevens Dep. Tr.) at 82, 231:10-18.

24        Both Stevens and Vandel license their photographs to real estate agents, who are

25   bound by agreements with the MLSs on which they list properties.  These agreements

26   contain varying but strongly-worded representations and warrantees that the agent has the

27   authority to upload the photos and data as well as a strongly worded license to the MLS to

28   use and sublicense use of the data.  *See, e.g.*, Feldman Decl. Ex. F (Sandicor MLS Rules

and Regulations) at 95 § 11.7; Feldman Decl. Ex. G (Beaches MLS Rules and Regulations) at 103-104 § 13.  In turn, each MLS provides broad license rights to CoreLogic to modify and use real estate data, including real estate photos.  *See, e.g.*, Feldman Decl. Ex. H (▮▮▮▮▮▮▮▮) at 107 (CORELOGIC0008669); *id.* Ex. I (▮▮▮▮▮▮▮▮) at 114 (CORELOGIC0008920); *id.* Ex. J (▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮) at 116 § 2.1; *see also* McQueen Decl. Ex. A at 4-7 ¶¶ 12-18.  CoreLogic also requires that the MLSs represent and warrant that they have the authority to provide these licenses.  *See, e.g.*, Feldman Decl. Ex. H (▮▮▮▮▮▮▮) at 106 (CORELOGIC0008664); *id.* Ex. I (▮▮▮▮▮▮) at 111 (CORELOGIC0008874); *id.* Ex. J (▮▮▮▮▮▮▮▮▮▮) at 117-118 § 7.1; *see also* McQueen Decl. Ex. A at 4 ¶¶ 12, 15(b), 16(c).

Plaintiffs Stevens and Vandel generally do not upload photographs to MLSs themselves.  *See* Feldman Decl. Ex. C (Stevens Dep. Tr.) at 63, 151:12-16; *id.* Ex. A (Vandel Dep. Tr.) at 5-6, 10:25-11:5.[1]  Instead, they provide their photographs to the real estate agent and the agent uploads the photographs.  *See* Feldman Decl. Ex. C (Stevens Dep. Tr.) at 63-64, 70, 151:25-152:3, 165:5-17; *id.* Ex. A (Vandel Dep. Tr.) at 5-6, 10:25-11:5, 11:11-17.

### C.   Photo Metadata

Some photographs contain metadata.  Metadata is "data about data."  *See* Feldman Decl. Ex. K (Sedlik Dep. Tr.) at 122, 123, 25:4-16, 39:4-19; *id.* Ex. L (Sedlik Report) at 127, 15.  It is generally not visible on the face of the image.  *See* Seiden Decl. Ex. 1 at 3, 7 ¶¶ 12(a), 27; *see* Feldman Decl. Ex. K (Sedlik Dep. Tr.) at 122, 123, 25:4-16, 39:4-19; *id.* Ex. L (Sedlik Report) at 127, 15.  Rather, it is embedded in an image file.  *See* Feldman Decl. Ex. K (Sedlik Dep. Tr.) at 122, 123, 25:4-16, 39:4-19; *id.* Ex. L (Sedlik Report) at

---

[1] Plaintiff Vandel testified that on certain limited occasions, he uploaded photographs directly to CoreLogic's software platform.  *See* Feldman Decl. Ex. C (Stevens Dep. Tr.) at 50-51, 11:18-12:7.  However, Vandel does not make any claim based on these uploads and has provided no evidence of the photographs he uploaded directly.

MEM. OF P. & A. IN SUPP. OF CORELOGIC'S MOTION FOR SUMM. J.
14CV01158-BAS-JLB

127, 15.  On photographs, this data can include metadata "tags" relating to the taking of the photograph such as "camera maker," "camera model," "exposure time," "focal length," etc.  *See* Seiden Decl. Ex. 1 at 7-8 ¶¶ 29-30; Bybee Decl. Ex. 1 at 6-7 ¶ 20.  There are also optional metadata "tags" such as "artist" or "copyright."  *Id.*  The user must specifically choose to add this optional information and not all cameras and image editing software even have this capability.  Bybee Decl. Ex. 1 at 6-7 ¶ 20.

Plaintiff AAP licenses real-estate photographs through two channels: by licensing photos to the parties that commissioned those photos, Feldman Decl. Ex. C (Stevens Dep. Tr.) at 66, 154:8-15, and through a website AAP operates, StockImageDepot.com, *id.* at 65-66, 153:20-154:15.  Stevens admits that, until sometime in 2013, he did nothing to add CMI metadata to any photos distributed by AAP; images taken thereafter include Stevens' name.  *Id.* at 53-54, 52, 32:24-33:5; 31:6-11.  Thereafter, the most marketable photos are also made available for licensing on the StockImageDepot.com site.  Images licensed and downloaded from that website at the "Original" size (for $99) have some metadata about the camera, exposure, shutter speed, and so on, Feldman Decl. ¶¶ 13-14, Exs. M-O at 130-32, but images taken before 2013 contain no metadata identifying Stevens or AAP, because he only configured his camera to include that metadata at that time.  Feldman Decl. Ex. C (Stevens Dep. Tr.) at 52, 31:6-11.  Moreover, no matter when purchased, images licensed and downloaded from the StockImageDepo.com website at the smaller 1600px size (for $45) do not contain any metadata at all, because—like CoreLogic's software—the StockImageDepot.com software used to reduce the size of those images does not retain metadata when images are resized.  Seiden Decl. Ex. 1 at 10-11 ¶¶ 44-48.  Indeed, it is common for software that can be used to resize or otherwise manipulates images—including many popular image-hosting and image-editing websites like Facebook, Instagram and Twitter—to lack the capacity to copy metadata when copying an image.  Seiden Decl. Ex. 1 at 9-10 ¶¶ 40-43.

Neither Vandel nor Stevens ever used metadata associated with their photographs to track down an instance of copyright infringement.  Feldman Decl. Ex. A (Vandel Dep.

MEM. OF P. & A. IN SUPP. OF CORELOGIC'S MOTION FOR SUMM. J.
14CV01158-BAS-JLB

Tr.) at 7, 9, 12, 20:11-20, 34:14-21, 37:3-9; Ex. C at 55-57, 37:7-39:13. Indeed, Vandel did not even know whether metadata was present on his photographs prior being recruited to serve as a named plaintiff in this case. Feldman Decl. Ex. A (Vandel Dep. Tr.) at 4, 7:2-7. Neither Vandel nor Stevens claims that the absence of metadata on any of their photographs has facilitated an act of copyright infringement. Feldman Decl. Ex. A (Vandel Dep. Tr.) at 24-25, 56:15-57:21; Ex. C (Stevens Dep. Tr.) at 78, 213:13-19.

Plaintiffs allege that when CoreLogic's software is used to resize uploaded real estate photographs, copyright management information in the form of metadata is not preserved. *See, e.g.*, Second Am. Compl. ¶¶ 52-53, ECF No. 34. However, Plaintiffs have not offered any evidence that CoreLogic knew photographers embedded copyright-related information in photograph metadata or that CoreLogic had any reason to believe that copyright management information would be present in metadata (as opposed to *visible* watermark copyright management information, such as the photographer's name on the photograph, which CoreLogic's software has always preserved). *See* Troy Decl. ¶ 6; McElmon Decl. ¶ 6; Webb Decl. ¶ 6; Feldman Decl. Ex. A (Vandel Dep. Tr.) at 22, 26, 29, 54:16-19, 58:5-9, 81:11-14. Upon learning of the Plaintiffs' allegations, CoreLogic took prompt action, in an abundance of caution, to modify its software such that image metadata would be copied when images are processed. *See* Feldman Decl. Ex. P (Hedrick Decl.) at 137-139 ¶¶ 17, 21, 24. According to Plaintiffs' own expert, CoreLogic modified its software platforms within four months of the service of the Complaint in this case. *Compare* Feldman Decl. Ex. Q (Hedrick Report) at 142, 143-44, 145 ¶¶ 20, 24, 27 *with id.* Ex. R at 147 (Notice of Service of Process, dated Aug. 28, 2014). The testing and installation of these modified versions was complete as to some MLS systems as early as February of 2015, and that the testing and installation of the modified version was complete as to all of the MLSs using CoreLogic software by October of 2015. *See* Feldman Decl. Ex. S at 158-160 (4th Suppl. Rog Resps.).

## III.   LEGAL STANDARD

The Court should grant summary judgment to CoreLogic if there is "no genuine

dispute as to any material fact" such that CoreLogic "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Generally, the party bearing the burden of proof at trial also bears the burden on summary judgment. *Celotex v. Catrett*, 477 U.S. 317, 327 (1986). CoreLogic is responsible for "informing the district court of the basis for its motion" including where it believes there is an "absence of a genuine issue of material fact. *Id*. at 323. Then, "[i]n response to a properly submitted summary judgment motion, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008); *see also Celotex*, 477 U.S. at 323; *Rebel Oil Co., Inc. v. Atl. Richfield Co.*, 51 F.3d 1421, 1435 (9th Cir. 1995).

An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable fact finder to find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Plaintiffs cannot create a "genuine issue" through bald assertions. *See S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982) (as amended). They must present "specific, admissible evidence identifying the basis for the dispute." *Lusa Lighting, Int'l, Inc. v. Am. Elex, Inc.*, No. SACV 07-674-DOC, 2008 WL 4350741, at *2 (C.D. Cal. Sept. 22, 2008).

## IV. NEITHER PLAINTIFFS NOR ANY PUTATIVE CLASS CAN SUSTAIN A CLAIM AGAINST CORELOGIC

### A. 17 U.S.C. § 1202(b)(1) Does Not Apply to CoreLogic Because CoreLogic Merely Provides Software

Section 1202(b)(1) prohibits the removal of copyright management information from a photograph with reasonable grounds to know that the removal will facilitate copyright infringement. *See* 17 U.S.C. § 1202(b)(1). The purpose of § 1202(b)(1) is to prevent copyright infringers from circumventing the measures that authors use to protect their copyrighted works. *See Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 300 (3d Cir. 2011). For instance, in *Murphy*, the court applied § 1202 to a defendant who scanned a copyrighted photograph out of a magazine and cropped out the "gutter" copyright credit before posting the photograph online. *See id.* at 298-99, 305.

9

Both the Senate Report and the House Report prepared in connection with the passage of § 1202 make clear that the statute does not extend to entities such as CoreLogic.  The Senate Report states, with respect to § 1202:

> Furthermore, this section imposes liability for specified acts. ***It does not address the question of liability for persons who manufacture devices or provide services.***

S. REP. 105-190, 34 (1998) (emphasis added).  The House Report contains virtually identical language.  H.R. REP. 105-551, 22 (1998) ("Section 1202 imposes liability for specified acts.  It does not address the question of liability for persons who manufacture devices or provide services.").  Courts have frequently looked to legislative history to understand 17 U.S.C. § 1202.  *See, e.g.*, *Textile Secrets Int'l, Inc. v. Ya-Ya Brand Inc.*, 524 F. Supp. 2d 1184, 1194 (C.D. Cal. 2007); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 564 (6th Cir. 2004); *Murphy*, 650 F.3d at 302.  The legislative history is consistent with the text of § 1202(b), which requires a specific intent to facilitate copyright infringement with respect to the removal of copyright management information from a particular photograph—the "specified act" for which the statute imposes liability—and does not apply to entities such as CoreLogic providing software products that could be used for licit and illicit purposes.

CoreLogic cannot be directly liable under § 1202(b)(1) because CoreLogic does not select or control the photographs to be uploaded to any MLS platform using its software. *See* Troy Decl. ¶ 7; McElmon Decl. ¶ 7; Webb Decl. ¶ 7.  The MLS member or photographer makes that selection and uploads the photos.  As a result, CoreLogic cannot control whether a photograph contains metadata or whether that metadata includes copyright management information.  Nor can CoreLogic control whether the person uploading the photograph has obtained the necessary permissions (other than by insisting on obtaining licenses from its customers, which it does).  Nor can CoreLogic control whether an individual uploading a photograph might intend, by doing so, to facilitate copyright infringement.  Because CoreLogic is not involved in and has no control over any of these things, Congress did not make CoreLogic liable under § 1202(b)(1).  *See*

10

*generally Rosenthal v. MPC Computers, LLC*, 493 F. Supp. 2d 182, 190 (D. Mass. 2007) (actions of a wholly owned company removing copyright management information does not impose direct liability on the parent company).  Indeed, we are aware of no court to have imposed liability under § 1202(b)(1) on providers of software or services, as opposed to individuals who make the decision to remove CMI from a particular photograph to facilitate infringement.

Finally, had Congress wanted to impose liability on service providers and device manufacturers under § 1202, rather than merely on those individuals who undertake affirmative acts with respect to particular photographs, it knew how to do so.  Section 1201, which addresses circumvention of technological "locks" protecting access to copyrighted works and which was enacted as part of the same bill as § 1202, expressly creates liability for service providers *and* manufacturers of products.  *See* 17 U.S.C. § 1201(a)(2); *cf. Textile Secrets Int'l*, 524 F. Supp. 2d at 1194 (looking to the relationship between section 1201 and 1202 in interpreting § 1202).  Congress knew how to create liability for manufacturers and service providers and did not do so here.  As a result, Plaintiffs cannot sustain a claim against CoreLogic under § 1202(b).

## B.  The Two Separate Mental State Requirements of § 1202(b) Are Not Met

Plaintiffs bring claims against CoreLogic arising out of the removal of metadata from uploaded image files (a claim under § 1202(b)(1)) and arising out of the downstream distribution of image files from which metadata had been removed (a claim under §§ 1202(b)(2) or 1202(b)(3)).

Section 1202(b) prohibits the removal of metadata and the distribution of copyrighted works from which metadata has been removed under certain specific circumstances.  Section 1202(b) does not prohibit removal of all metadata, or even removal of all metadata containing Copyright Management Information.  Instead, Congress chose to prohibit the removal of CMI and the distribution of copies from which CMI has been removed only when the party taking action to remove CMI undertakes that act with a specific mental state.  In order to prove a claim under § 1202(b), a plaintiff

11

must make two independent showings regarding the defendant's mental state.  *First*, for any of §§ 1202(b)(1), (2), or (3), a plaintiff must show that the defendant had "reasonable grounds to know" that its actions "will induce, enable, facilitate, or conceal" copyright infringement.  *Second*, a plaintiff must show that the defendant removed or altered CMI "intentionally" (for claims under § 1202(b)(1)) or distributed works "knowing" that CMI had been improperly removed (for claims under §§ 1202(b)(2) and 1202(b)(3)).

Neither Plaintiffs nor any potential class can sustain an action against CoreLogic under any subsection of § 1202(b) because, as discussed below, there is no evidence whatsoever that CoreLogic meets either of these independent mental-state requirements.

### 1. CoreLogic Had No Reason to Know Of Any Inducement, Enablement, Facilitation, or Concealment Of Copyright Infringement.

Plaintiffs bear the burden to show that CoreLogic acted "knowing, or . . . having reasonable grounds to know, that [removal or alteration of CMI] will induce, enable, facilitate, or conceal an infringement" of copyright.  *See* 17 U.S.C. § 1202(b).  All the evidence shows that CoreLogic had *no* reason to believe any copyright infringement might occur.

Plaintiffs have no evidence of infringement of real estate photographs resulting from removal of CMI metadata by anyone, ever.  *See* Feldman Decl. Ex. C (Stevens Dep. Tr.) at 76, 79, 80-81, 83, 201:1-8, 223:5-11, 226:19-227:6, 248:17-20; *id.* Ex. A (Vandel Dep Tr.) at 14-21, 46:1-53:13, 53:14-20.  Plaintiffs cannot point to any harm they—or any other theoretical class member—has suffered as a result of absent metadata.  *See id* Ex. C (Stevens Dep. Tr.) at 76, 79, 80-81, 83, 201:1-8, 223:5-11, 226:19-227:6, 248:17-20 ; *id.* Ex. A (Vandel Dep Tr.) at 14-21, 46:1-53:13, 53:14-20.  This is because there is no evidence that real estate photographers use CMI metadata to prevent or detect copyright infringement.  *See id* Ex. C (Stevens Dep. Tr.) at 58-59, 60, 61, 58:20-59:6, 96:11-19, 98:1-7; *id.* Ex. A (Vandel Dep Tr.) at 7-13, 27-28, 20:6-20, 26:2-18, 34:3-21, 35:25-36:7, 37:5-9, 40:5-9, 71:21-72:12.  CoreLogic cannot have had reason to know that a failure to copy metadata would induce, enable, facilitate, or conceal any copyright infringement

MEM. OF P. & A. IN SUPP. OF CORELOGIC'S MOTION FOR SUMM. J.
14CV01158-BAS-JLB

when there is no evidence that the presence or absence of metadata has *ever* aided the infringement of a real estate photo. By the same token, CoreLogic cannot have had reason to know that a failure to copy metadata would enable or conceal any infringement when those working in the industry gave no indication they use metadata to prevent or detect such infringements.[2]

CoreLogic also diligently ensures that all of its own uses of real estate photographs are fully licensed. CoreLogic enters into Agreements with each MLS that uses CoreLogic software to host its content, and these agreements provide CoreLogic with broad licenses to use and manipulate those photographs. *See, e.g.*, Feldman Decl. Ex. H (███████ ███████) at 107 (CORELOGIC0008669); *id.* Ex. I (█████████████) at 114 (CORELOGIC0008920); *see also* McQueen Decl. Ex. A at 4-7 ¶¶ 12-18. CoreLogic also demands that the MLSs represent and warrant that they have the authority to provide such licenses. *See, e.g.*, Feldman Decl. Ex. H (█████████████) at 106 (CORELOGIC0008664); *id.* Ex. I (███████████) at 111 (CORELOGIC0008874); *see also* McQueen Decl. Ex. A at 4-7 ¶¶ 12, 15(b), 16(c). In turn, it is industry practice for MLSs to obtain the rights to use real estate photographs from the person who took the photographs. *See, e.g.*, Feldman Decl. Ex. F (Sandicor MLS Rules and Regulations) at 95 § 11.7; Feldman Decl. Ex. G (BeachesMLS Rules and Regulations) at 103-104 § 13; *see also* McQueen Decl. Ex. B at 20-21 ¶¶ 9-11.

Courts have routinely held that a defendant such as CoreLogic does not have reason to know of any "induce[ment], enable[ment], facilitat[ion], or conceal[ment of] an infringement" in situations where its uses are properly licensed. For example, in *Gordon*

---

[2] In fact, copyright infringements of real estate photographs on the MLS platforms that CoreLogic hosts are rare in general. Plaintiffs have evidence of only two takedown notices relating to real estate photographs in the many years CoreLogic has operated its MLS software. *See* Feldman Decl. Ex. T at 164-72 (DMCA correspondence). With only two instances of an alleged infringement relating to real estate photographs in years of hosting data and photographs for MLSs all over the country, CoreLogic would not have had any reason to believe that the operation of its software with respect to real estate photographs "will induce, enable, facilitate, or conceal" any infringement.

MEM. OF P. & A. IN SUPP. OF CORELOGIC'S MOTION FOR SUMM. J.
14CV01158-BAS-JLB

*v. Nextel Communications*, 345 F.3d 922, 927 (6th Cir. 2003), an advertising agency received illustrated posters it believed were cleared for use in television commercials. *Id.* at 926-27. One version of the illustrations had the illustrator's name in the white border surrounding the image. *Id.* at 927. The advertising agency used the posters as set dressing in the background of a commercial. *Id.* The court held that because the only evidence before the court on summary judgment was that the advertising agency believed the posters were licensed for use in television commercials—even though that belief was not correct—the plaintiff had not raised a genuine issue of fact with respect to the mental state required for a violation of 17 U.S.C. § 1202.

> [W]hen [the commercial production company] obtained the poster from the prop company, its personnel believed that the poster had been cleared for use in television commercials. . . . As a result, Gordon may not claim that the copyright information was removed with reasonable grounds to know that it would "induce, enable, facilitate, or conceal an infringement."

*Id.* (citation omitted). On that basis, the court granted the defendant summary judgment.

Similarly, in *Frost-Tsuji Architects v. Highway Inn, Inc.*, No. CIV. 13-00496 SOM, 2014 WL 5798282, at *8 (D. Haw. Nov. 7, 2014), an architectural firm brought an action under § 1202 based on alleged removal of CMI from architectural plans. The court held on summary judgment that although the architectural plans had been used outside the scope of an *express* copyright license, the use fell within the scope of an *implied* copyright license. *Id.* The court held that:

> Therefore, even if one or more Defendants removed [Plaintiff's] copyright management information, no Defendant can be said to have removed any copyright management information "knowing or having reasonable grounds to know that the removal [would] induce, enable, facilitate, or conceal an infringement of the federal copyright laws."

*Id.* (alteration in original) (citation omitted). The court granted summary judgment to the defendant on the § 1202 claim, *id.*, and subsequently granted attorneys' fees to the defendant on that claim. *Frost-Tsuji Architects v. Highway Inn, Inc.*, No. CIV. 13-00496 SOM, 2015 WL 5601853, at **5-6 (D. Haw. Sep. 23, 2015), *appeal docketed*, No. 15-

14

15802 (9th Cir. 2015).

Here, as in *Gordon* and *Frost-Tsuji Architects*, CoreLogic had a basis to believe that the images were being used for properly licensed purposes, and, as discussed above, each MLS represented and warranted as much to CoreLogic in their contracts.  As a result, CoreLogic cannot have had reasonable grounds to know that any removal of metadata would induce, enable, facilitate, or conceal an act of copyright infringement.

Moreover, CoreLogic's software copies any visible watermarks that appear on real estate photographs and show the photographer's name.  *See* Troy Decl. ¶ 6; McElmon Decl. ¶ 6; Webb Decl. ¶ 6; Feldman Decl. Ex. A (Vandel Dep. Tr.) at 26, 29, 58:5-9, 81:11-14.  This is irreconcilably inconsistent with knowledge or intent to induce, enable, or conceal infringement.  If CoreLogic wanted to induce copyright infringement or intended to conceal infringements by removing *invisible* CMI, why would it design its software to maintain *visible* CMI that is plain from the face of the image itself?

In addition, the individual Plaintiffs have not offered any evidence that CoreLogic had any reason to know they were embedding CMI within the invisible metadata in their photographs.  Obviously, without reason to know that any CMI was present in the first place, there can be no reason to know that removal of CMI (that CoreLogic had no reason to know was there) would induce, enable, facilitate, or conceal copyright infringement.

When CoreLogic received the Complaint in this case, it took prompt action to modify its software to maintain photograph metadata.  *See, e.g.*, Feldman Decl. Ex. Q (Hedrick Report) at 142, 143-44, 145 ¶¶ 20, 24, 27; Troy Decl. ¶ 5; McElmon Decl. ¶ 5; Webb Decl. ¶ 5.  According to Plaintiffs' own expert, CoreLogic modified its software platforms by December 2014 and early January 2015, only 4 months after Plaintiffs served the Complaint in this case.  *Compare* Feldman Decl. Ex. Q (Hedrick Report) at 142, 143-44, 145 ¶¶ 20, 24, 27 *with id.* Ex. R at 147 (Notice of Service of Process, dated Aug. 28, 2014).

In light of the absence of any evidence that CoreLogic knew or had reason to know that its software might "induce, enable, facilitate, or conceal an infringement of the

15

federal copyright laws"—and in light of the overwhelming evidence to the contrary—no reasonable jury could find for Plaintiffs.

### 2. CoreLogic Did Not Intend to Remove Any Copyright Management Information or Know That Any Copyright Management Information Was Removed

Under 17 U.S.C. § 1202(b), Plaintiffs bear the *additional* burden to show that CoreLogic had intent to remove CMI or had actual knowledge that CMI had been removed from Plaintiffs' photographs.  It states:

> No person shall, without the authority of the copyright owner or the law—
>
> (1)   *intentionally* remove or alter any [CMI],
>
> (2)   distribute or import for distribution [CMI] *knowing* that the [CMI] information has been removed or altered . . . [,] or
>
> (3)   distribute . . . copies of works . . . *knowing* that [CMI] has been removed or altered . . . .

*Id.* (emphases added).  This additional mental state requirement is independent of the requirement that the defendant be shown to have had "reasonable grounds to know that [the removal] will induce, enable, facilitate, or conceal an infringement," discussed above. *See Merideth v. Chicago Tribune Co., LLC*, No. 12 C 7961, 2014 WL 87518, at *4 (N.D. Ill. Jan. 9, 2014) ("[E]ven if merely having reasonable grounds to know (rather than having actual knowledge) that the distribution will induce an infringement will suffice, there still clearly exists the threshold requirement of 'knowledge' that CMI had been improperly removed.").  Plaintiffs bear the burden of demonstrating actual knowledge or intent; constructive knowledge is not enough:

> To prevail under § 1202(b)(3), a plaintiff must demonstrate that the defendant "possessed actual knowledge of the unauthorized change to the [CMI], because the statute requires the defendant to act 'knowing that [CMI had] been removed or altered without the authority of the copyright owner or the law.'"

*Keogh v. Big Lots Corp.*, No. 3:04-00738, 2006 WL 1129375, at *2 (M.D. Tenn. Apr. 27, 2006) (alteration in original) (citation omitted); *see also Gordon*, 345 F.3d at 926 (dismissing plaintiff's § 1202(b)(3) claim for lack of evidence of "actual knowledge of the

16

removal of the [(CMI)], . . . ."). Plaintiffs have no evidence that CoreLogic had actual knowledge that any CMI was removed from Plaintiffs' photographs.

The individual Plaintiffs have not provided any evidence that CoreLogic was aware that they embedded copyright-related information in the invisible metadata in their photographs. It is not enough for Plaintiffs to simply say that they disagree. That does not create a genuine dispute of material fact. *See S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982) (as amended). Instead, Plaintiffs must present "specific, admissible evidence identifying the basis for the dispute." *Lusa Lighting, Int'l, Inc. v. Am. Elex, Inc*., No. SACV 07-674-DOC, 2008 WL 4350741, at *2 (C.D. Cal. Sept. 22, 2008). Nor is it enough for Plaintiffs to argue that CoreLogic must have known that photographers included copyright-related information in the metadata of their photographs and therefore must have intended that CMI not be copied. Where, as here, "Plaintiff has not offered any evidence showing Defendant's actions were intentional, rather than merely an unintended side effect of the [software's] operation[,]" the mental-state requirements of § 1202(b) are not met. *See Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999), *aff'd in part, rev'd in part*, 280 F.3d 934 (9th Cir. 2002), *opinion withdrawn and superseded on denial of reh'g*, 336 F.3d 811 (9th Cir. 2003) *and aff'd in part, rev'd in part*, 336 F.3d 811 (9th Cir. 2003).

In *Kelly*, the defendant, Arriba Soft, created a "visual search engine" that allowed users to search for images on the internet. *See id.* at 1116. Arriba Soft created an index of internet images by "crawling" images online. *See id.* at 1122. The images at issue in the case did not have CMI in the images themselves, but rather in the website's surrounding text. *See id.* As a result, Arriba Soft's "crawler" collected the images themselves, but not the surrounding text, which included the copyright notice. *See id.* The Court held that the plaintiff had not met her burden to show intent because she had not "offered any evidence showing Defendant's actions were intentional, rather than merely an unintended side effect of the [software's] operation." *Id.* As in *Kelly*, Plaintiffs in this case have offered no evidence that CoreLogic intended to remove CMI and no evidence that the failure to

1    copy metadata is anything other than an unintended consequence of CoreLogic's

2    software. For the same reason, the Court should dismiss Plaintiffs' claim here.

3    **C.    There Is No Evidence Photographs Contained CMI When Uploaded to**
     **CoreLogic's Software**

4

5    Plaintiffs allege that the use of CoreLogic's software removed CMI metadata from

6    their photographs. That can only be true if there was metadata with CMI in the images

7    when they were uploaded in the first place. But the individual Plaintiffs have no evidence

8    that such CMI metadata existed on any particular photograph when it was uploaded.

9    Thus, there is no evidence to create a genuine dispute over any material fact as to any

10   copyright holder, including the named Plaintiffs.

11   Not all metadata is CMI. It is common for certain digital cameras to fill in

12   metadata "tags" relating to the taking of the photograph such as "camera model,"

13   "exposure time," and "focal length," etc. *See* Seiden Decl. Ex. 1 at 7-8 ¶¶ 29-30. Those

14   tags cannot meet the statutory definition of CMI. *See* Opp'n Class Certification at 10-12,

15   ECF No. 68. There are also optional metadata "tags" such as "artist" or "copyright"

16   which the camera does not fill in by default, but can be added by the camera user. *Id.*

17   Whether a metadata tag contains CMI thus depends on whether the photographer

18   specified information that identifies the author or copyright holder, terms and conditions

19   for use of the work, or other such information defined by the statute. *See* 17 U.S.C. §

20   1202(c). Thus, Plaintiff must provide evidence that a photograph—as it was uploaded to

21   CoreLogic's software platform—had a tag that contained information identifying the

22   author or copyright holder, or terms and conditions for the work. *See id.* They have not.

23   Plaintiffs Stevens and Vandel generally do not upload photographs to CoreLogic's

24   software platforms themselves. *See* Feldman Decl. Ex. C (Stevens Dep. Tr.) at 63,

25   151:12-16; *id.* Ex. A (Vandel Dep. Tr.) at 5-6, 10:25-11:5. Instead, they provide their

26   photographs to the real estate agent and the agent uploads the photographs to CoreLogic's

27   software platform. *See* Feldman Decl. Ex. C (Stevens Dep. Tr.) at 63, 64, 70, 151:25-

28   152:3, 165:5-17; *id.* Ex. A (Vandel Dep. Tr.) at 5-6, 10:25-11:5, 11:11-17.

MEM. OF P. & A. IN SUPP. OF CORELOGIC'S MOTION FOR SUMM. J.
14CV01158-BAS-JLB

As a result, these plaintiffs have no evidence of the state of content of metadata in photographs as they were uploaded to CoreLogic's software by a real estate agent. Where—as here—plaintiffs fail to offer any evidence that there was any CMI metadata in the actual uploaded files, courts grant summary judgment in defendant's favor:

> Plaintiff has not come forward with any evidence that shows that the images on his website that were allegedly copied and uploaded to zazzle.com contain metadata with identifying information that satisfies the definition of § 1202(c). Therefore, . . . the Court grants summary judgment in Defendant's favor.

*Tomelleri v. Zazzle, Inc.*, No. 13-CV-02576-EFM-TJJ, 2015 WL 8375083, at *14 (D. Kan. Dec. 9, 2015). Plaintiffs believe they should be allowed to argue that CoreLogic removed CMI metadata relying exclusively on evidence that a photograph *in that Plaintiff's possession* has CMI and that a *copy* of that photograph on a CoreLogic MLS did not have CMI. *See, e.g.*, Reply Supp. Mot. Class Certification at 9-10, ECF No. 74. There are numerous problems with that argument:

### 1. Plaintiffs bear the burden of showing that images contained CMI metadata in the first place.

Plaintiffs have testified that they do not include CMI metadata on all photographs, and sometimes purposefully remove CMI metadata from one copy of an image before sending it to an agent or homeowner. *See* Feldman Decl. Ex. C (Stevens Dep. Tr.) at 52-53, 62, 77, 31:1-32:6, 105:13-24, 207:9-14; *id.* Ex. A (Vandel Dep. Tr.) at 16, 31, 36, 48:16-22, 85:20-24, 97:10-18. Showing a jury the copy of an image with metadata is meaningless unless Plaintiffs can also show that they provided the real estate agent with *that exact* copy and not another copy that looks the same, but which does not have metadata. As a concrete example, a real estate agent can purchase one of Plaintiff Stevens's photos from his website, StockImageDepot.com. *See* Feldman Decl. Ex. C (Stevens Dep. Tr.) at 65-66, 153: 20-154:15. If an agent purchases one of the largest, full-resolution files, it may contain invisible metadata, and that metadata might *or might not* contain CMI. *See* Seiden Decl. Ex. 1 at 13 ¶ 60. Some images licensed and downloaded

19

from the StockImageDepot.com website at the "Original" size have some metadata about the camera, exposure, shutter speed, and so on, but do not have any metadata identifying Stevens or AAP.  *See* Feldman Decl. ¶¶ 13-14 & Exs. M-O at 130-32.  However, if the agent purchases a smaller copy of the same image, StockImageDepo.com will automatically resize the image using ████████████████████████ ████████████████████ and the resulting image will *not* have any metadata.  *See* Seiden Decl. Ex. 1 at 10-13 ¶¶ 45-61.  If the agent purchased and uploaded a smaller copy of the photograph from StockImageDepot.com, the fact that Plaintiff Stevens also has a *different* copy of the same photo with metadata is not relevant to any claim in this case.

### 2.    Plaintiffs bear the burden of showing that metadata was not removed by a party that had custody of the photo before it was uploaded.

There are numerous ways in which a real estate agent might purposefully or accidentally remove metadata in a photograph.  *See* Bybee Decl. Ex. 1 at 7 ¶ 22.  For example, if the agent transferred or edited the photo using certain popular websites such as Facebook, Flickr, Instagram, Photobucket, Pictify, Twitpic, or Twitter, the agent's copy of the image would no longer have metadata.  *See* Seiden Decl. Ex. 1 at 9-10 ¶ 42. Plaintiffs have testified that they understand and expect that agents can and will modify some of their pictures before uploading them to CoreLogic's platform.  *See* Feldman Decl. Ex. C (Stevens Dep. Tr.) at 71-72, 176:21-177:25.

On this record, Plaintiffs have not adduced sufficient evidence to create a genuine issue of material fact regarding whether any of Plaintiffs' own photographs had CMI metadata at the time an MLS member uploaded them to CoreLogic's software.  Plaintiffs have done nothing to suggest that the situation is different for any absent class members.

### 3.    Potential modification by an intervening third party bars a claim under § 1202.

Courts have held that the existence of an intervening third party between plaintiffs providing a photograph and defendant receiving it precludes a claim under § 1202(b):

MEM. OF P. & A. IN SUPP. OF CORELOGIC'S MOTION FOR SUMM. J.
14CV01158-BAS-JLB

> Here . . . [plaintiff] gave the images to [a third party], who in turn provided them to [defendant].  Given the existence of a third party that has not been deposed and is otherwise absent from the case, it would be too speculative to infer that [defendant] removed CMI simply because [plaintiff's employee] avers that [the third party] received images containing copyright information. . . .  In short, there is no basis in the record to conclude that either defendant removed CMI from the images.

*Photographic Illustrators Corp. v. Orgill, Inc.*, No. CV 14-11818-PBS, 2015 WL 4572296, at *8 (D. Mass. July 29, 2015).  As in *Photographic Illustrators*, Plaintiffs here have not deposed the third parties in between the Plaintiffs and Defendant (real estate agents).  Thus, the situation here is the same as in *Photographic Illustrators*: "there is no basis in the record to conclude that . . . defendant removed CMI from the images."  *Id.*

That is only logical.  Without proof that a photograph in Plaintiffs' possession is *exactly the same* file as the one a real estate agent uploaded to CoreLogic's software—including all invisible metadata—a jury would have no reasonable basis to find that the photograph contained metadata when CoreLogic received it—much less that any metadata included copyright management information.

## D. Plaintiffs Cannot Meet Their Burden to Show That CoreLogic Acted "Without the Authority of the Copyright Owner"

### 1. Plaintiffs Cannot Show that CoreLogic Acted Without the Express Authority of the Copyright Owner

Section 1202(b) only prohibits actions "without the authority of the copyright owner or the law."  17 U.S.C. § 1202(b).  Plaintiffs bear the burden to show that any removal *was not* authorized, because lack of authorization is an express element of the claim.[3]  *See Johnston v. Pierce Packing Co.*, 550 F.2d 474, 479 (9th Cir. 1977) ("The burden is on the plaintiff in a civil action, such as this, to prove every essential element of

---

[3] A claim under § 1202 is thus different from a copyright-infringement claim under 17 U.S.C. § 501.  Because § 501 does not identify lack of authorization as an element that the plaintiff must prove, the plaintiff in a copyright case does not bear the burden of showing that the defendant's use was unauthorized.  A defendant in an ordinary copyright-infringement case thus bears the burden of showing that his or her acts were authorized.  Under § 1202, by contrast, showing that the defendant's actions were unauthorized is the plaintiff's burden.

MEM. OF P. & A. IN SUPP. OF CORELOGIC'S MOTION FOR SUMM. J.
14CV01158-BAS-JLB

his claim.") (citation omitted).  In fact, this Court struck CoreLogic's affirmative defenses pleading authorization for precisely this reason—that lack of authorization is an affirmative element of Plaintiffs' case on which Plaintiffs bear the burden.  *See* ECF No. 118 at 7.  But CoreLogic has the authority from Plaintiffs who assert that they hold the copyrights.  Plaintiffs (via their licensees, the real-estate agents and their sublicensees, the MLSs) provided CoreLogic a license to modify real estate images.  As a result, Plaintiffs cannot provide any evidence capable of raising a genuine dispute of fact.

As discussed above, CoreLogic's agreements with the MLSs provide broad licenses for CoreLogic to use the photographs and contain representations and warranties that the MLSs have the power to convey those rights.  *See, e.g.*, Feldman Decl. Ex. H (████████████████) at 106, 107 (CORELOGIC0008664, 8669); *id.* Ex. I (█████████████) at 111, 114 (CORELOGIC0008874, 8920); *id.* Ex. J (███████████████) at 116 § 2.1; *see also* McQueen Decl. Ex. A at 4-7 ¶¶ 12-18.  In turn, it is industry practice for MLSs to obtain the rights to use real estate photographs from the agent or photographer who took the photographs.  *See, e.g.*, Feldman Decl. Ex. F (Sandicor MLS Rules and Regulations) at 95 § 11.7; Feldman Decl. Ex. G (BeachesMLS Rules and Regulations) at 103-104 § 13; *see also* McQueen Decl. Ex. B at 20-21 ¶¶ 9-11.  These licenses are broad enough to include CoreLogic's modifications of the photographs as a part of the operation of CoreLogic's software.  *See id.*

In the case of the named Plaintiffs, both Stevens and Vandel licensed real estate agents—MLS members—to use their photographs via oral licenses.  *See* Feldman Decl. Ex. A (Vandel Dep Tr.) at 32-33, 91:14-92:11; *id.* Ex. C (Stevens Dep Tr.) at 67, 70, 161:5-12; 165:11-17.  As both Plaintiffs testified, the scope of the license only restricts giving the photo to other real estate agents.  *See* Feldman Decl. Ex. A (Vandel Dep Tr.) at 35, 96:13-17; *id.* Ex. C (Stevens Dep Tr.) at 66, 69, 154:1-7, 164:14-25.  The license specifically contemplates modifications to the image file.  *See* Feldman Decl. Ex. C (Stevens Dep. Tr.) at 71-72, 176:21-177:25.  Plaintiffs therefore authorized the real estate agents to use CoreLogic software to modify the photos.

MEM. OF P. & A. IN SUPP. OF CORELOGIC'S MOTION FOR SUMM. J.
14CV01158-BAS-JLB

Nothing in any writing relating to that licensing transaction changes this conclusion.  Plaintiff Stevens's invoices contain a copyright notice that states: ████

████████████████████████████████████████████████████

████████████████████████████████████████  *See, e.g.*, Feldman Decl. Ex. U at 173-87 (Stevens's invoices).  Stevens testified that he intended the statement ████████████████████████████████████████████

████████████████████████████████████████████████████

*See* Feldman Decl. Ex. C (Stevens Dep. Tr.) at 68-69, 163:16-164:25.  These terms say nothing about modifying photographs and therefore cannot be evidence that any written terms limit the oral license.  *See id.*

Shortly before the filing of this lawsuit, Vandel added licensing terms to his website, but never directed any of his customers to review these terms, and continued to do business entirely by means of oral communications.  *Id.* Ex. A (Vandel Dep. Tr.) at 37, 98:18-24; *see also* Feldman Decl. Ex. B at 44, 46.  Because Vandel never directed any of his customers to review the terms on his website, and Plaintiffs have not even offered evidence that Vandel's customers accessed his website, they cannot be evidence of any limitation on the oral license permitting modification.

Plaintiffs' claim fails because they have provided authorization to modify photos, including by removing metadata that may contain CMI.

### 2.   CoreLogic has an implied license to modify real estate images, which includes removal of CMI.

Plaintiffs bear the burden to show that any removal was not authorized by the copyright owner.  17 U.S.C. § 1202(b).  Even if the Court finds a genuine dispute of fact as to whether CoreLogic had an express license from the copyright holders, CoreLogic had an *implied* license to modify real estate images.  Plaintiffs have not and cannot raise any genuine dispute of fact regarding this implied license.

An implied license arises where the licensor's words or conduct manifest an intention to permit the challenged conduct to occur.  *See Asset Mktg. Sys., Inc. v. Gagnon*,

23

542 F.3d 748, 754-55 (9th Cir. 2008).  A real estate agent who snapped a picture and then uploaded it using software manifested assent to the operation of that software in doing so.

The same is true for real estate photographers who provided photographs to real estate agents.  Those photographers necessarily understood that the real estate agents would upload their photographs to MLSs.  Certainly the named Plaintiffs so understood.  *See* Feldman Decl. Ex. C (Stevens Dep. Tr.) at 63-64, 70, 151:25-152:3, 165:5-17; *id.* Ex. A (Vandel Dep. Tr.) at 5-6, 10:25-11:5, 11:11-17.  Plaintiffs have provided no reason to believe the situation would be any different for absent class members.  *See Frost-Tsuji Architects v. Highway Inn, Inc.*, No. CIV. 13-00496 SOM/BM, 2014 WL 4237285, at **8-11 (D. Haw. Aug. 26, 2014) (holding that an architecture firm granted an implied license to use its designs by submitting them and that this implied license survived termination of the services agreement); *Kennedy v. Gish, Sherwood & Friends, Inc.*, No. 4:13-CV-2236 JAR, 2015 WL 6750814, at *6 (E.D. Mo. Nov. 5, 2015) (holding that defendant had an implied license because photographer was aware of defendant's use of the photographs, did not object, and continued to do business with defendant).

### E.   Plaintiffs Have Provided No Evidence of Any Element of a Claim Under § 1202(a)

Plaintiffs also purport to raise a claim under 17 U.S.C. § 1202(a), but Plaintiffs have no evidence to support *any* part of that claim.  Section § 1202(a) provides that,

> [n]o person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement—
>
> (1) provide [CMI] that is false, or
>
> (2) distribute or import for distribution [CMI] that is false.

17 U.S.C. § 1202(a).  This section has three elements: (1) acting knowingly, (2) with "the intent to induce, enable, facilitate or conceal" copyright infringement, and (3) false CMI, provided or distributed.

First, Plaintiffs have no evidence of any false CMI either provided or distributed by CoreLogic.  The Second Amended Complaint alleges that "CoreLogic has a business

practice of placing its own copyright notice on the same webpage or report as the digital images that are owned by Plaintiffs and the Class."  Second Am. Compl. ¶¶ 111-113, ECF No. 34.  But numerous courts have rejected the argument that a copyright notice on a page that contains a copyrighted image constitutes false CMI.  *See, e.g.*, *Tomelleri*, 2015 WL 8375083, at *12 ("[T]he fact that Defendant's illustrations simply appear on Plaintiff's website does not convey false CMI."); *Drauglis v. Kappa Map Grp., LLC*, No. CV 14-1043, 2015 WL 4932305, at *10 (D.D.C. Aug. 8, 2015) ("This requirement 'prevents a "gotcha" system where a picture or piece of text has no CMI near it but the plaintiff relies on a general copyright notice buried elsewhere' in a work to establish its section 1202(a) claim.") (citation omitted); *Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 975 F. Supp. 2d 920, 929 (N.D. Ill. 2013) ("[T]his copyright notice is not close to the poem; rather, it is at the bottom of every page of the website in the generic website footer.  It is not 'conveyed with' the poems and is not, therefore, false CMI with respect to the poems."); *Ward v. Nat'l Geographic Soc.*, 208 F. Supp. 2d 429, 449 (S.D.N.Y. 2002) (rejecting claim that "NGS's addition of its own copyright notice to printed pages amounts to the provision of false copyright management information because he, and not NGS, owns the copyrights in his individual contributions to the *Magazine*.").  Moreover one of the named Plaintiffs has testified that there is nothing wrong with CoreLogc's logo appearing on the listing page with a real estate photograph.  *See* Feldman Decl. Ex. A (Vandel Dep. Tr.) at 30, 82:7-12.

Second, for the reasons set forth above, Plaintiffs have no evidence that CoreLogic placed its copyright notice on its webpages and reports with the intent to induce, enable, facilitate, or conceal infringement.

## V.   CONCLUSION

Plaintiffs provide no evidence to support numerous essential elements of their claim and proceed under a law that does not apply to CoreLogic.  CoreLogic respectfully requests this Court grant summary judgment as to Plaintiffs' claims.

Dated:  February 29, 2016

DURIE TANGRI LLP

By:      /s/ Joseph C. Gratz
JOSEPH C. GRATZ

Attorneys for Defendant
CORELOGIC. INC.

MEM. OF P. & A. IN SUPP. OF CORELOGIC'S MOTION FOR SUMM. J.
14CV01158-BAS-JLB

# CERTIFICATE OF SERVICE

I certify that all counsel of record is being served on February 29, 2016 with a copy of this document via the Court's CM/ECF system.

*/s/ Joseph C. Gratz*
JOSEPH C. GRATZ

MEM. OF P. & A. IN SUPP. OF CORELOGIC'S MOTION FOR SUMM. J.
14CV01158-BAS-JLB