1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**

9         **SOUTHERN DISTRICT OF CALIFORNIA**

10
11   ROBERT STEVENS and STEVEN          Case No. 14-cv-1158-BAS-JLB
     VANDEL, individually and on
12   behalf of all others similarly       **ORDER GRANTING**
     situated,                            **DEFENDANT'S MOTION FOR**
13                                         **SUMMARY JUDGEMENT**
                          Plaintiffs,
14
          v.
15
     CORELOGIC, INC., a Delaware
16   corporation,
17
                          Defendant.
18
19

20        Plaintiff real estate photographers bring this action against Defendant

21   CoreLogic, Inc. alleging violation of the Digital Millennium Copyright Act, 17

22   U.S.C. § 1202. (ECF No. 34.) CoreLogic now moves for summary judgment. (ECF

23   No. 153.) Plaintiffs oppose. (ECF No. 168.) The Court held a hearing on the motion

24   on June 8, 2016. After a review of the parties' briefing papers and the arguments

25   presented at the hearing, the Court GRANTS CoreLogic's motion for summary

26   judgment.

27   **I.    STATEMENT OF FACTS**

28        Defendant CoreLogic develops and provides software to Multiple Listing

Services (MLSs). (Joint Statement of Undisputed Facts, ECF No. 188 ("JSUF") ¶1.) Real estate agents join MLSs and use CoreLogic's software platform to upload their real estate listings, including property descriptions and photographs. (JSUF ¶3.) The named Plaintiffs are professional photographers who took photographs of houses for sale and licensed the photographs to real estate agents to upload to an MLS. (JSUF ¶¶12-14.) Plaintiffs provided the photographs to the agents pursuant to a license from Plaintiffs to the agent, but retained the right as copyright holder over the photographs. (JSUF ¶¶47-48.)

Generally, the named Plaintiffs do not upload the photographs to an MLS themselves. Instead, they give the photographs to real estate agents who do so. (JSUF ¶¶24-25, 36-37.) Real estate photographers, including both named Plaintiffs, understood that when they provided photographs to real estate agents, the real estate agent would then upload the photographs to MLSs. (JSUF ¶38.)

MLSs generally require representations by the real estate agent that he or she has procured the rights to reproduce or display the photographs from the copyright holder. (JSUF ¶¶15-17.) CoreLogic similarly has written agreements with its MLS customers that state:

> MLS Data is proprietary information owned by Customer and . . . [CoreLogic] claims neither rights regarding nor title to MLS Data provided by Customer and/or End Users. It is understood, however, that . . . [CoreLogic] shall have the right to use, copy, arrange, compile and display MLS Data as [i]t deems necessary to meet its obligations under this Agreement…

(JSUF ¶19.) Some photographers embed copyright management information ("CMI") in metadata attached to their photographs. Metadata is embedded in an image file and can include the artist or copyright "tags." (JSUF ¶¶ 31, 35.) Some digital cameras can be used to automatically create Exchangeable Image File Format ("EXIF") metadata. Alternatively, photographers can add metadata with certain photo editing software that provides for IPTC and IPTC Extension metadata fields.

(Dec. of Steven Vandel, ECF No. 175-25, ¶7.)

Not all cameras are configured to include metadata, and not all photographs produced by the named Plaintiffs had CMI in its metadata.  (Dep. of Plaintiff Vandell, attached as Exh. A to Declaration of Michael A. Feldman "Feldman Decl." ECF No. 153-3, pg. 37; Dep. of Plaintiff Stevens, attached as Exh. C to Feldman Decl., ECF No. 153-5, pgs. 6-8.) The metadata is not visible in the image itself but can be accessed and viewed using computer programs that are capable of displaying the metadata. (Expert Report of Jeff Sedlik, Feldman Decl. Exh. L, ECF No. 153-14; Expert Report of Gerald Bybee, ECF No. 153-24 ¶33.)

There are many points throughout the file handling process when metadata can be altered or completely deleted unintentionally from a photograph. (Expert Report of Gerald Bybee, ECF No. 153-24, ¶22.)   Images uploaded to CoreLogic's MLS platforms may be manipulated before or after uploading.  Manipulations may include resizing, rotating, cropping and adjusting resolution of the image so it can be used in a preconfigured display layout on the web page. (*Id*. ¶38.) All of these manipulations could result in inadvertent removal of the embedded metadata. (*Id*. ¶36.) Embedded metadata can also be removed inadvertently by email programs, opening an image on an iPhone using iOS Safari, or pasting the image in some versions of MS Word.[1] (*Id*. ¶40.)

Furthermore, most commonly-used image-processing libraries, including the StockImageDepot.com web site used by named Plaintiff Stevens, do not retain metadata when the image file is resized.[2]  (Decl. of Mark Seiden, ECF No. 153-26, ¶12c-d.)

CoreLogic's software copies any visible watermarks that appear on these real

---

[1] The Court recognizes that Plaintiff Vandel manipulated a photograph including cropping, resizing and rotating, using Windows 7 photo editor Paint program, and found the metadata was not eliminated or altered using this program.  (Decl. of Steven Vandel, ECF No. 175-25, ¶8.)

[2] Stevens' photographs on StockImageDepot.com were not taken in connection with a real estate listing, and he cannot be certain whether any photograph obtained from this website was uploaded to MLS or not.  (Decl. of Robert Stevens, ECF No. 175-30 ¶10.)

estate photographs and show the photographer's name.  (JSUF ¶34.)  However, prior to late 2014/early 2015, CoreLogic's platforms removed all EXIF metadata from the photographs uploaded to the MLS using CoreLogic software.  (Expert Decl. of Chuck Hedrick, Feldman Decl. Exh. P, ECF No. 153-18 ¶¶15-23.)  In late 2014/early 2015, CoreLogic rewrote the code so that EXIF metadata was preserved during download.[3] (*Id*.)

As explained by expert Seiden, when building software, builders usually use existing sets of pre-built functionality—known as "libraries."  (Decl. of Mark Seiden, ECF No. 153-26 ¶¶31-32.)  Most of these libraries do not retain EXIF metadata by default when downsampling an image.  (*Id*. ¶35.)

On February 28, 2016, a real estate agent, who wishes to remain anonymous, used editing software to add metadata (not CMI, just a test run) in the IPTC and IPTC Extension windows to a real estate photograph using Adobe Bridge.  (Decl. of Jane Doe, ECF No. 175-21. ¶6.)  After uploading the photograph to the MLS (using CoreLogic's software), she saved the photograph to her computer.  She then reopened the file using Adobe Photoshop and found that most of the test information in the metadata had been removed. (*Id*. at ¶7.)

Plaintiffs provide no evidence that the absence of metadata led to actual copyright infringement, nor have the named Plaintiffs ever used metadata to track down copyright infringers.  However, both named Plaintiffs state that when identifying metadata is removed or altered, it becomes more difficult to identify a real estate photograph as theirs.  (Stevens Decl., ECF No. 175-30 ¶22; Vandel Decl., ECF No. 175-25 ¶24.)

In 2010, CoreLogic launched its Partner InfoNet Program, a special program for sharing revenue with MLSs. (JSUF ¶42.)  Through the Program, an MLS licenses its listing data (including, for some MLSs, photographs uploaded to MLSs) for use

---

[3] Plaintiffs allege that, although CoreLogic has rewritten the code to preserve EXIF metadata, metadata added in the IPTC and IPTC Extension is still being removed during download.

in a variety of new risk management products for mortgage lenders, services and capital markets.  (JSUF ¶42.)  The Partner InfoNet agreement states:

> [MLS] warrants to CoreLogic that it owns or has valid license to permit use of the MLS data as described in this Agreement and that to the best of…[MLS's] actual knowledge, the MLS Data will not violate the intellectual property rights of a third party.

(JSUF ¶43.)  CoreLogic requested and received an indemnity from the MLS with respect to the Partner InfoNet Program.  (JSUF ¶46.)

Neither Stevens nor Vandel ever gave CoreLogic permission to use his photographs on any Partner InfoNet products, including Real Quest or Real Quest Pro.  (Decl. of Robert Stevens, ECF No. 175-30 ¶19; Decl. of Steven Vandel, ECF No. 175-25 ¶22.)  Nonetheless, twenty-four of Vandel's photographs were used by Real Quest Pro and at least one of Stevens' photographs was used by Real Quest without the photographers' permission.  (Vandel Decl., ¶22; Stevens Decl., ¶20.)

Plaintiffs file one count alleging a violation of the Digital Millennium Copyright Act ("DMCA") and one count for declaratory relief, also based on a violation of the DMCA, 17 U.S.C. §1202.  (Second Amended Complaint, ECF No. 34.)

## II.   STATEMENT OF LAW

### A.  Motion for Summary Judgment Standard

Summary Judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law, it could affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of

14cv1158

establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987).

"The district court may limit its review to documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. S.F. Unified Sch. Dist.,* 237 F.3d 1026, 1030 (9th Cir. 2001). The court is not obligated "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing *Richards v. Combined Ins. Co. of Am.,* 55 F.3d 247, 251 (7th Cir. 1995)). If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159-60 (1970).

If the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 242, 252). Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

When making this determination, the court must view all inferences drawn

from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita.* 475 U.S. at 587. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson,* 477 U.S. at 255.

## B. The DMCA

In Count One, Plaintiffs allege a violation of both subsections (a) and (b) of the Digital Millennium Copyright Act ("DMCA"). 17 U.S.C. §1202. "The DMCA was passed in 1998 to address the perceived need of copyright owners for 'legal sanctions' to enforce various technological measures they had adopted to prevent the unauthorized reproductions of their works." *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 300 (3rd Cir. 2011).

Subsection (a) states that "[n]o person shall knowingly with intent to induce, enable, facilitate, or conceal infringement: (1) provide copyright management information [CMI] that is false or (2) distribute or import for distribution [CMI] that is false." 17 U.S.C. §1202(a).

Subsection (b) states that "[n]o person shall, without the authority of the copyright owner or the law—

(1) intentionally remove or alter any [CMI];

(2) distribute or import for distribution [CMI] knowing that the [CMI] has been removed or altered without authority of the copyright owner . . . or

(3) distribute, import for distribution . . . works [or] copies of works . . . knowing that [CMI] has been removed or altered without authority of the copyright owner . . . ,

knowing or . . . having reasonable grounds to know that it will induce, enable, facilitate or conceal an infringement of any right under this title."

17 U.S.C. §1202(b).

## III.   ANALYSIS

1      Pointing to the legislative history of section 1202, CoreLogic urges this Court
2  to find that the DMCA does not apply to software providers.  However, the Court
3  looks to the legislative history only if the text of the underlying statute is ambiguous.
4  "Unless exceptional circumstances dictate otherwise, '[w]hen we find the terms of a
5  statute unambiguous, judicial inquiry is complete.'" *Burlington N. R.R. Co. v. Okla.*
6  *Tax Comm'n*, 481 U.S. 454, 461 (1987) (quoting *Rubin v. United States*, 449 U.S.
7  424, 430 (1981)); *Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1268 (9th Cir.
8  2009) ("[W]e have long held that where a statute is unambiguous, we need not resort
9  to legislative history in applying the statute.")   In this case, section 1202
10  unambiguously lays out elements that Plaintiffs are unable to prove.  Therefore, the
11  Court finds resort to legislative history is unnecessary.  Under a clear reading of the
12  statute, there is no genuine issue of material fact.

### A. Falsity of the CMI—17 U.S.C. §1202(a)

      Plaintiffs fail to present any evidence that CoreLogic provided or distributed
false CMI.  In the Second Amended Complaint, Plaintiff alleges CoreLogic displayed
its own copyright notice on the same webpage as Plaintiffs' photographs, and that
this placement constituted false CMI. (SAC ¶¶111-113.)  The Court agrees with those
courts that have found this insufficient.  *See Tomelleri v. Zazzle, Inc.*, No. 13-cv-
2576-EFM-TJJ, 2015 WL 8375083 (D. Kansas, Dec. 9, 2015) at *12 (finding that
just because an image appears on a website does not mean the website owner is
alleging he owns the image); *Ward v. Nat'l Geographic Soc.*, 208 F. Supp. 2d 429,
450 (S.D.N.Y. 2002) (the fact that National Geographic's copyright notice was on
same page as Plaintiff's photograph is insufficient to show false information based
solely on proximity of the notice to Plaintiff's photograph).  Therefore, Plaintiffs
have failed to make a showing sufficient to establish an element of a §1202(a) claim.
Thus, to the extent Plaintiffs are arguing CoreLogic is liable under 1202(a),
CoreLogic's Motion for Summary Judgment is **GRANTED**.

### B. Removal of CMI—17 U.S.C. §1202(b)(1)

Plaintiffs' claim under section 1202(b)(1) also fails.  Plaintiffs cannot prove that: (1) CMI was on the photographs uploaded to the MLS; (2) CoreLogic took any action that removed or altered CMI; or (3) any action by CoreLogic was intentional.

### 1. Evidence of CMI at Time of Upload

Plaintiffs fail to present any evidence that the photographs had CMI at the time they were uploaded.[4]

Although the named Plaintiffs testify that some of their photographs had CMI in the metadata at the time the photographs were given to a real estate agent, there is insufficient evidence as to what happened to the photograph *after* delivery to the agent.  There are any number of ways the CMI could have been excised before upload.  Although it is clear that CoreLogic's platform would have removed CMI metadata had it existed at the time of upload, Plaintiffs cannot point to a single photograph that had CMI at the time of upload.  At most, the named Plaintiffs can say that some of the photographs they gave to real estate agents had CMI in the metadata, but since they, in general, were not the uploaders, they can't say whether the CMI existed at the time of upload.  This flaw is fatal to Plaintiffs' argument.  *See Photographic Illustrators Corp. v. Orgill, Inc.*, No. 14-11818-PBS, 2015 WL 4572296 (D. Mass. July 29, 2015) (finding that existence of a third party who received images with CMI prior to passing on images to defendant made it speculative to infer that it was defendant who removed CMI).

### 2. Removal or Alteration of CMI

Plaintiffs have not and cannot show that CoreLogic removed or altered any CMI.  CoreLogic was the software developer.  It did not select or control the photographs to be uploaded.  It did not control whether or not the photographs had CMI.  It did not upload any photographs.  The act of uploading, which is what Plaintiffs allege led to the removal or CMI, was done by a third party actor.

---

[4] The affidavit involving Jane Doe does not involve actual CMI.  Ms. Doe simply puts sample information into the metadata to see if it transferred over once the photograph was uploaded.

### 3.  Intentional removal

Under § 1202 (b)(1), Plaintiffs must present evidence that CoreLogic intentionally removed or altered CMI.  Plaintiffs present no evidence that CoreLogic intentionally removed CMI, as opposed to removal being an unintended side effect of the fact that the software platform was based on a library that failed to retain metadata by default.  *See  Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1998) (summary judgment appropriate where plaintiff failed to offer any evidence showing Defendant's actions were intentional, rather than merely an unintended side effect of a web crawler's operation), *aff'd in part, rev'd in part,* 280 F.3d 934 (9th Cir. 2002), *opinion withdrawn and superseded on denial of reh'g and aff'd in part, rev'd in part,* 336 F.3d 811 (9th Cir. 2003). Accordingly, CoreLogic is entitled to summary judgment on Plaintiff's §1202(b)(1) claim.

### C. Distribution of images missing CMI—17 U.S.C. §1202(b)(2) and (3)

Plaintiffs' claims under § 1202(b)(2) and § 1202(b)(3)  must also fail because Plaintiffs present no evidence: (1) that CoreLogic knew or had reason to know that distributing images without CMI would "induce, enable, facilitate or conceal an infringement" and (2) that any distribution was done without the authority of the copyright owner.

### 1.  Reasonable Ground to Know Removal Would Lead to Infringement

Plaintiffs fail to provide any evidence that CoreLogic knew or had reasonable grounds to know that the removal of CMI in the metadata would lead to copyright infringement. The CMI in the metadata is not generally visible in the image itself but can be accessed and viewed using computer programs that are capable of displaying EXIF metadata. (Expert Report of Jeff Sedlik, Feldman Decl. Exh. L, ECF No. 153-14.) There is absolutely no evidence that, had the CMI metadata been embedded in the photographs, this might have prevented infringement, and that CoreLogic knew it would help prevent infringement.  Plaintiffs provide no evidence that the absence of metadata led to actual copyright infringement, nor have the named Plaintiffs ever

used metadata to track down copyright infringers.  Although Plaintiffs need not show actual infringement, the fact that there was none is relevant to Plaintiffs' burden to show that CoreLogic had a reasonable ground to believe it was likely to happen.  *See Kelly v. Arriba*, 77 F. Supp. 2d at 1122 ("Plaintiff's images are vulnerable to copyright infringement because they are displayed on web sites.  Plaintiff has not shown users of Defendant's site were any more likely to infringe his copyrights, any of these users did infringe, or Defendant should reasonably have expected infringement.")

Although Plaintiffs cite examples of infringement with respect to the Partner InfoNet Program, they fail to show either how the absence of CMI led to this infringement or how the presence of CMI would have prevented the infringement.  They allege no cause of action for infringement.  The single alleged cause of action is for distribution of images with missing CMI knowing or having reason to believe that this would lead to infringement.  Plaintiffs present no evidence of the required scienter.

### 2.  Implied License

Under the express wording of § 1202 (b)(2) and (3), Plaintiffs must prove that Defendant acted "without the authority of the copyright owner" and that any missing CMI was removed "without the authority of the copyright owner."  17 U.S.C. §1202(b).  This Plaintiffs cannot do.[5]

A copyright holder may give implied license to another "where the copyright holder engages in conduct from which [another party] may properly infer that the owner consents to his use."  *Field v. Google, Inc.*, 412 F. Supp. 2d 1106, 1115 (D. Nev. 2006).  "Silence or lack of objection may also be the equivalent of [implied consent] especially where the plaintiff knows of the defendant's use and encourages it." *Kennedy v. Gish, Sherwood & Friends, Inc.*, No 4: 13-cv-2236 JAR, 2015 WL

---

[5] Although Plaintiffs argue this is an affirmative defense, the unambiguous wording of the statute makes this an element which Plaintiffs have the burden to show.

6750814 (E.D. Mo. Nov. 5, 2015) at *6 (citing *Field v. Google*, 412 F. Supp. 2d at 1112; *Keane Dealer Services, Inc. v. Harts*, 968 F. Supp. 944, 947 (S.D.N.Y. 1997). "Common industry practice is also indicative of consent." *Id.*

Plaintiffs licensed their photographs to real estate agents for the express purpose of uploading the photographs onto an MLS. Plaintiffs knew that the agents would be manipulating the photographs specifically so they could be used on the MLS. Agents paid the Plaintiffs for this use. Plaintiffs knew that the MLS had software used by the agents to upload the photographs. Plaintiffs agreed the agents could use the photographs in this manner. Nowhere in the agreements with the agents do Plaintiffs warn the agents not to remove embedded metadata not viewable with the naked eye. To the extent there was CMI on the photographs, to the extent CoreLogic excised this CMI or knew the CMI had been excised, to the extent CoreLogic's removal or distribution of the CMI was intentional—all of which Plaintiffs have failed to prove—Plaintiffs impliedly gave authority to the agents to upload these photographs even though the result was the removal of CMI. For all of these reasons, CoreLogic's Motion for Summary Judgment on Plaintiffs' § 1202(b)(2) and § 1202(b)(3) claims is **GRANTED**. (ECF No. 153.)

## IV.   CONCLUSION

CoreLogic's Motion for Summary Judgment (ECF No. 153) is **GRANTED**. Since the Court did not rely on the opinions of experts Greenberg, Holstrom, McQueen or Kidder in reaching its conclusion on this Summary Judgment Order, the Motions to Strike these Witnesses' Testimony (ECF No. 141, 143, 149) are **TERMINATED AS MOOT**. In addition, Plaintiffs' Motion to Certify the Class (ECF No. 59), Motion to File Supplemental Authority in Support of Class Certification (ECF No. 150), Plaintiffs' Motion for Partial Summary Judgment (ECF No. 156), and Plaintiffs' Motion to Produce Non-Privileged Documents (ECF No. 181) are also **TERMINATED AS MOOT**.

//

1   //

2   //

3       **IT IS SO ORDERED.**

4

5   **DATED:  July 1, 2016**

6                                             **Hon. Cynthia Bashant**
7                                             **United States District Judge**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14cv1158