
UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

ROBERT STEVENS and STEVEN VANDEL, individually and on behalf of all others similarly situated,

        Plaintiffs - Appellants,

  v.

CORELOGIC, INC., a Delaware Corporation,

        Defendant - Appellee.

No. 16-56089

D.C. No. 3:14-cv-01158-BAS-JLB
U.S. District Court for Southern California, San Diego

**AMENDED MANDATE**

     The judgment of this Court, entered June 20, 2018, amended August 6, 2018, takes effect this date.

     This constitutes the formal mandate of this Court issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure.

                FOR THE COURT:

                MOLLY C. DWYER
                CLERK OF COURT

                By: Rebecca Lopez
                Deputy Clerk
                Ninth Circuit Rule 27-7

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROBERT STEVENS; STEVEN VANDEL, individually and on behalf of all others similarly situated, *Plaintiffs-Appellants*, | No. 16-56089 D.C. No. 3:14-cv-01158-BAS-JLB |
| v. | |
| CORELOGIC, INC., a Delaware Corporation, *Defendant-Appellee.* | ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the Southern District of California
Cynthia A. Bashant, District Judge, Presiding

Argued and Submitted November 6, 2017
Pasadena, California

Filed June 20, 2018
Amended August 6, 2018

Before: A. Wallace Tashima and Marsha S. Berzon,
Circuit Judges, and Robert E. Payne,[*] District Judge.

---

[*] The Honorable Robert E. Payne, United States District Judge for the Eastern District of Virginia, sitting by designation.

Order;
Opinion by Judge Berzon

## SUMMARY[**]

### Copyright Law

The panel filed: (1) an order denying a petition for panel rehearing, rejecting on behalf of the court a petition for rehearing en banc, and amending an opinion; and (2) an amended opinion in a copyright case.

In its amended opinion, the panel affirmed the district court's grant of summary judgment in favor of CoreLogic, Inc., on professional real estate photographers' claims that CoreLogic removed copyright management information from their photographs and distributed their photographs with the copyright management information removed, in violation of 17 U.S.C. § 1202(b)(1)–(3), a part of the Digital Millennium Copyright Act.

The photographers alleged that CoreLogic's Multiple Listing Services software removed copyright management information metadata from their photographs. The panel held that § 1202(b) requires a showing that the defendant knew the prohibited act would "induce, enable, facilitate, or conceal" infringement. The plaintiff must make an affirmative showing, such as by demonstrating a past "pattern of conduct" or "modus operandi," that the defendant was aware

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

or had reasonable grounds to be aware of the probable future impact of its actions. The panel concluded that the photographers did not offer evidence to satisfy this mental state requirement because they did not provide evidence from which one could infer that future infringement was likely, albeit not certain, to occur as a result of the removal or alteration of copyright management information.

The panel affirmed the district court's rulings regarding discovery and costs.

## COUNSEL

Darren J. Quinn (argued), Law Offices of Darren J. Quinn, Del Mar, California; Kirk B. Hulett, Hulett Harper Stewart LLP, San Diego, California; Joel B. Rothman, Schneider Rothman Intellectual Property Law Group PLLC, Boca Raton, Florida; for Plaintiffs-Appellants.

Daralyn Jeannine Durie (argued), Joseph C. Gratz, and Michael A. Feldman, Durie Tangri LLP, San Francisco, California; for Defendant-Appellee.

**ORDER**

The panel has unanimously voted to deny Appellants' petition for panel rehearing. Judge Berzon has voted to deny the petition for rehearing en banc. Judge Payne and Judge Tashima recommend denial of the petition for rehearing en banc. The full court has been advised of the petition for rehearing en banc, and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for panel rehearing is denied and the petition for rehearing en banc is rejected.

The opinion is amended as follows: On page 11 of the slip opinion, "or had reasonable grounds to be aware" is inserted after "that the defendant was aware."

Appellants' motion to take judicial notice is denied as moot.

---

**OPINION**

BERZON, Circuit Judge:

Residential real estate sales today depend largely on online sites displaying properties for sale. Plaintiffs Robert Stevens and Steven Vandel ("the Photographers") are professional real estate photographers who take photographs of listed properties and license them to real estate agents. The real estate agents, in turn, upload such photographs to Multiple Listing Services ("MLS") — computerized

databases of listed properties — using Defendant CoreLogic's software.

In this action against CoreLogic, the Photographers allege that CoreLogic removed copyright management information from their photographs and distributed their photographs with the copyright management information removed, in violation of 17 U.S.C. § 1202(b)(1)–(3). We affirm the grant of summary judgment in favor of CoreLogic.

## FACTS AND PROCEEDINGS BELOW

### A. Metadata

Stevens and Vandel are hired by real estate agents to take digital photographs of houses for sale. The Photographers retain the copyright in those photographs and license them to the agents. Like most digital photographs, at least some of Stevens' and Vandel's photographs contain metadata — *i.e.*, data about the image file itself. Metadata is not visible on the face of the image. Rather, it is either embedded in the digital file or stored outside the image file, such as in a "sidecar" file, and can be viewed using computer programs.

Some metadata is generated automatically by cameras. The Exchangeable Image File Format ("EXIF") is used by virtually all digital cameras to store information about the settings used to capture a digital image. EXIF information can include the make, model, and serial number of the camera taking the photograph; the shutter speed; the aperture settings; light sensitivity; the focal length of the lens; and even, in some cases, the location at which the photo was captured. Essentially, EXIF metadata provides information

about when the image was taken and under what technical conditions.

Other metadata may be added manually, either by programming the camera or by adding information after taking the picture, using photo editing software. Such metadata is often stored in IPTC format, named for the International Press Telecommunications Council, which developed metadata standards to facilitate the exchange of news. IPTC metadata can include, for example, the title of the image, a caption or description, keywords, information about the photographer, and copyright restrictions. It may be used to check copyright information, to sort images, and to provide accurate search results in an image database or search engine. A small number of fields such as Author/Creator, Copyright, and Caption/Description exist in both EXIF and IPTC formats.

Copyright law restricts the removal or alteration of copyright management information ("CMI") — information such as the title, the author, the copyright owner, the terms and conditions for use of the work, and other identifying information set forth in a copyright notice or conveyed in connection with the work. *See* 17 U.S.C. § 1202(b)–(c). Both EXIF and IPTC metadata can contain "copyright management information."

## B. CoreLogic Software

CoreLogic is a California-based corporation that develops and provides software to Multiple Listing Services. Known as one of the "Big 3" real estate software vendors nationally, CoreLogic currently markets, or has previously marketed, several MLS software platforms, including Matrix, InnoVia,

Fusion, MLXchange, Tempo 4, and Tempo 5. The Photographers allege that CoreLogic's software removed CMI metadata from their photographs, in violation of 17 U.S.C. § 1202(b).

Because image files can be very large, CoreLogic's MLS software resizes or "downsamples" images. Downsampling entails creating and saving a copy of an uploaded image in a smaller number of pixels and deleting the original image; the process reduces storage size, facilitates computer display, and helps images load faster on web pages.

The image processing aspect of CoreLogic's software was not developed by CoreLogic entirely on its own. Like virtually all software, CoreLogic's software incorporated "libraries" — pre-written code that can be used by a computer program and that enables software to develop in a modular fashion. These libraries are unable to read EXIF data from image files or to write EXIF data to image files. Thus, when images are copied or resized using the code from these pre-existing libraries, metadata attached to those images is not retained.[1]

---

[1] It is not uncommon for image processing software to fail to preserve metadata. Tests conducted by the Embedded Metadata Group in 2015 revealed that, of fifteen social media websites studied, eight preserved EXIF metadata and seven, including, Facebook, Instagram, and Twitter, did not. Some image-processing libraries, however, such as "ImageMagick," do read and write EXIF data, and thus transfer EXIF metadata to the new image file when resizing.

The Photographers[2] filed this action in May 2014. Significantly, the dispute is limited to metadata. The Photographers do not allege that CoreLogic's software removed *visible* CMI, such as digital watermarks, from their photographs, and indeed, CoreLogic's software does not detect, recognize, or remove visible CMI. *Cf. Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 305 (3d Cir. 2011) (imposing liability on a defendant who cropped out the photographer's name from the "gutter" copyright credit before posting a photograph online).

After receiving the Photographers' initial complaint, CoreLogic modified its software to ensure that EXIF metadata is copied and restored to images processed by CoreLogic's MLS software. These modifications were made within a few months of receiving the initial complaint, although testing and installation of the revised version on all MLSs using CoreLogic software took several more months. The Photographers contend that, even after these changes, CoreLogic software continues to remove IPTC metadata.

---

[2] Stevens' company, Affordable Aerial Photography, was named as an additional plaintiff in the amended complaint. Affordable Aerial Photograph did not, however, file a timely notice of appeal from the district court's July 5, 2016 judgment: The Notice of Appeal filed on July 29, 2016 identified only Stevens and Vandel as appellants. An amended notice of appeal was filed several months later, on January 26, 2017, and included Affordable Aerial Photography. That notice of appeal was untimely as to the July 5, 2016 judgment. *See* Fed. R. App. P. 4(a)(1). We therefore lack jurisdiction to consider the appeal by Affordable Aerial Photography as it relates to the July 5, 2016 judgment. The amended notice of appeal was, however, timely as to the January 11, 2017 order denying the Photographers' motion to re-tax costs, and Affordable Aerial Photography is therefore properly a party as to that portion of the appeal.

In addition to providing MLS software — which, again, real estate agents use to share information about properties with other agents — CoreLogic also operates the Partner InfoNet program, which allows MLSs to license their aggregated real estate listing data to mortgage lenders and servicers, in exchange for a share of the licensees' revenue. CoreLogic used photographs taken and owned by the Photographers on Partner InfoNet products.

After the discovery deadline, but before all discovery disputes were resolved, Core Logic filed a motion for summary judgment. The district court granted summary judgment in favor of CoreLogic and denied as moot the Photographers' motion to compel the production of additional documents.

After entry of judgment, CoreLogic filed a Bill of Costs, to which the Photographers objected. The district court denied the Photographers' motion to re-tax costs with respect to witness fees for CoreLogic corporate employees. This timely appeal followed.

## DISCUSSION

### A. Violation of 17 U.S.C. § 1202(b)

The Photographers allege that CoreLogic's software removed CMI metadata, in violation of 17 U.S.C. § 1202(b)(1), and that CoreLogic distributed images knowing that copyright management information was removed, in violation of 17 U.S.C. § 1202(b)(3). Reviewing de novo the district court's decision to grant summary judgment to CoreLogic, *see Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d

657, 665 (9th Cir. 2017), we affirm the grant of summary judgment.

### 1. Section 1202(b) Requires an Affirmative Showing That the Defendant Knew the Prohibited Act Would "Induce, Enable, Facilitate, or Conceal" Infringement

Section 1202(b)(1) provides: "No person shall, without the authority of the copyright owner or the law . . . intentionally remove or alter any copyright management information . . . knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any" copyright. 17 U.S.C. § 1202(b)(1). Section 1202(b)(3) provides: "No person shall, without the authority of the copyright owner or the law . . . distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law, knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any" copyright. *Id.* § 1202(b)(3).[3] Both provisions thus require the defendant to

---

[3] The Photographers' complaint also alleges a violation of 17 U.S.C. § 1202(b)(2). Section 1202(b)(2) refers to the "distribut[ion] or import for distribution [of] *copyright management information* knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law." 17 U.S.C. § 1202(b)(2) (emphasis added). The Photographers do not specifically allege any instances involving the distribution of altered CMI separate from the distribution of the copyrighted photographs. As the elements of the two statutory provisions are otherwise indistinguishable, the Photographers

possess the mental state of knowing, or having a reasonable basis to know, that his actions "will induce, enable, facilitate, or conceal" infringement.

The Photographers have not offered any evidence to satisfy that mental state requirement.[4]   Their primary argument is that, because one method of identifying an infringing photograph has been impaired,[5] someone *might* be able to use their photographs undetected.  That assertion rests on no affirmative evidence at all; it simply identifies a general possibility that exists whenever CMI is removed.

---

have not plausibly stated a claim under Section 1202(b)(2) different from their claim under Section 1202(b)(3).  We therefore discuss in the text only the Section 1202(b)(3) claim.

[4] As this reason is a sufficient basis for concluding that the Photographers' claims fail, we do not consider whether CoreLogic "intentionally" removed CMI, whether the Photographers presented sufficient evidence that the photographs contained CMI at the time they were uploaded, whether the Photographers impliedly licensed the removal of CMI, or whether CoreLogic, as a software developer, can be liable for third parties' use of its software.

[5] As noted, CoreLogic's software does preserve visible watermarks, which Stevens and Vandel testified they sometimes use to identify their photographs.  Experts advise that watermarks offer a more reliable way of indicating copyright protection than metadata.  *See* Bert P. Krages, *Legal Handbook for Photographers: The Rights and Liabilities of Making and Selling Images* 85 (4th ed. 2017) (recommending that photographers "put the copyright management information on the face of the image, such as in a watermark, rather than rely solely on information contained in metadata" because the use of image editing software to clone over a watermark is more likely to be seen as intentional than the removal of metadata).

As we interpret Section 1202(b), this generic approach won't wash. It is a fundamental principle of statutory interpretation that we must "give effect, if possible, to every clause and word of a statute," *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883), "so that no part will be inoperative or superfluous, void or insignificant," *Corley v. United States*, 556 U.S. 303, 314 (2009); *see also Hibbs v. Winn*, 542 U.S. 88, 101 (2004); *Astoria Fed. Savs. & Loan Ass'n v. Solimino*, 501 U.S. 104, 112 (1991). To avoid superfluity, the mental state requirement in Section 1202(b) must have a more specific application than the universal possibility of encouraging infringement; specific allegations as to how identifiable infringements "will" be affected are necessary.

At the same time, as the statute is written in the future tense, the Photographers need not show that any specific infringement has already occurred. Also, recognizing that "nothing is completely stable, no plan is beyond alteration," we have previously observed that statutes requiring knowledge that a future action "will" occur do not "require knowledge in the sense of certainty as to a future act." *United States v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010). Rather, knowledge in the context of such statutes signifies "a state of mind in which the knower is familiar with a pattern of conduct" or "aware of an established modus operandi that will in the future cause a person to engage in" a certain act. *Id.* Applying that concept here, we hold that a plaintiff bringing a Section 1202(b) claim must make an affirmative showing, such as by demonstrating a past "pattern of conduct" or "modus operandi", that the defendant was aware or had reasonable grounds to be aware of the probable future impact of its actions.

Our conclusion about the import of the "induce[d], enable[d], facilitate[d], or conceal[ed]" prong is supported by the legislative history of Section 1202. That provision was enacted to implement obligations of parties to the WIPO Copyright Treaty ("WCT") and the WIPO Performances and Phonograms Treaty. *See* S. Rep. No. 105-190, at 5, 9 (1998). The initial draft of the WCT provision regarding CMI provided:

> Contracting parties shall make it unlawful for any person knowingly . . . (i) to remove or alter any electronic rights management information without authority; [or] (ii) to distribute, import for distribution or communicate to the public, without authority, copies of works from which electronic rights management information has been removed or altered without authority.

World Intellectual Property Organization [WIPO], *Basic Proposal for the Substantive Provisions of the Treaty on Certain Questions Concerning the Protection of Literary and Artistic Works to Be Considered by the Diplomatic Conference*, art. 14(1), WIPO Doc. CRNR/DC/4 (Aug. 30, 1996).

In response to requests from delegates that the provision be modified to require a connection to an infringing purpose, the provision was redrafted as follows:

> Contracting Parties shall provide adequate and effective legal remedies against any person knowingly performing any of the following acts *knowing or, with respect to civil remedies*

> *having reasonable grounds to know, that it*
> *will induce, enable, facilitate or conceal an*
> *infringement of any right covered by this*
> *Treaty or the Berne Convention*: (i) to remove
> or alter any electronic rights management
> information without authority; (ii) to
> distribute, import for distribution, broadcast or
> communicate to the public, without authority,
> works or copies of works knowing that
> electronic rights management information has
> been removed or altered without authority.

WIPO Copyright Treaty art. 12, Dec. 20 1996 (emphasis added). The revision thus makes clear that the "induce, enable, facilitate or conceal" requirement is intended to limit liability in some fashion — specifically, to instances in which the defendant knows or has a reasonable basis to know that the removal or alteration of CMI or the distribution of works with CMI removed *will* aid infringement.

When Congress was considering the WIPO Copyright Treaties Implementation Act — a part of the Digital Millennium Copyright Act ("DMCA") that included the new Section 1202 — the Register of Copyrights emphasized that Section 1202's provisions "do not apply to those who act innocently. . . . Liability for the removal or alteration of information requires the actor to know or have reason to know that his acts 'will induce, enable, facilitate or conceal' infringement." *WIPO Copyright Treaties Implementation Act, and Online Copyright Liability Limitation Act: Hearing Before the H. Subcomm. on Courts and Intellectual Property of the H. Comm. on the Judiciary*, 105th Cong. 51 (1997) (statement of Marybeth Peters, Register of Copyrights, Copyright Office of the United States).

In short, to satisfy the knowledge requirement, a plaintiff bringing a Section 1202(b)(1) claim must offer more than a bare assertion that "when CMI metadata is removed, copyright infringement plaintiffs . . . lose an important method of identifying a photo as infringing."  Instead, the plaintiff must provide evidence from which one can infer that future infringement is likely, albeit not certain, to occur as a result of the removal or alteration of CMI.

## 2. The Photographers Have Failed to Make the Required Affirmative Showing

The Photographers have not offered *any* specific evidence that removal of CMI metadata from their real estate photographs will impair their policing of infringement.  There are no allegations, for example, of a "pattern of conduct" or "modus operandi" involving policing infringement by tracking metadata.  *Todd*, 627 F.3d at 334.  Indeed, the evidence presented cuts against any inference that CMI metadata is of any practical significance to the Photographers in policing copyright infringement of their images.

The Photographers have not, for example, averred that they have ever used CMI metadata to prevent or detect copyright infringement, much less how they would do so.  Vandel testified that, before this lawsuit began, he had never "looked at any metadata information on any photograph in an MLS system."  On the only two occasions Vandel became aware of unauthorized use of his photographs, he learned about the unauthorized use from the real estate agent who commissioned the photographs.  The agent saw the image elsewhere and contacted Vandel to ask if he had permitted the use.  Stevens similarly testified that he had "[n]ever tried to download a photo off an MLS listing . . . and look at its

properties, its metadata," that he "d[id]n't think you can pull up metadata off of an MLS listing," and that he "didn't even realize you could click on a picture off the Internet, right-click it, and get metadata off of it." The testimony of both Stevens and Vandel undermines any ostensible relationship between the removal of CMI metadata and their policing of infringement.

Nor have the Photographers brought forward any evidence indicating that CoreLogic's *distribution* of real estate photographs ever "induce[d], enable[d], facilitate[d], or conceal[ed]" any particular act of infringement by anyone, let alone a pattern of such infringement likely to recur in the future. They identify *no* instance in which the removal of CMI metadata from any photograph "induce[d], enable[d], facilitate[d] or conceal[ed] an infringement."[6] Moreover, a party intent on using a copyrighted photograph undetected can itself remove any CMI metadata, precluding detection through a search for the metadata. So on the record here, one cannot plausibly say that removal by a third party "will" make it easier to use a copyrighted photograph undetected, using "will" in the predictive sense we have indicated.

Because the Photographers have not put forward *any* evidence that CoreLogic knew its software carried even a substantial risk of inducing, enabling, facilitating, or

---

[6] In the time it has operated its MLS software, CoreLogic has only once received a DMCA takedown notice from a real estate photographer. 17 U.S.C. § 512(c). CoreLogic promptly responded by removing the allegedly unauthorized and infringing copies. There is no evidence that that photographer used metadata to identify the allegedly infringing copies, that her photograph even contained metadata, or that the infringement identified had anything to do with removal or alteration of metadata.

concealing infringement, let alone a pattern or probability of such a connection to infringement, CoreLogic is not liable for violating 17 U.S.C. § 1202(b).

## B. Discovery Rulings

The Photographers also appeal the district court's denial as moot of their motion to compel the production of documents, as well as the court's related failure to address their Rule 56(d) request. *See* Fed. R. Civ. P. 56(d).[7] We treat the district court's failure specifically to address the Rule 56(d) request as an implicit denial. *See Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1482 (9th Cir. 1996).[8]

Before discovery closed in September 2015, the Photographers filed motions to compel the production of certain documents and certain supplemental responses to interrogatories. The district court granted in part and denied in part those motions, ordering CoreLogic to identify in a privilege log any responsive documents it claimed were privileged. CoreLogic complied, serving an initial privilege log consisting of 1,049 entries, and later a revised privilege log.

---

[7] Federal Rule of Civil Procedure 56(d) provides: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

[8] *Kennedy* characterizes as an implicit denial a failure expressly to address a Rule 56(f) motion. Federal Rule of Civil Procedure 56(d) was, until December 1, 2010, codified as Federal Rule of Civil Procedure 56(f).

CoreLogic filed a motion for summary judgment before the district court ruled on the privilege claims. In addition to a memorandum of points and authorities opposing CoreLogic's motion for summary judgment on the merits, counsel for the Photographers filed a Rule 56(d) declaration opposing summary judgment on the ground that the Photographers planned to move to compel the production of documents relevant to their claims that they believed not privileged. The declaration asserted that the documents were "likely to be directly relevant to each of the elements in 17 U.S.C. § 1202, especially the mental state requirement of 'knowing,'" and requested that the court defer consideration of the summary judgment motion or extend the time for discovery.

The photographers subsequently moved to compel the production of 603 e-mails and instant messages identified in the revised privilege log. The district court, however, granted summary judgment to CoreLogic before ruling on the motion to compel, and then, in the summary judgment order, denied the discovery motion as moot.

District court discovery rulings denying a motion to compel discovery are ordinarily reviewed for abuse of discretion. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002); *see also Morton v. Hall*, 599 F.3d 942, 945 (9th Cir. 2010); *Qualls ex rel. Qualls v. Blue Cross of Cal., Inc.*, 22 F.3d 839, 844 (9th Cir. 1994). When the district court denies a motion to compel additional discovery as moot without considering its merits, however, the district court does not exercise any substantive discretion about the scope of discovery, so we review the denial of discovery de novo. *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d

1162, 1178 (9th Cir. 2006); *Garrett v. City & Cty. of San Francisco*, 818 F.2d 1515, 1518 n.3, 1519 (9th Cir. 1987).

Similarly, if a district court implicitly denies a Rule 56(d) motion by granting summary judgment without expressly addressing the motion, that omission constitutes a failure "to exercise its discretion with respect to the discovery motion," and the denial is reviewed de novo. *Garrett*, 818 F.2d at 1518 n.3, 1519; *see also Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998); *Kennedy*, 90 F.3d at 1482; *Qualls*, 22 F.3d at 844. We have previously allowed that explanations for denials of Rule 56(d) request "need not be explicitly stated" when "the information sought . . . would not have shed light on any of the issues upon which the summary judgment decision was based." *Qualls*, 22 F.3d at 844. But when the plaintiff requests additional discovery pursuant to Rule 56(d) and the materials that a "motion to compel sought to elicit" are relevant to the basis for the summary judgment ruling, district courts should provide reasons for denying the discovery motion and the Rule 56(d) request. *See Garrett*, 818 F.2d at 1519. In this case, the communications that the Photographers sought could have "shed light" on whether, for example, CoreLogic intentionally removed CMI or knew CMI was removed without authorization — issues relevant to the district court's summary judgment ruling, although not to our basis for affirming that ruling — and should have been addressed.

Nonetheless, reviewing de novo the denials of the motion to compel and of the Rule 56(d) request, we affirm. As to the motion to compel, there is no indication that any of the documents sought are "relevant," as required under Rule

26(b)(1),[9] to what we have held to be the dispositive issue — whether CoreLogic knew its actions would "induce, enable, facilitate, or conceal infringement."[10]    The district court directed that the motion to compel include "[a] statement as to why the discovery is needed."    The sole explanation offered for why the documents were needed was that they would show CoreLogic knew its software removed EXIF metadata before the litigation began, and knew its software continues to remove IPTC metadata, even after the software was modified to preserve EXIF metadata after this lawsuit was filed.    As the Photographers have not made any showing that the documents listed in the privilege log are relevant to the dispositive question — whether CoreLogic's software will "induce, enable, facilitate, or conceal" any act of infringement — we affirm the denial of the motion to compel.

The denial of the Rule 56(d) request was proper for similar reasons.  Rule 56(d) provides "a device for litigants to

---

[9] Rule 26(b)(1) provides: "Unless otherwise limited by court order, . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

[10] According to the Photographers' motion to compel, the documents at issue fell into three categories: (1) "Product Development and Modification" documents regarding CoreLogic's development and modification of the CoreLogic software at issue; (2) "Sales Pitches and Internal Discussions" emails and instant messages regarding this lawsuit; and (3) "Business Matters" emails and instant messages between non-attorneys regarding "images incorporated into a product" and "contract language."

avoid summary judgment when they have not had sufficient time to develop affirmative evidence." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002). A party seeking additional discovery under Rule 56(d) must "explain what further discovery would reveal that is 'essential to justify [its] opposition' to the motion[] for summary judgment." *Program Eng'g, Inc. v. Triangle Publ'ns, Inc.*, 634 F.2d 1188, 1194 (9th Cir. 1980) (first alteration in original).

This showing cannot, of course, predict with accuracy precisely what further discovery *will* reveal; the whole point of discovery is to learn what a party does not know or, without further information, cannot prove. *See, e.g.*, *Pac. Fisheries Inc. v. United States*, 484 F.3d 1103, 1111 (9th Cir. 2007) ("[T]he purpose of discovery is to aid a party in the preparation of its case . . . ."); Fed. R. Civ. P. 26(b) advisory committee's note to 1946 amendment) ("The purpose of discovery is to allow a broad search for facts . . . or any other matters which may aid a party in the preparation or presentation of his case."). But for purposes of a Rule 56(d) request, the evidence sought must be more than "the object of pure speculation." *California v. Campbell*, 138 F.3d 772, 779–80 (9th Cir. 1998) (citation omitted). A party seeking to delay summary judgment for further discovery must state "what other *specific* evidence it hopes to discover [and] the relevance of that evidence to its claims." *Program Eng'g*, 634 F.2d at 1194 (emphasis added). In particular, "[t]he requesting party must show [that]: (1) it has set forth in affidavit form *the specific facts* it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family*

*Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (emphasis added).[11]

The Photographers did not comply with those requirements here. Extensive discovery had taken place before the district court ruled on CoreLogic's motion for summary judgment. The Photographers had taken depositions of 16 CoreLogic employees, served and received responses to 42 interrogatories, and served 114 requests for production of documents. The additional information sought was a general request for *all* allegedly privileged documents where no attorney was listed as an author or recipient, coupled with a bare assertion that the "documents are likely to be directly relevant to each of the elements in 17 U.S.C. § 1202, especially the mental state requirement of 'knowing.'"

A request at that level of generality is insufficient for Rule 56(d) purposes. The Photographers did not in their Rule 56(d) declaration enumerate any "specific facts" they hoped to elicit from further discovery, *Family Home & Fin. Ctr.*, 525 F.3d at 827, or "provide any basis or factual support for [their] assertions that further discovery would lead" to those facts, *Margolis*, 140 F.3d at 854. And, as we have explained, the only specific explanation in the record — which appeared in the motion to compel, not in the Rule 56(d) declaration — indicates that the information sought would *not* illuminate the determinative inquiry, whether CoreLogic's software will "induce, enable, facilitate, or conceal an infringement."

---

[11] *Garrett*, on which the Photographers rely, is not to the contrary. *Garrett* emphasized that the plaintiff there "made clear the information sought, did not seek broad additional discovery, . . . and indicated the purpose for which this information was sought." 818 F.2d at 1518–19.

We therefore affirm the denial of the Photographers' request to the district court to delay a decision on summary judgment and permit additional discovery.

## C.  Motion to Retax Costs

Finally, the district court did not err in awarding fees for corporate witnesses as costs and denying the Photographers' motion to retax costs.

Rule 54 permits prevailing parties to recover costs other than attorney's fees, unless otherwise provided.  Fed. R. Civ. P. 54(d)(1).  The Photographers urge that corporate directors or officers may not recover the witness fees set by 28 U.S.C. § 1821 when appearing in support of the corporate party.[12]

As a general rule, parties may not recover witness fees for their own attendance.  *See, e.g.*, *Barber v. Ruth*, 7 F.3d 636, 646 (7th Cir. 1993), *superseded on other grounds by amendment to Federal Rules of Civil Procedure, as recognized in Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 701–02 (7th Cir. 2008).  The expenses of corporate directors or officers may, however, be taxable, even when those individuals are testifying on behalf of a corporate party to the suit, provided "[n]o recovery . . . [is] sought from [the officers] individually."  *See Kemart Corp. v. Printing Arts Research Labs., Inc.*, 232 F.2d 897, 901 (9th Cir. 1956) (citation omitted); 10 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2678 (3d ed. 1998) ("The expenses of witnesses who are themselves parties normally are not taxable.  For example, real parties in interest or parties suing in a representative capacity are not entitled to fees or

---

[12] Section 1821 governs the attendance fees for witnesses.

allowances as witnesses. The expenses of a director or officer of a corporation who is not personally involved in the litigation may be taxable, however, even if that individual is testifying on behalf of the organization and the latter is a party to the suit."). "The allowance or disallowance of items of costs is determined by statute, rule, order, usage, and practice of the instant court." *Kemart*, 232 F.2d at 899.

Southern District of California Local Rule 54.1(b)(4)(c) specifically provides that "[w]itness fees for officers and employees of a corporation" may be recoverable as costs "if they are not parties in their individual capacities." S.D. Cal. Civ. R. 54.1(b)(4)(c). During the course of this litigation, the Photographers took one Rule 30(b)(6) deposition of CoreLogic as a corporate entity, at which nine employees designated by CoreLogic testified,[13] and seven depositions of CoreLogic officers or managing agents. Thus, sixteen CoreLogic employees testified and were paid $40 per day, in accordance with 28 U.S.C. § 1821, for a total of $640 in witness fees. The district court did not abuse its discretion in relying upon Local Rule 54.1 to allow and tax as costs the witness fees for CoreLogic's corporate officers.

**AFFIRMED**.

---

[13] A Rule 30(b)(6) deposition is "treated as a single deposition even though more than one person may be designated to testify." Fed. R. Civ. P. 30(a) advisory committee's note to 1993 amendment.